IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION<br>600 Pennsylvania Ave., N.W.,<br>Washington, DC 20580,<br><br>Petitioner,<br><br>v.<br><br>SCOTT TARRIFF,<br>c/o Eric Grannon, Esq.<br>White and Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005<br><br>EDWARD MALONEY<br>c/o Eric Grannon, Esq.<br>White and Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005<br><br>PAUL CAMPANELLI<br>c/o Eric Grannon, Esq.<br>White and Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Misc. No. |

## PETITION OF THE FEDERAL TRADE COMMISSION
## FOR AN ORDER ENFORCING SUBPOENAS *AD TESTIFICANDUM* ISSUED IN
## FURTHERANCE OF A LAW ENFORCEMENT INVESTIGATION

### *Preamble and Request for Emergency Treatment*

Petitioner, the Federal Trade Commission ("FTC" or "Commission"), by its designated

attorneys and pursuant to Sections 9 and 16 of the Federal Trade Commission Act ("FTC Act"),

15 U.S.C. §§ 49, 56, petitions this Court for an Order requiring Respondents, Mr. Scott Tarriff,

former President and Chief Executive Officer of Par Pharmaceutical Companies Inc. ("Par");

Mr. Edward Maloney, senior executive of Paddock Laboratories Inc. ("Paddock"); and Mr. Paul

Campenelli, President of the Generics Division of Par, (collectively "Responents"), to comply

with the subpoenas *ad testificandum* issued by the FTC to each of these individuals. These

subpoenas seek testimony relevant to an ongoing Commission law enforcement investigation.

The Commission issued the subpoenas in the course of a non-public investigation seeking to

determine whether Par and Paddock in addition to Unimed Pharmaceuticals, Inc., Laboratories

Besins Iscovesco, and Solvay Pharmaceuticals, Inc. (collectively "Solvay"), have engaged or are

engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of

the FTC Act, 15 U.S.C. § 45, by unreasonably restraining trade in the manufacture or sale of a

patented pharmaceutical, Androgel or its generic equivalent.

### *Petition Allegations*

To support this petition, the Commission alleges the following:

1.     The Commission is an administrative agency of the United States government,

organized and existing pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*. The Commission is

authorized and directed by Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), to prohibit unfair

methods of competition and unfair or deceptive acts or practices in or affecting commerce.

2.     Section 3 of the FTC Act, 15 U.S.C. § 43, empowers the Commission to

prosecute any inquiry necessary to its duties in any part of the United States. Section 6 of the

Act, 15 U.S.C. § 46, empowers the Commission to gather and compile information concerning,

and to investigate from time to time the organization, business, conduct, practices and

management of any person, partnership or corporation engaged in or whose business affects

commerce, with certain exceptions not here relevant. Section 9 of the FTC Act, 15 U.S.C. § 49,

2

authorizes the Commission to issue subpoenas to compel testimony from witnesses regarding

matters related to an authorized investigation.

    3.     This Court has jurisdiction to enforce the subpoenas against Respondents under

Section 9 of the FTC Act, 15 U.S.C. § 49, which provides, in pertinent part:

> "Any of the district courts of the United States within the
> jurisdiction of which such inquiry is carried on may, in
> case of contumacy or refusal to obey a subpoena issued to
> any person, partnership, or corporation issue an order
> requiring such person, partnership, or corporation to
> appear before the Commission, or to produce documentary
> evidence if so ordered, or to give evidence touching the
> matter in question; and any failure to obey such order of
> the court may be punished by such court as a contempt
> thereof." *Id.*

    4.     The Declaration under penalty of perjury of Jonathon Lutinski, which verifies the

allegations of this Petition, is attached hereto as Petition Exhibit ("Pet. Exh.") 1.

    5.     On March 2, 2007, the Commission issued a Resolution Authorizing Use of

Compulsory Process in a Nonpublic Investigation (FTC File No. 071-0060). Pet. Exh. 1, ¶ 9;

Pet. Exh. 2. The investigation seeks to determine whether Solvay and Par and Paddock, or their

subsidiaries or any other person, have engaged or are engaging in unfair methods of competition

in or affecting commerce, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, by

unreasonably restraining trade in the manufacturer or sale of Androgel or its generic equivalent.

This investigation is being conducted from Washington, D.C. Pet. Exh. 1, ¶ 9.

    6.     Par is a publicly traded Delaware company that is in the business of developing,

manufacturing and marketing pharmaceutical products in the United States. Paddock is a

privately held Minnesota company. It is a high volume manufacturer of bioequivalent generic

pharmaceuticals and over-the-counter speciality products. Pet. Exh. 1, ¶ 5. Par and Paddock are engaged in, and their business affects, "commerce," as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. Pet. Exh. 1, ¶ 5.

7.     Solvay has a financial interest in the patented drug AndroGel. AndroGel is a testosterone replacement therapy drug with annual sales of over $350 million in 2007. Pet. Exh. 1, ¶ 6.

8.     Paddock developed a generic version of AndroGel and filed an abbreviated new drug application (ANDA) with the U.S. Food and Drug Administration ("FDA") on May 21, 2003, seeking approval to sell its generic drug. Paddock and Par executed a Product Development, Manufacturing, and Supply Agreement on October 8, 2003, concerning Paddock's generic AndroGel product in which Paddock agreed to manufacture the product and Par agreed to market it. Pet. Exh. 1, ¶ 7.

9.     On August 21, 2003, Solvay filed a patent infringement suit against Paddock in the United States District Court for the Northern District of Georgia. On September 13, 2006, the parties entered into a settlement agreement resolving their patent dispute. Under the terms of the agreement, Par and Paddock agreed to delay the marketing of their generic version of AndroGel until 2015. On the same day as the patent settlement, the parties also entered into transactions that provided for substantial payments from Solvay to Paddock and Par. Pet. Exh. 1, ¶ 8.

10.     As part of this investigation, Commission staff issued subpoenas to the

4

Respondents to obtain their testimony relating to the negotiation and terms of the settlement agreement. In particular, the Commission seeks to investigate the relationship between Par and Paddock's agreement to delay marketing of the generic version of AndroGel and the compensation Solvay has agreed to provide to Par and Paddock. The Commission also seeks to investigate the potential harm to consumers from any delay in the introduction of a generic version of AndroGel. Pet. Exh. 1, ¶ 9.

11.     On February 13, 2008, the Commission issued three subpoenas *ad testificandum* for investigational hearings of Respondents Tarriff, Maloney, and Campanelli. Pet. Exh. 1, ¶ 11, Pet. Exh.3. Each subpoena provided notice that the investigational hearing of the witness would be recorded by sound-and-visual means in addition to stenographic means. *Id.*

12.     The Commission served the subpoenas on Respondents' counsel, White & Case LLP. Respondents did not dispute service. Pet. Exh. 1, ¶ 12.

13.     On February 20, 2008, Respondents filed with the Commission a Petition to Quash or Limit the Subpoenas issued to them ("Petition to Quash").[1] Pet. Exh. 4. This Petition to Quash was filed pursuant to Rule 2.7 of the Commission's Rules of Practice. 16 C.F.R. § 2.7. The Petition to Quash argued that the Commission lacks authority to record its investigational hearings by any means other than stenographic. Pet. Exh. 4. This was the only issue raised by the Petition to Quash. *See id.*

14.     On March 14, 2008, the Commission issued a letter opinion rejecting

---

[1] In fact, the Petition to Quash was actually filed by Par and Paddock on behalf of Respondents. Pet. Exh. 5, n.1.

Par and Paddock's Petition to Quash. Pet. Exh. 5. The Commission's decision reset Mr. Campanelli's investigational hearing date for March 28, 2008, Mr. Maloney's hearing date for April 4, 2008, and Mr. Tarriff's date for April 11, 2008. Respondents' counsel had agreed to these dates. Pet. Exh. 1, ¶ 15.

15.    On March 21, 2008, Respondents informed the Commission that they would not comply with the subpoenas, and that they would not appear for their investigational hearings. Pet. Exh. 6.

16.    Respondents' failure to comply with the subpoenas burdens the Commission's investigation, and makes it more difficult for the Commission to assess the legality of the conduct. The Commission seeks this information to complete its investigation and determine whether it wishes to challenge the conduct of the companies identified in the Commission resolution authorizing the investigation. Pet. Exh. 1, ¶ 17.

17.    The subpoenas directed to Respondents are within the Commission's statutory authority, the information sought is reasonably related to the Commission's investigation, and the demand is not unreasonably burdensome. Further delays in the Commission's investigation caused by Respondents' failure to comply are contrary to the public interest. Therefore, the subpoenas should be enforced in full.

18.    No previous application for the relief sought herein has been made to this Court or any other.

### *Prayer for Relief*

WHEREFORE, the Commission invokes the aid of this Court and prays:

6

a.     For immediate issuance of an Order directing Respondents to show cause why

they should not comply in full with the subpoenas;

b.     For a prompt determination of this matter and an Order requiring Respondents to

fully comply with the subpoenas;

c.     For such other relief as the Court deems just and proper.

Dated: April 16, 2008                    Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel (D.C. Bar No. 339283)

JOHN F. DALY
Deputy General Counsel for Litigation
(D.C. Bar No. 250217)

LAWRENCE DeMILLE-WAGMAN
Attorney (D.C. Bar No. 929950)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-2448
Email: lwagman@ftc.gov

*Jackson L. McGrady* (LD-W)
JACKSON L. MCGRADY
Attorney
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3193
Fax  (202) 326-2477
Email:  jmcgrady@ftc.gov

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| SCOTT TARRIFF, *et. al.* | ) | |
| | ) | |
| Respondents. | ) | |

## DECLARATION OF JONATHAN R. LUTINSKI, ESQ.

Pursuant to 28 U.S.C. § 1746, Jonathan R. Lutinski, Esq. declares as follows:

1.  I am an attorney, a member of the bar of the State of California, and have been employed by the Federal Trade Commission (the "Commission") since October 2005.

2.  I am assigned to the Commission's investigation of a patent litigation settlement agreement regarding the pharmaceutical product AndroGel entered between and among (1) the patent plaintiffs: Unimed Pharmaceuticals, Inc. ("Unimed"), a wholly owned subsidiary of Solvay Pharmaceuticals, Inc. ("Solvay"), and Laboratories Besins Iscovesco ("Besins") (collectively, "Solvay"); and (2) the patent defendant, Paddock Laboratories, Inc. ("Paddock"), and its assignee, Par Pharmaceutical Companies, Inc. ("Par").

3.  I submit this declaration in support of the Petition of the Federal Trade Commission for an Order Enforcing Subpoenas *Ad Testificandum* ("Petition for Enforcement") for subpoenas issued by the Commission on February 13, 2008 and served on the following individuals: (1) Scott Tarriff, the former President and Chief Executive Officer of Par; (2) Paul Campanelli, President of Par's Generic Division; and (3) Ed Maloney, a senior executive of

PET. EXH. 1

Paddock (collectively "Respondents"). The facts set forth herein are based on my personal knowledge or information made known to me in the course of my official duties. I have read the Commission's Petition for Enforcement and the exhibits attached thereto (those exhibits are hereinafter referred to as "Pet. Exh."), and verify that Pet. Exh. 2 through Pet. Exh. 6 are true and correct copies of original documents contained in the official files of the Commission. This declaration is Pet. Exh. 1.

4.    Respondents have informed the Commission that they do not intend to comply with the February 13, 2008 subpoenas issued by the Commission.

5.    Par is a publically traded Delaware corporation with headquarters in Woodcliff Lake, N.J. Par develops, manufactures, and markets pharmaceutical products in the United States. Paddock is a privately held company with headquarters in Minneapolis, Minnesota. Paddock is a high volume manufacturer of bioequivalent generic pharmaceuticals and over-the-counter specialty products in the United States. Par and Paddock are engaged in, and their businesses affect, "commerce," as that term is defined in Section 4 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 44. Par and Paddock are represented by White & Case LLP, located at 701 Thirteenth Street, N.W., Washington, D.C. 20005. To the best of my knowledge, White & Case also represents Messrs. Campanelli, Tarriff, and Maloney.

6.    Solvay markets and sells the patented drug AndroGel. AndroGel is a testosterone replacement therapy drug with annual sales of over $350 million in 2007.

7.    Paddock developed a generic version of AndroGel, and filed an abbreviated new drug application (ANDA) on May 21, 2003 to obtain U.S. Food and Drug Administration (FDA) approval to sell its generic drug. Paddock entered into a Product Development, Manufacturing,

2

and Supply Agreement with Par on October 8, 2003 under which Paddock would manufacture its generic AndroGel product and Par would market it.

8.     On August 21, 2003, Solvay filed a patent infringement suit against Paddock in the United States District Court for the Northern District of Georgia. On September 13, 2006, the parties entered into a settlement agreement resolving their patent dispute. Under the terms of the agreement, Paddock, and its assignee Par, agreed not to introduce a generic version of AndroGel until 2015. Consistent with this promise, neither Paddock nor Par has introduced its now FDA-approved generic version of AndroGel. On the same day as the patent settlement, the parties also entered into transactions that provided for substantial payments from Solvay, the patent holder, to Paddock and Par, the alleged infringer and its assignee, respectively.

9.     On March 2, 2007, the Commission issued a Resolution Authorizing Use of Compulsory Process in a Nonpublic Investigation (FTC File No. 071-0060). Pet. Exh. 2. The investigation seeks to determine whether the September 13, 2006 agreements between Solvay and Par or Paddock, or any other agreement, unlawfully delayed entry of a lower-cost generic version of AndroGel in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, as amended. The Commission is conducting this investigation in Washington, D.C.

10.     As part of this investigation, Commission staff issued subpoenas to the Respondents to obtain their testimony relating to the negotiation and terms of the settlement agreement, the relationship between the agreed-upon 2015 entry date in the settlement agreement and the compensation Solvay provided Par and Paddock in the simultaneously-entered transactions, and the potential harm to consumers in delaying the entry of a generic version of AndroGel.

3

11.    On February 13, 2008, the Commission issued three subpoenas *ad testificandum* for investigational hearings of Messrs. Campanelli, Maloney, and Tarriff ("Subpoena" or collectively "Subpoenas"). Pet. Exh. 3. Each Subpoena provided notice that the investigational hearing of the witness would be recorded by sound-and-visual means in addition to stenographic means.

12.    The Commission served the Subpoenas on Respondents' counsel, White & Case LLP. White & Case LLP has accepted all compulsory process issued to Par and Paddock in the Commission's investigation, including all subpoenas issued to current or former employees of Par and Paddock whom White & Case LLP claims to represent. Respondents have not disputed service of the Subpoenas.

13.    On February 20, 2008, Par and Paddock, on behalf of Respondents, filed a Petition to Quash or Limit the Subpoenas ("Petition to Quash"). Pet. Exh. 4. The Petition to Quash asserted that the Commission lacks authority to record its investigational hearings by any means other than stenographic. Respondents did not otherwise object to the Subpoenas.

14.    In the week preceding the Petition to Quash, the Commission attempted to negotiate with counsel for Respondents and Par and Paddock to resolve the dispute. The Commission staff proposed that the investigational hearings of Respondents proceed as scheduled with the understanding that videotapes of the hearings would be discarded if Par and Paddock prevailed on their Petition to Quash. The Commission staff has taken multiple videotaped investigational hearings of other parties in the investigation pursuant to such a stipulation. Respondents declined the Commission staff's proposal. Respondents then offered to consent to videotaped hearings if the Commission staff promised not to use the videotaped

4

testimony outside of its investigation. The Commission staff declined to circumscribe any future permissible uses of the videotaped testimony.

15.  On March 14, 2008, the Commission issued a letter opinion denying Respondents' Petition to Quash. Pet. Exh. 5. The Commission's decision reset the investigational hearing dates of Messrs. Campanelli, Maloney, and Tarriff for March 28, 2008, April 4, 2008, and April 10, 2008, respectively. These dates had been agreed upon with counsel for Respondents.

16.  Notwithstanding the Commission's decision, Respondents informed the Commission on March 21, 2008 that they did not intend to comply with the Subpoenas, and refused to appear for videotaped investigational hearings. Pet. Exh. 6. Respondents did state, however, that they were willing to comply with the Subpoenas if their hearings were recorded only by stenographic means.

17.  Videotaping Respondents' investigational hearings provides the Commission with valuable demeanor evidence, which is useful in assisting its investigation or for any other permissible use of the testimony. Respondents failure to comply with the Subpoenas delays the Commission's investigation into the legality of the conduct at issue.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: April 14, 2008

Jonathan R. Lutinski, Esq.

5

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
William E. Kovacic
J. Thomas Rosch

## RESOLUTION AUTHORIZING USE OF COMPULSORY PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay
Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson
Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock
Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is
engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of
the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining
trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and
supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED:  March 2, 2007

PET EXH. 2



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Scott Tarriff<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | **UNITED STATES OF AMERICA**<br>**FEDERAL TRADE COMMISSION** |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | 2/21/08, 9am (or other agreed upon date) until complete |

**6. SUBJECT OF INVESTIGATION**

Unimed (AndroGel), File No. 0710060

The investigational hearing of Scott Tarriff will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 02/13/08 | *[signature]* |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

PET. EXH. 3
1 of 6

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within
subpoena was duly served:*     (check the method used)

○  *in person.*

○  *by registered mail.*

○  *by leaving copy at principal office or place of business, to wit:*

........................................................
........................................................
........................................................
........................................................

*on the person named herein on:*

........................................................
(Month, day, and year)

........................................................
(Name of person making service)

........................................................
(Official title)

2 of 6



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Ed Maloney<br>Paddock Laboratories, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | **5. DATE AND TIME OF HEARING OR DEPOSITION**<br>2/29/08, 9am (or other agreed upon date) until complete |

**6. SUBJECT OF INVESTIGATION**

Unimed (AndroGel), File No. 0710060

The investigational hearing of Ed Maloney will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 04/13/08 | *[signature]* |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

**PETITION TO LIMIT OR QUASH**

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

**TRAVEL EXPENSES**

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

3of6

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within*
*subpoena was duly served:*    (check the method used)

◯  *in person.*

◯  *by registered mail.*

◯  *by leaving copy at principal office or place of business, to wit:*

.................................................
.................................................
.................................................
.................................................

*on the person named herein on:*

.........................................................................
(Month, day, and year)


.........................................................................
(Name of person making service)


.........................................................................
(Official title)

4 of 6



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Paul Campanelli<br>Par Pharmaceutical Companies, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
|  | **5. DATE AND TIME OF HEARING OR DEPOSITION**<br>3/05/08, 9am (or other agreed upon date) until complete |

6. SUBJECT OF INVESTIGATION

Unimed (AndroGel), File No. 0710060

The investigational hearing of Paul Campanelli will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED<br><br>02/13/08 | COMMISSIONER'S SIGNATURE |
|---|---|

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-A (rev. 10/93)

5 of 6

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within*
*subpoena was duly served:*    (check the method used)

C  *in person.*

C  *by registered mail.*

C  *by leaving copy at principal office or place of business, to wit:*

..............................................................

..............................................................

..............................................................

..............................................................

*on the person named herein on:*

..............................................................................
(Month, day, and year)

..............................................................................
(Name of person making service)

..............................................................................
(Official title)

6 of 6

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

In re

SUBPOENAS AD TESTIFICANDUM
DATED FEBRUARY 13, 2008

**PETITION TO QUASH OR LIMIT
SUBPOENAS DATED FEBRUARY 13, 2008**

FEDERAL TRADE COMMISSION
2008 FEB 20 AM 10: 11
DOCUMENT PROCESSING

J. Mark Gidley
Christopher M. Curran
Eric Grannon
Douglas M. Jasinski
Noah A. Brumfield
**WHITE & CASE**LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel.: (202) 626-3600
Fax: (202) 639-9355

*Attorneys for Par Pharmaceutical Companies, Inc.
and Paddock Laboratories, Inc.*

Dated:  February 20, 2008

PET. EXH. 4

TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ............................................................................................. i

BACKGROUND ........................................................................................................... 1

I. THE COMMISSION'S AUTHORITY TO RECORD INVESTIGATIONAL
HEARINGS IS LIMITED TO THAT PROVIDED IN 16 C.F.R. § 2.8(b), WHICH
PROVIDES THAT INVESTIGATIONAL HEARINGS "SHALL BE
STENOGRAPHICALLY REPORTED." ......................................................................... 4

II. RECORDING INVESTIGATIONAL HEARINGS BY SOUND-AND-VISUAL
MEANS WOULD OVERRIDE THE DUE PROCESS RIGHTS ACCORDED IN
ADJUDICATIVE PROCEEDINGS. ............................................................................. 7

    A. Under the Commission's Existing Rules, Witnesses In Investigational Hearings
       Lack The Due Process Rights Of Witnesses In Adjudicative Proceedings. ............ 7

    B. The Distinction Between Investigational Hearings And Adjudicative
       Proceedings Is Of Constitutional Moment. ............................................................ 8

    C. Videotaping Investigational Hearings Would Erode The Distinction
       Between Investigational And Adjudicative Proceedings And Upset The
       Limited-Rights, Limited-Usage Balance Enshrined In *Hannah*. ........................... 9

CONCLUSION .......................................................................................................... 12

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                 PAGE(S)

*Am. Coke & Coal Chem. Inst. v. E.P.A.*,
  452 F.3d 930 (D.C. Cir. 2006) ........................................................6

*Battle v. F.A.A.*,
  393 F.3d 1330 (D.C. Cir. 2005) .....................................................5

Complaint Counsel Opp'n Br. .........................................................11

*Esch v. Yeutter*,
  876 F.2d 976 (D.C. Cir. 1989) ...................................................5, 6

*Hannah v. Larche.*,
  363 U.S. 420 (1960) ...........................................................1, 7, 8, 9

*Hoechst Marion Roussel, Inc.*,
  2000 WL 33596436 (F.T.C. Oct. 12, 2000) .................................11

*In re Schering-Plough Corp.*,
  2001 WL 1478354 (Nov. 1, 2001) ...........................................10, 11

*In re Resort Car Sys., Inc.*,
  83 F.T.C. 234 (1973) ....................................................................11

*PanHandle E. Pipe Line Co. v. Fed. Energy Regulatory Comm'n*,
  613 F.2d 1120 (D.C. Cir. 1979) .....................................................5

*Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue*,
  55 T.C.M. (CCH) 144 (1988) .......................................................12

## OTHER AUTHORITIES

16 C.F.R. § 2.7 ...................................................................*passim*

16 C.F.R. § 2.8 ...................................................................*passim*

16 C.F.R. § 2.9 ...................................................................*passim*

Fed. R. Civ. P. 30 ...................................................................5, 9

Fed. R. Civ. P. 32 .....................................................................9

Merriam-Webster's Collegiate Dictionary (10th ed. 2000) ...............4

i

Pursuant to 16 C.F.R. § 2.7(d), Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc., hereby petition to limit or quash the *subpoenas ad testificandum* issued on February 13, 2008 for the investigational hearings of Messrs. Paul Campanelli, Scott Tarriff, and Ed Maloney (such subpoenas attached hereto as Exhibits A, B, and C, respectively). More specifically, Par and Paddock petition to limit or quash the subpoenas to the extent each subpoena purports that: "The investigational hearing of [named individual] will be recorded by sound-and-visual means . . . ." For the reasons detailed below, the Commission's regulations limit its authority to record investigational hearings to stenographic means. 16 C.F.R. § 2.8(b). Furthermore, the Commission has never sought a rulemaking to authorize videotaping of investigational hearings. Additionally, recording such non-adjudicative hearings by "sound-and-visual" means would override the due process rights accorded to witnesses in adjudicative proceedings. *E.g.*, *Hannah v. Larche*, 363 U.S. 420 (1960).

## BACKGROUND

On November 29, 2007, a *subpoena ad testificandum* for an investigational hearing was issued for Mr. Paul Campanelli (Exhibit D). Subsequently, on January 16, 2008, *subpoenas ad testificandum* for investigational hearings were issued for Messrs. Scott Tarriff and Ed Maloney (Exhibits E and F, respectively). None of the subpoenas provided for recording the investigational hearings by means other than the stenographic reporting expressly provided for in 16 C.F.R. § 2.8(b).

On January 16, 2008, Mr. Campanelli appeared for his investigational hearing as scheduled by his subpoena. Following the Commission's regulations and customary practice, the Campanelli investigational hearing was recorded only by stenographic means. After a full-day hearing, Mr. Campanelli agreed to Commission staff's request to continue the hearing to a

second day, March 5, 2008. Mr. Campanelli has not been provided with a transcript of the first day of his investigational hearing.

On January 28, 2008, Commission staff raised for the first time the issue of recording the investigational hearings by "sound-and-visual" means. Commission staff declared by letter its intention to record the investigational hearings of Messrs. Campanelli, Tarriff, and Maloney by "sound-and-visual" means. *See* January 28, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield (Exhibit G). Commission staff offered no authority or rationale for this deviation from the express provision of 16 C.F.R. § 2.8(b) or the Commission's customary practice (or, in the case of Mr. Campanelli's hearing, the Commission's already-commenced approach).

Counsel for Par and Paddock then attempted to resolve the matter, seeking via written and oral communications the staff's authority for videotaping of investigational hearings, as well as the rationale for this departure from the Commission's practice. *See* February 4, 2008 Letter from Noah A. Brumfield to Jonathan R. Lutinski (Exhibit H); February 6, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield (Exhibit I); February 12, 2008 Letter from Noah A. Brumfield to Jonathan R. Lutinski (Exhibit J); February 13, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield (Exhibit K); *see also* Statement Required by 16 C.F.R. § 2.7(d)(2) (detailing the good faith efforts to resolve by agreement the issue raised by this petition) (attached hereto as "Appendix").

In these written and oral communications, the Commission staff was unable to cite any authority for recording investigational hearings by other than stenographic means. Instead, Commission staff simply asserted that the Commission has the authority to record investigational hearings by "sound-and-visual" means because nothing in the pertinent regulations expressly prohibits such a method of recording. *See* February 13, 2008 Letter from Jonathan R. Lutinski to

Noah A. Brumfield ("[N]othing in either the FTC Act or the FTC Rules of Practice prevents staff from videotaping investigational hearings to further this objective.") (Exhibit I).

Par and Paddock responded that in the absence of authority other than 16 C.F.R. § 2.8(b), which expressly provides for the stenographic reporting of investigational hearings, the three witnesses would not participate in investigational hearings recorded by other than stenographic means. *See* February 12, 2008 Letter from Noah A. Brumfield to Jonathan R. Lutinski (Exhibit J); February 13, 2008 Letter from Noah A. Brumfield to Jonathan R. Lutinski (Exhibit L). Par and Paddock also noted that the applicable subpoenas made no provision for the recording of the investigational hearings by anything other than the stenographic means expressly provided for by 16 C.F.R. § 2.8(b).

Apparently in response to the questions raised by Par and Paddock, on February 13, 2008 new *subpoenas ad testificandum* were issued for the continuation of Mr. Campanelli's investigational hearing and for the investigational hearings of Messrs. Tarriff and Maloney. Each new subpoena provided that the investigational hearing of the named witness would be "recorded by sound-and-visual means in addition to stenographic means." (Exhibits A, B, and C.) No regulation or authority for this wording appeared in the subpoena. The original dates for each investigational hearing were not changed. Thus, for Mr. Tarriff, for example, the new subpoena providing for recording by "sound-and-visual" means was issued only four business days prior to his scheduled investigational hearing on February 21.

Notably, throughout the communications between staff and counsel for Par and Paddock, in addition to failing to cite any authority for recording investigational hearings by "sound-and-visual" means, staff refused to provide any reason for seeking such recording, *see* Statement

required by 16 C.F.R. § 2.7(d)(2) at ¶ 7. Furthermore, staff admitted that its attempt to record the investigational hearings is novel and unprecedented prior to this investigation. *See id.* at ¶ 4.

**I.  THE COMMISSION'S AUTHORITY TO RECORD INVESTIGATIONAL HEARINGS IS LIMITED TO THAT PROVIDED IN 16 C.F.R. § 2.8(b), WHICH PROVIDES THAT INVESTIGATIONAL HEARINGS "SHALL BE STENOGRAPHICALLY REPORTED."**

Title 16 C.F.R. § 2.8(b) provides that investigational hearings "***shall be stenographically reported*** and a ***transcript*** thereof shall be made a part of the record of the investigation." (Emphasis added.) In addition to this express provision, each and every other reference to the recording of investigational hearings throughout the pertinent regulations refers to stenographic means. *E.g.*, 16 C.F.R. § 2.8(c) ("In investigational hearings . . . the Commission investigators shall exclude from the hearing room all other persons except the person being examined, his counsel, the officer before whom the testimony is to be taken, and ***the stenographer*** recording such testimony."); 16 C.F.R. § 2.9(a) ("Any person compelled . . . to testify in an investigational hearing shall be entitled to retain a copy . . . of his own testimony ***as stenographically reported***, except that in a nonpublic hearing the witness may for good cause be limited to inspection of the official ***transcript*** of his testimony.") (emphases added); *see also, e.g.*, Merriam-Webster's Collegiate Dictionary 1148 (10th ed. 2000) (defining "stenography" as "1: the art or process of writing in shorthand; 2: shorthand esp. written from dictation or oral discourse; 3: the making of shorthand notes and subsequent transcription of them – stenographic . . . *adj* – stenographically . . . *adv*").

Nowhere in any of the Commission's regulations on investigational hearings is there any reference to videotaping, "sound-and-visual" recording, or memorializing investigational hearings by anything other than "stenographic" means. Nor is there any other indication

whatsoever that investigational hearings might be recorded by videotaping, "sound-and-visual" recording, or anything other than "stenographic" means.

The mention of only stenographic means is conspicuous because the Commission amended the provision governing investigational hearings, 16 C.F.R. § 2.8, most recently in 1996—three years *after* the Federal Rules of Civil Procedure were amended specifically to provide for depositions to be recorded by "sound-and-visual" means. Fed. R. Civ. P. 30(b)(2) (1993). Thus, the express provision for stenographic recording in 16 C.F.R. § 2.8 and the absence of any reference to other means of recording must be considered intentional and meaningful.

"It is well settled that an agency is legally bound to respect its own regulations, and commits procedural error if it fails to abide by them." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *see also, e.g.*, *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("[A]gencies may not violate their own rules and regulations to the prejudice of others."); *Panhandle E. Pipe Line Co. v. Fed. Energy Regulatory Comm'n*, 613 F.2d 1120, 1135 (D.C. Cir. 1979) ("[W]e do not believe the Commission should have authority to play fast and loose with its own regulations. It has become axiomatic that an agency is bound by its own regulations.").

Despite the fact that 16 C.F.R. § 2.8(b) unequivocally provides that investigational hearings "shall be stenographically reported," Commission staff has taken the position that it can record investigational hearings by "sound-and-visual" means because the regulations *do not expressly prohibit* such a recording method. *E.g.*, February 6, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield ("[N]othing in either the FTC Act or the FTC Rules of Practice *prevents* staff from videotaping investigational hearings . . . .") (emphasis added) (Exhibit I). The staff's position, which tacitly acknowledges that the FTC Act and FTC Rules do not

*authorize* videotaping investigational hearings, is at loggerheads with the fundamental principle of administrative law that an agency's authority is derived from its regulations. *E.g.*, *Esch*, 876 F.2d at 991 ("It is well settled that an agency is legally bound to respect its own regulations, and commits procedural error if it fails to abide by them."). By the staff's logic, the staff could, for example, administer lie detectors or voice stress analyzers as a means of recording its investigational hearings because such methods of recording are not prohibited expressly by the regulations. Contrary to the staff's claim, silence is not authority for agency conduct, particularly, where, as here, the regulation expressly mandates the means to be used.

Furthermore, in the 14 years since the Federal Rules of Civil Procedure were amended specifically to provide for videotaped depositions, the Commission has chosen *not* to attempt to amend its own rules to enable such recording of investigational hearings by "sound-and-visual" means. Permitting investigational hearings to be recorded by "sound-and-visual" means despite the express language of 16 C.F.R. § 2.8(b) and the Commission's decision not to pursue an amendment of the provision (as previously occurred under the Federal Rules) plainly would circumvent the rulemaking process and opportunity for public comment that are crucial to legitimate agency action. *E.g.*, *Am. Coke & Coal Chem. Inst. v. E.P.A.*, 452 F.3d 930, 938 (D.C. Cir. 2006) ("Under the APA, notice requirements are designed (1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties . . . .").[†]

---

[‡] That the staff's attempt to videotape investigational hearings in this investigation appears to be unprecedented is a further indication that the Commission is not authorized to do so.

II.  **RECORDING INVESTIGATIONAL HEARINGS BY SOUND-AND-VISUAL MEANS WOULD OVERRIDE THE DUE PROCESS RIGHTS ACCORDED IN ADJUDICATIVE PROCEEDINGS.**

A. **Under the Commission's Existing Rules, Witnesses in Investigational Hearings Lack the Due Process Rights of Witnesses in Adjudicative Proceedings.**

The investigational hearings provided for under the Commission's Part II, "Nonadjudicative Procedures" regulations are distinguished expressly from the hearings in adjudicative proceedings:  "Investigational hearings, as distinguished from hearings in adjudicative proceedings, may be conducted in the course of any investigation undertaken by the Commission . . . ."  16 C.F.R. § 2.8(a); *see also Hannah v. Larche*, 363 U.S. at 446 ("A typical agency is the Federal Trade Commission.  Its rules draw a clear distinction between adjudicative proceedings and investigative proceedings.").

The distinction between investigational hearings and adjudicative proceedings turns on at least three limitations on the rights of witnesses in investigational hearings versus the traditional due process rights accorded to witnesses in adjudicative proceedings.  First, under the Commission's rules, investigational hearings are *ex parte*.  16 C.F.R. § 2.8(c) ("[T]he Commission investigators shall exclude from the hearing room all other persons except the person being examined, his counsel, the officer before whom the testimony is to be taken, and the stenographer recording such testimony.").  Accordingly, in this multi-party investigation, the Commission has prevented counsel for Par and Paddock from attending the investigational hearings of witnesses from the other companies that are party to the investigation.  *See* December 18, 2007 Letter from Douglas M. Jasinski to Meredyth Smith Andrus (Exhibit M).

Second, under the Commission's rules, there is no right to cross-examination in an investigational hearing 16 C.F.R. § 2.9(b)(5).

7

Third, under the Commission's rules, the rights of witnesses to object to questions in investigational hearings are limited strictly to objections that the question: (i) is outside the scope of the investigation; or (ii) calls for privileged information. 16 C.F.R. § 2.9(b)(2). Thus, for example, objections are not permitted in investigational hearings even to questions that call for notoriously unreliable hearsay evidence. *Id.*

### B. The Distinction Between Investigational Hearings And Adjudicative Proceedings Is Of Constitutional Moment.

In *Hannah v. Larche*, 363 U.S. 420 (1960), the U.S. Supreme Court relied on the distinction between investigational hearings and adjudicative proceedings in upholding the due process limitations in investigational hearings: "We have found no authorities suggesting that the rules governing Federal Trade Commission investigations violate the Constitution, and this is understandable since any person investigated by the Federal Trade Commission will be accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding . . . ." *Hannah*, 363 U.S. at 446.

The Court explained further that "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." *Hannah*, 363 U.S. at 442. Thus, in *Hannah* the Court established that the testimony obtained from investigational hearings is *not* substitutable for the testimony obtained in adjudicative proceedings. The limitations on the rights accorded in investigational hearings dictate the limitations on the usage of the testimony so obtained.

**C. Videotaping Investigational Hearings Would Erode The Distinction Between Investigational And Adjudicative Proceedings And Upset The Limited-Rights, Limited-Usage Balance Enshrined In *Hannah*.**

Under the Federal Rules of Civil Procedure, videotaped depositions are not problematic because the deponent has the full panoply of rights traditionally accorded to witnesses, and the testimony, accordingly, can be used at trial. Fed. R. Civ. P. 32(a)(1) ("At a hearing or trial, all or part of a deposition may be used against a party . . . ."). In particular, depositions under the Federal Rules provide for: (i) the participation of all parties to the litigation, Fed. R. Civ. P. 30(b)(1), 30(c); (ii) cross-examination, Fed. R. Civ. P. 30(c)(1); and (iii) the full range of evidentiary objections, Fed. R. Civ. P. 30(c)(2).

Indeed, under the Federal Rules, deposition testimony can be used *in place of trial testimony* if the witness is unavailable at the time of trial. Fed. R. Civ. P. 32(a)(4)(A)-(E). Thus, under the Federal Rules, deposition testimony, videotaped or otherwise, *is* substitutable for testimony in the adjudicative proceeding.

In contrast, because investigational hearing testimony is *not* substitutable for testimony in an adjudicative proceeding, videotaping an investigational hearing would erode the constitutional distinction between an investigational hearing and an adjudicative proceeding. *See Hannah*, 363 U.S. at 446 (noting the constitutional dimension of the distinction). The verisimilitude of a videotaped investigational hearing to the testimony rendered in an adjudicative proceeding would over-dignify the former and imperil the sanctity of the latter. ***Hannah*'s *logic*** that the circumscription of rights in an investigational hearing is tolerable under the Constitution "since any person investigated by the Federal Trade Commission will be accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding," 363 U.S. at 446, ***would no longer***

9

*adhere* if the videotaped testimony from the investigational hearing arguably could be equated to or otherwise undermine the testimony in an adjudicative proceeding.

As noted in the Background section above, the Commission staff has never offered any reason for seeking to record the investigational hearings at issue by "sound-and-visual" means. That is because there is no genuine reason to seek to do so other than to attempt to invade a subsequent adjudicative proceeding with the videotaped testimony from the investigational hearing—either as impeachment evidence or in place of trial testimony if the witness is unavailable. This danger is evident from the positions taken by staff in prior cases.

In the Part III proceeding in *In re Schering-Plough Corp.*, F.T.C. Complaint Counsel sought to depose executives of one of the Respondent companies, American Home Products ("AHP"). AHP objected that the depositions would be duplicative and harassing because the executives already had been subject to investigational hearings during the preceding Part II investigation. In that case, Complaint Counsel relied on the fundamental distinction between investigational hearing testimony and adjudicative proceeding testimony in successfully opposing AHP's petition to quash the deposition subpoenas: "Investigational hearings are conducted to gather evidence in order to determine if a complaint should be brought. Depositions serve the purpose of establishing testimony with an eye towards proving certain allegations at trial." Complaint Counsel Br. at 2, *In re Schering-Plough Corp.*, 2001 WL 1478354 (Westlaw pagination).

In particular, Complaint Counsel emphasized that the depositions were necessary to develop impeachment evidence for the Part III trial because an investigational hearing is not properly used to gather impeachment material:

> ***Developing testimony to be used for impeachment purposes is simply not a purpose of an investigational hearing.*** Questions at investigational hearings are

designed to gather information for a particular inquiry. They are not designed to elicit answers looking toward impeaching a witness at trial. The latter is the purpose of a deposition.

*Id.* at 3 (emphasis added); *see also Hoechst Marion Roussel, Inc.*, 2000 WL 33596436 (F.T.C. Oct. 12, 2000) ("Simply because the agents of Respondents were examined during the pre-complaint investigation does not preclude Complaint Counsel from taking the depositions of these individuals in accordance with Part III of the Commission's Rules of Practice.").

Yet, just two months later in the very same Part III proceeding in *Schering-Plough*, Complaint Counsel argued for the admissibility at trial of the investigational hearing transcripts of Respondent company witnesses: "Testimony taken during investigational hearings, by definition, is information obtained by the Commission during the investigation, and thus *all investigational hearing transcripts may be offered in evidence in this [Part III] proceeding*." Complaint Counsel Opp'n Br. at 7 (emphasis added) (Exhibit N). And Complaint Counsel used this investigational hearing testimony as impeachment evidence in the Part III trial despite also having taken Part III depositions of each of the same Upsher-Smith witnesses who had been subject to the investigational hearings.

The *Schering-Plough* matter exemplifies that despite the avowed distinction between investigational hearings and adjudicative proceedings—even as enshrined by *Hannah*—the Commission nonetheless uses investigational hearing testimony in adjudicative proceedings. *See also, e.g., In re Resort Car Sys., Inc.*, 83 F.T.C. 234, 284-85 (1973) (decision of the full Commission affirming the admissibility of investigational hearing testimony in a Part III adjudication: "No testimony obtained at the investigational hearing was admitted into evidence at the adjudicative hearing for the truth of its contents."). In that event, the investigational hearing witness (or his counsel) must resign himself to pro forma caveats in the adjudicative

11

proceeding that the investigational hearing testimony was obtained under constitutionally circumscribed conditions and should be weighed accordingly. For stronger reason then, it would be that much harder to cabin the slippage of "Memorex" investigational hearings into adjudicative proceedings.

Notably, F.T.C. investigational hearing testimony has slipped into adjudicative proceedings conducted by *other* federal agencies. *E.g.*, *Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue*, 55 T.C.M. (CCH) 144 (1988) (Internal Revenue Service using a witness's seven-year-old F.T.C. investigational hearing testimony in a federal court tax adjudication).

Thus, in addition to the due process concerns with videotaping investigational hearings, there are substantial privacy concerns both with the intrusiveness of unregulated videotaped investigational hearings as well as with the subsequent unpredictable usage of such unregulated videotaped testimony.

Beyond the plain lack of authority to videotape investigational hearings (detailed in Section I above), there is no genuine reason to videotape an investigational hearing except to misuse that testimony to intrude upon testimony in a subsequent adjudicative proceeding. (The Commission's authority to record by "sound-and-visual" means the testimony taken at the Part-III, adjudicative stage is not implicated here.)

## CONCLUSION

For the foregoing reasons, the *subpoenas ad testificandum* issued on February 13, 2008 for the investigational hearings of Messrs. Paul Campanelli, Scott Tarriff, and Ed Maloney

should be quashed or limited to the extent each subpoena purports that the subject investigational

hearing "will be recorded by sound-and-visual means . . . ."

Dated:  February 20, 2008

Respectfully submitted,

J. Mark Gidley
Christopher M. Curran
Eric Grannon
Douglas M. Jasinski
Noah A. Brumfield
**WHITE & CASE** LLP
701 13th Street, N.W.
Washington, DC  20005
(202) 626-3600

*Attorneys for Par Pharmaceutical Companies, Inc.
and Paddock Laboratories, Inc*

13



UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Office of the Secretary

March 14, 2008

**VIA FACSIMILE AND EXPRESS MAIL**

Par Pharmaceutical Co., Inc.
Paddock Laboratories, Inc.
c/o J. Mark Gidley, Esquire
White & Case, LLP
701 13th Street, N.W.
Washington, DC 20005

     Re:   *Petition to Quash or Limit Subpoenas Dated February 13, 2008*
          File No. 0710060

Dear Mr. Gidley:

     The challenged subpoenas were issued in the Commission's investigation to determine whether there is reason to believe that patent settlements between a manufacturer of branded pharmaceuticals and Petitioners (Par Pharmaceutical Co., Inc. and Paddock Laboratories, Inc.) violate § 5 of the Federal Trade Commission Act. 15 U.S.C. § 45. This letter advises you of the Commission's disposition of the Petition to Quash or Limit Subpoenas Dated February 13, 2008 ("Petition to Quash") issued to Messrs. Paul Campanelli, Ed Maloney, and Scott Tarriff for oral testimony at investigational hearings to be conducted in accordance with the provisions of Commission Rules 2.8 and 2.9, 16 C.F.R. §§ 2.8, 2.9, on various dates, compliance with which is stayed pending disposition of this motion. 16 C.F.R. § 2.7(d)(4). Commissioner Pamela Jones Harbour, acting as the Commission's delegate, in her sole discretion, has referred this Petition to the full Commission for determination. *See Id.*

     The Petition to Quash does not challenge the Commission's right to take these investigational hearings or argue that the hearings themselves constitute some undue burden; rather, it argues that video recording of investigational hearings is prohibited by the Commission's Rules, and would deprive Petitioners of due process of law. The Petition to Quash is denied for the reasons stated herein. Unless modified in accordance with 16 C.F.R. § 2.7(c), Messrs. Campanelli, Maloney, and Tarriff must comply with the Subpoenas *Ad Testificandum* on the following dates: Campanelli, March 28, 2008; Maloney, April 4, 2008; and Tarriff, April 10, 2008.

PET. EXH. 5
1 of 6

J. Mark Gidley, Esquire – Page 2.                                    **March 14, 2008**

## I.    Background and Summary

The Federal Trade Commission issued subpoenas *ad testificandum* on February 13, 2008, to Messrs. Campanelli, Maloney, and Tarriff for oral testimony at investigational hearings. Petitioners' counsel accepted service of process on their behalf. In relevant part, each subpoena provides that: "The investigational hearing of [person directed to appear] will be recorded by sound-and-visual means in addition to stenographic means." Exhibits A, B, and C to Petition to Quash. Petitioners timely filed the Petition to Quash on February 20, 2008.[1]

## II.    Investigative Authority of the Federal Trade Commission.

The investigational powers of the Commission are derived from Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, 57b-1, and are exercised in accordance with the procedures set out in Part 2A of the Commission's Rules. 16 C.F.R. §§ 2.1-2.16. Congress vested the Federal Trade Commission with broad independent authority to enact rules and regulations to carry out its mission. The Commission has properly implemented those rules of practice for non-adjudicative Part 2 proceedings, including investigational hearings, through proper rule making procedures. *See id.* The Commission's Rules do not forbid videotaping investigational hearings. The Petition to Quash, however, claims that the *absence* of express reference to videotaping in the Rules bars the Commission from videotaping investigational hearings.

Congress intended the Commission to "have ample power of subpoena" which it "expressly made broad enough to permit a full exercise of that power in connection with any kind of investigation which may be undertaken." H.R. Rep. No. 63-533, pt. 1, at 7 (1914). The courts have confirmed the "[C]ongressional purpose to endow the Commission with broad powers of investigation. . . ." *Fed. Trade Comm'n v. Browning*, 435 F.2d 96, 99 (D.C. Cir. 1970). This is the context in which the Commission must interpret whether the Commission's Rules allow videotaping of investigational hearings.

---

[1] In ruling on the Petition to Quash, the Commission expressly does not reach the issue of whether Petitioners have standing to file the Petition to Quash subpoenas served on Messrs. Campanelli, Maloney, and Tarriff–who are either current or former employees of Petitioners–without joining them as parties to this Petition to Quash. While the Commission has reason to believe that counsel for Petitioners also represent Messrs. Campanelli, Malone, and Tarriff, no representation to that effect appears in the Petition to Quash. The Commission assumes that the individuals subpoenaed are aware of the instant Petition to Quash and have elected not to raise any objections particular to themselves regarding compliance with the subpoenas.

2 of 6

J. Mark Gidley, Esquire – Page 3.                                        March 14, 2008

---

### III.    The Rules Permit Videotaping of Investigational Hearings.

Investigational hearings are conducted pursuant to Commission Rules 2.8 and 2.9. Rule 2.8 (b) reads in part that investigational hearings "shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation." 16 C.F.R. § 2.8(b). Petitioners interpret this language as foreclosing all other means of recording investigational hearings.[2] In doing so, Petitioners read the Rule narrowly and ask the Commission to find a negative implication in the Rule's reference to stenographic recording and transcription.[3]

The Commission finds that the requirement that such hearings be "stenographically reported" and transcribed establishes a *minimum* standard of recordation, and, further, that this minimum standard does not foreclose any, much less all, other means of recording. Were we to accept Petitioners' narrow reading of the rule, it would forbid court reporters from using stenotype machines or other modern recording systems such as steno masks, audiotapes, and digital back-up systems to enhance the accuracy of transcription. It would also seem to prohibit both Commission staff and counsel for the witness from taking longhand notes during the course of investigational hearings.[4] The Commission sees no merit in denying either itself or the witness the protections afforded by an accurate record, and therefore does not draw any negative

---

[2] Petitioners' reliance on an analogy to the 1993 amendments to the Federal Rules of Civil Procedure allowing videotaped depositions, Petition to Quash at 5, to argue that a negative implication is appropriate here is unpersuasive. The important feature of the 1993 amendment was not that it referred to videotaping, but that it allowed the noticing party to decide to videotape without prior leave of court. Fed. R. Civ. P. 30(b)(2) and (3) advisory committee notes (1993). Further, the Federal Rules of Civil Procedure provide no authority regarding the Commission's own Part 2–Nonadjudicative Procedures.

[3] Although not stated by Petitioners, they in effect ask the Commission to invoke the old Latin maxim of construction *expressio unius est exclusio alterius* in their favor. Reed Dickerson refers to this maxim as, "Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. . . . Accordingly, the maxim is at best a description, after the fact, of what the court has discovered from context." REED DICKERSON, THE INTERPRETATION AND APPLICATION OF STATUTES 234-35 (1975). Likewise, Richard Posner observed that the Supreme Court's usage of this maxim "confirms that judicial use of canons of construction is opportunistic." RICHARD A. POSNER, THE FEDERAL COURTS: CRISIS AND REFORM 282 (1985). The Commission's rules concern themselves with insuring the fairness and reliability of its investigations; accordingly, we decline the opportunity to use this maxim to construe Rule 2.8 in a manner that would preclude using technology to enhance the accuracy of the records of investigational hearings without enhancing fairness in any way.

[4] The Petition to Quash, page 4, relies on a narrow definition of stenography: "'1: the art or process of writing in shorthand[] 2: shorthand esp. written from dictation or oral discourse[] 3: the making of shorthand notes and subsequent transcription of them – stenographic . . . *adj* – stenographically . . . *adv'*. . ." (citation omitted).

3 of 6

or preclusive inference from the Rule's stenographic reporting requirement.  Instead, we find that the FTC Act and our Rules permit video recording of investigational hearings.

Rule 2.8(b), 16 C.F.R. § 2.8(b) states that "[i]nvestigational hearings shall be conducted . . . for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation."[5]  Witness testimony includes both verbal and nonverbal evidence, sometimes referred to as the witness's demeanor, or demeanor evidence.  Petitioners' interpretation of Rule 2.8(b) would require the Commission to hold that the Rule was intended to yield records of investigational hearings devoid of witness demeanor evidence.  Videotaping captures the witness's nonverbal testimony which, at a minimum, relates to a subject which is always relevant in an investigation: the credibility of each witness.[6]

Finally, the Petition to Quash relies on various cases at pages 5 and 6 for the general proposition that the Commission cannot violate its own rules, especially when doing so would be prejudicial to others.  However, the Petitioners concede that the rules do not explicitly forbid the use of videotaping.  Moreover, Petitioners have not identified how supplementing the stenographic record of these hearings with videotape could unfairly prejudice the witnesses.  Accordingly, the cases cited by Petitioners are inapposite and the Commission finds that Petitioners have not provided sufficient law or facts to warrant granting this Petition to Quash.[7]

---

[5] "Data" is neither a narrow nor technical term.  It includes "factual information . . . used as a basis for reasoning, discussion, or calculation" . . . as well as "information output by a sensing device or organ that includes both useful and irrelevant or redundant information and must be processed to be meaningful."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 293 (10th ed. 2002).

[6] In appropriate cases, 16 C.F.R. § 2.9(b)(6) provides additional authority for videotaping investigational hearings.  The person conducting the hearing is vested with broad discretion to "take all necessary action to regulate the course of the hearing" in order to "avoid delay" and to "prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct. . . ."  *Id.*  "Conduct that a stenographic transcript could not adequately convey–such as aggressive examination, abusive treatment of opposing counsel or the witness, and witness coaching–may be preserved in full detail on video.  Therefore, the video deposition is a powerful means of curbing discovery abuse."  Michael J. Henke and Craig D. Margolis, *The Taking and Use of Video Depositions: An Update*, 17 REV. LITIG. 1, 20 (1998).  Videotaping provides the person conducting the hearing with an important tool to protect the integrity of the investigation and the subjects being investigated.  Videotaping a hearing, especially one not directly supervised by an independent adjudicative officer, can be a "necessary action to regulate the course of the hearing" within the meaning of Rule 2.9(b)(6).

[7] *See Fed. Trade Comm'n v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977) ("The burden of showing that the request is unreasonable is on the subpoenaed party.  Further, that burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to the purpose.").

4 of 6

J. Mark Gidley, Esquire – Page 5.                                    March 14, 2008

---

**IV.     Videotaping These Investigational Hearings Will Not Infringe Any of Petitioners'
          Due Process Rights.**

    Petitioners do not claim that the Commission's procedures for these investigational
hearings, other than videotaping, deprive them or Messrs. Campanelli, Maloney, and Tarriff of
any due process rights. Rather, Petitioners argue that "videotaping an investigational hearing
would erode the constitutional distinction between an investigational hearing and an adjudicative
hearing . . ." because it "would over-dignify the former and imperil the sanctity of the latter."
Petition to Quash at 9. Petitioners further argue that "there is no genuine reason to seek to
[videotape] other than to attempt to invade a subsequent adjudicative proceeding with the
videotaped testimony from the investigational hearing." *Id.* at 10.

    Petitioners also do not identify which attribute of videotaping makes that recording
medium more capable of turning investigational hearings into adjudicative hearings than the
attributes of any other recording medium–be it stenography, audio tape recording, or trial
testimony regarding the investigational hearing. Thus, Petitioners have advanced no cognizable
claim that videotaping, by itself, could ever abridge their due process rights, in these or any other
hearings.

    Finally, Petitioners assert that testimony taken during an investigational hearing can never
be admissible in evidence at the time of trial. Petition to Quash at 9-10. Petitioners have not
shown how differences between stenographic recording and video recording would ever
determine whether that testimony should be received in evidence at trial. Petitioners also have
not demonstrated, and we reject any implication, that it would *always* be impermissible as a
matter of due process to offer testimony from our investigational hearings into evidence at the
time of trial. Indeed, Petitioners themselves cite a case which is contrary to that proposition.[8]

---

    [8] *Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue*, 55 T.C.M.
(CCH) 144 (1988), cited by Petition to Quash at 12, is such a case. In that matter a witness was
confronted with his prior contradictory testimony from an investigational hearing conducted by
the FTC during a subsequent IRS adjudicative proceeding testing the validity of a claimed tax
exemption. *See also FTC v. Whole Foods Market, Inc.*, 502 F. Supp. 2d 1, 4; *FTC v. Foster*, No.
Civ. 07-352, 2007 WL 1793441, at *9, *38 (D.N.M. May 29, 2007); *FTC v. Arch Coal, Inc.,* 329
F. Supp. 2d 109, 117 n.4, 141, 152 (D.D.C. 2004). Indeed, the Supreme Court has even allowed
illegally seized evidence which could not be used as evidence in the prosecutor's case-in-chief in
a criminal trial to be used to impeach a defendant's testimony. *Walder v. United States*, 347 U.S.
62, 65 (1954) ("It is one thing to say that the Government cannot make an affirmative use of
evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal
method by which evidence in the Government's possession was obtained to his own advantage,
and provide himself with a shield against contradiction of his untruths. Such an extension of the
Weeks doctrine would be a perversion of the Fourth Amendment."). Petitioners' reliance on
*Hanna v. Larche*, 363 U.S. 420 (1960), is unavailing. Petition to Quash at 1, 7-9. Nothing in
that case questions the reliability of the Commission's investigational hearings or limits the

5 of 6

J. Mark Gidley, Esquire – Page 6.                                    **March 14, 2008**

The means used to memorialize investigational hearing testimony does not control whether or when that testimony can be used at trial. Whether particular testimony from an investigational hearing will be admissible at the time of trial depends on facts particular to the evidence being offered, the circumstances prevailing at the time of the offer, and the purpose for which it is offered.

Because the Commission cannot anticipate every fact that might arise at the time of trial bearing on the admissibility of any given testimony that might be taken during these investigational hearings, it would be premature and speculative for the Commission to rule on such issues at this time. There will be time enough for the trial judge to review any due process implications arising from such evidence. Accordingly, we find that this Petition to Quash does not raise any due process issues we can resolve at this time regarding subsequent uses of testimony from these investigational hearings, regardless of how they might be recorded.

**V.     CONCLUSION AND ORDER**

For all the foregoing reasons, **IT IS ORDERED THAT** the Petition to Quash be, and it hereby is, **DENIED**. Pursuant to Rule 2.7(e), Messrs. Campanelli, Maloney, and Tarriff must appear and testify on the following dates: Mr. Campanelli, March 28, 2008; Mr. Maloney, April 4, 2008; and Mr. Tarriff, April 10, 2008.

**By direction of the Commission.**

Donald S. Clark
Secretary

---

subsequent use of testimony from such hearings in adjudicative proceedings under appropriate circumstances.

WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel   + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646    egrannon@whitecase.com

March 21, 2008

<u>VIA E-MAIL</u>

Markus H. Meier, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE**
**PROPRIETARY BUSINESS INFORMATION**
**CONFIDENTIAL TREATMENT**
<u>**REQUESTED UNDER FTC RULES AND FOIA**</u>

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),</u>
       <u>Civil Investigative Demands</u>

Dear Mr. Meier:

        This letter follows our telephone conversation yesterday and my subsequent letter to you dated yesterday.  As you know, after cooperating with the Commission's investigation for over a year without serious dispute, we have a good-faith objection concerning the Commission's authority to videotape the three investigational hearings that the Commission has noticed for such recording.  Because you have declined our offer of compromise to proceed with videotaped investigational hearings for the three witnesses pursuant to a written agreement with the Commission not to use the videotapes outside of this Part-II investigation, we are left with no choice but to have the issue resolved by a district court.

        To that end, this letter constitutes our unequivocal, good-faith intention not to comply with the three subpoenas at issue because those subpoenas notice videotaped investigational hearings rather than the stenographically reported investigational hearings expressly provided for in 16 C.F.R. § 2.8(b).  For avoidance of doubt, Messrs. Campanelli, Maloney, and Tarriff — who would have appeared for stenographically reported investigational hearings and even for videotaped hearings pursuant to a written agreement with the Commission not to use those videotapes outside of this Part-II investigation — will not appear for investigational hearings to be videotaped without restriction as to use of the videotapes outside of this Part-II investigation. We are communicating this intention to the Commission today rather than waiting to establish our good-faith non-compliance on each of the applicable subpoena return dates — March 28, April 4, and April 10, 2008 — to enable the Commission to bring an enforcement action as soon as possible, without undue delay, to set the matter for resolution by a district court.  To further facilitate and expedite such resolution, I will accept service of process on behalf of my clients.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG
HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUNICH
NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

PET, EXH. 6

Markus H. Meier, Esq.

WHITE & CASE

March 21, 2008

The Commission's non-public, Part-II investigational hearings are akin to grand jury proceedings. *E.g.*, *Hannah v. Larche*, 363 U.S. 420, 449 n.30 (1960); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). Accordingly, any enforcement proceeding brought by the Commission concerning an investigational hearing must similarly safeguard the identity of the relevant companies and witnesses in the caption and body of the Commission's enforcement papers (e.g., "*In re Subpoenas Ad Testificandum Dated February 13, 2008*").

The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Bradley S. Albert, Esq.
       Meredyth Smith Andrus, Esq.
       June lm, Esq.
       Steve Vieux, Esq.
       Mark Woodward, Esq.
       Jonathan R. Lutinski, Esq.
       Noah A. Brumfield, Esq.
       Douglas M. Jasinski, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. No. |
| | ) | |
| SCOTT TARRIFF, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM IN SUPPORT OF PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING SUBPOENAS *AD TESTIFICANDUM*

### PRELIMINARY STATEMENT

Petitioner, the Federal Trade Commission ("FTC" or "Commission"), by its designated attorneys and pursuant to Sections 9 and 16 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 49, 56, petitions this Court for an Order requiring Mr. Scott Tarriff, the former Chief Executive Officer of Par Pharmaceutical Companies, Inc. ("Par"), Mr. Edward Maloney, a senior executive of Paddock Laboratories, Inc. ("Paddock"), and Mr. Paul Campanelli, President of Par's Generic division (collectively "Respondents") to comply with the subpoenas *ad testificandum* issued by the FTC to each of these individuals. These subpoenas seek testimony relevant to an ongoing Commission law enforcement investigation. The Commission issued the subpoenas in aid of an investigation seeking to determine whether Par and Paddock in addition to, *inter alia*, Unimed Pharmaceuticals, Inc., Laboratories Besins Iscovesco, and Solvay Pharmaceuticals, Inc. (collectively, "Solvay") have engaged or are engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, by delaying entry of

-1-

a generic version of the drug AndroGel.

The Respondents have refused to comply with the Subpoenas requiring their testimony, despite an order from the Commission requiring them to do so. Because the subpoenas were lawfully issued and the testimony sought is relevant to the Commission's investigation, the Court should order Respondents to show cause why they should not fully comply. *See, e.g., FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980); *FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (7th Cir. 1976); *see also* Fed. R. Civ. P. 26(a)(1)(E), 81(a)(3).

## JURISDICTION

Section 9 of the FTC Act, 15 U.S.C. § 49, authorizes the Commission to issue subpoenas to require the attendance and testimony of witnesses relating to any matter under investigation. If the recipient of the subpoena fails to comply, the Commission may petition the appropriate district court for an order requiring compliance. *Id.* The statute confers jurisdiction and venue on the district court of the United States in the district in which the investigation is being conducted. *Id.* The Commission issued the Subpoenas on February 13, 2008. Pet. Exh. 1, ¶ 11 (Declaration of Jonathan Lutinski of April 14, 2008);[1] Pet Exh. 3. It served the subpoenas upon Respondents' counsel in Washington, D.C. Pet. Exh. 1, ¶ 12; Pet. Exh. 3. The Commission's investigation is taking place within Washington, D.C. Pet. Exh. 1, ¶ 9. Because Respondents have refused to comply with the subpoenas, Section 9 of the FTC Act empowers this Court to issue its process (*e.g.*, a show cause order) to Respondents in this proceeding. *See, e.g., FTC v. Browning*, 435 F.2d 96, 100 (D.C. Cir. 1970); *FEC v. Committee to Elect Lyndon LaRouche*, 613 F.2d 849, 854-58 (D.C. Cir. 1979).

---

[1] Exhibits to the Commission's Petition are referred to as "Pet. Exh."

## STATEMENT OF FACTS

### I. THE PARTIES

The Commission is an administrative agency of the United States government, organized and existing pursuant to the FTC Act, 15 U.S.C. § 41, *et seq*. The Commission is authorized and directed by Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), to prohibit unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

Section 3 of the FTC Act, 15 U.S.C. § 43, empowers the Commission to prosecute any inquiry necessary to its duties in any part of the United States. Section 6 of the Act, 15 U.S.C. § 46, empowers the Commission "[t]o gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce," with certain exceptions that are not relevant here. As noted above, Section 9 of the Act empowers the Commission to require by subpoena the attendance and testimony of witnesses relating to any matter under investigation.

Respondents are either current or former officers of Par, a publicly traded Delaware company that is in the business of developing, manufacturing and marketing generic and branded drugs in the United States, or of Paddock, a privately held Minnesota company that is a high volume manufacturer of bioequivalent generic pharmaceuticals and over-the-counter specialty products. Pet. Exh. 1, ¶ 5. Par and Paddock are engaged in, and their businesses affect, "commerce," as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### II. BACKGROUND

Solvay markets and sells AndroGel, a testosterone replacement drug with sales that exceeded $350 million in 2007. Pet. Exh. 1, ¶ 6. Paddock developed a generic version of AndroGel, and filed an abbreviated new drug application ("ANDA") on May 21, 2003, to obtain U.S. Food and Drug

Administration (FDA) approval to sell its generic drug. *Id*. at ¶ 7. Paddock entered into a Product Development, Manufacturing and Supply Agreement with Par on October 8, 2003, under which Paddock would manufacture its generic AndroGel product and Par would market it. *Id.*

On August 21, 2003, Solvay filed a patent infringement suit against Paddock in the United States District Court for the Northern District of Georgia. Pet. Exh. 1, ¶ 8. On September 13, 2006, the parties entered into a settlement agreement resolving their patent dispute. *Id*. Under the terms of the agreement, Paddock, and its assignee Par, agreed not to market a generic version of AndroGel until 2015. *Id*. On the same day as the patent settlement, the parties also entered into transactions that provided for substantial payments from Solvay, the patent holder, to Paddock and Par. *Id*. The parties to the settlement agreement provided a copy of the agreement to the FTC pursuant to the requirements of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108-173).

## III. THE COMMISSION'S INVESTIGATION AND THE SUBPOENAS

On March 2, 2007, the Commission issued a Resolution Authorizing Use of Compulsory Process in a Nonpublic Investigation (FTC File No. 071-0060). Pet. Exh. 1, ¶ 9; Pet. Exh. 2. The investigation seeks to determine whether, *inter alia*, the September 13, 2006, agreements between Solvay and Par or Paddock, or any other agreement, unlawfully delayed entry of a lower-cost generic version of AndroGel in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. Pet. Exh. 1, ¶ 10. As part of this investigation, Commission staff issued the subpoenas to the Respondents to obtain their testimony relating to the negotiation and terms of the settlement agreements. In particular, the Commission wants to obtain information regarding the relationship between Par and Paddock's agreement to delay the marketing of the generic version of AndroGel, and the compensation that Solvay has agreed to provide to Par and Paddock. The Commission also seeks testimony from

Respondents regarding the potential harm to consumers from delaying the entry of a generic version of AndroGel. *Id.*

The Commission issued the subpoenas to the Respondents on February 13, 2008, requiring them to appear for investigational hearings. Pet. Exh. 1, ¶ 11; Pet. Exh. 3. Investigational hearings are similar to depositions in many respects and provide the Commission with the means to obtain testimony from witnesses to determine whether there is reason to believe a violation of law has taken place. *See* 16 C.F.R. §§ 2.8, 2.9 (describing procedures for investigational hearings). Each subpoena provided notice that the investigational hearing of the witness would be recorded by sound-and-visual means in addition to stenographic means. Pet. Exh. 1, ¶ 11; Pet. Exh. 3. The Commission served the subpoenas on Respondents' counsel, White & Case LLP. Respondents have not disputed service of the subpoenas. Pet. Exh. 1, ¶ 12; *see* Pet. Exh. 6.

On February 20, 2008, Respondents filed a Petition to Quash or Limit the Subpoenas ("Petition to Quash").[2] Pet. Exh. 1, ¶ 13; *see* Pet. Exh. 4. The Petition to Quash asserted that the Commission lacks authority to record its investigational hearings by any means other than stenographic. Respondents did not otherwise object to the subpoenas. *Id.*

On March 14, 2008, the Commission issued a letter opinion rejecting Respondents' Petition to Quash. Pet. Exh. 1, ¶ 15; Pet. Exh. 5. The Commission's decision reset the investigational hearing dates of Respondents Campanelli, Maloney, and Tarriff for March 28, 2008, April 4, 2008, and April 10, 2008, respectively. *Id.*

Notwithstanding the Commission's decision, Respondents informed the Commission on

---

[2] In fact, the Petition to Quash was actually filed by Par and Paddock on behalf of Respondents. Pet. Exh. 5, n.1.

March 21, 2008, that they did not intend to comply with the subpoenas, and that they refused to appear for videotaped investigational hearings.  Pet. Exh. 1, ¶ 16; Pet. Exh. 6.

## LEGAL STANDARD FOR ENFORCEMENT

Although "the court's function is 'neither minor nor ministerial,' the scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *FTC v. Texaco*, 555 F.2d 862, 872 (D.C. Cir. 1977) (*en banc*) (citation omitted); *accord*, *FTC v. Anderson*, 631 F.2d 741, 744-45 (D.C. Cir. 1979).  Proceedings to enforce administrative subpoenas are entitled to summary disposition.  *See* Fed. R. Civ. P. 81(a)(3).  They are properly instituted by a petition and order to show cause (rather than by complaint and summons) and are summary in nature; discovery or evidentiary hearings may be granted only upon a showing of exceptional circumstances, which are not present here.  *See, e.g., FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980); *FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (7th Cir. 1976); *see also* Fed. R. Civ. P. 26(a)(1)(E); *United States v. Markwood*, 48 F.3d, 969, 981-82 (6th Cir. 1995); *Appeal of FTC Line of Business Report Litigation*, 595 F.2d 685, 704-05 (D.C. Cir. 1978).

The standards for judicial enforcement of administrative process are well settled:

> A district court must enforce a federal agency's investigative subpoena if the information sought is "'reasonably relevant,'" *FTC v. Texaco Inc.*, 555 F.2d 862, 872-73, n.23 (D.C. Cir.) (*en banc*) (quoting *United States v. Morton Salt*, 338 U.S. 632, 652 (1950)) -- or, put differently, "not 'plainly incompetent or irrelevant to any lawful purpose' of the [agency]," *id.* at 872 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *accord United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1145 (D.C. Cir. 1987) -- and not "unduly burdensome" to produce, *Texaco*, 555 F.2d at 881.  We have said that the agency's own appraisal of relevancy must be accepted so long as it is not "'obviously wrong.'" *FTC v. Carter*, 636 F.2d [at] 787-88 (quoting *Texaco*, 555 F.2d at 877 n.32).

*FTC v. Invention Submission Corp*, 965 F.2d 1086, 1089 (D.C. Cir. 1992); *see also FMC v. Port of Seattle*, 521 F.2d 431, 433-34 (9th Cir. 1975).

ARGUMENT

## I. THE SUBPOENAS ARE LAWFUL AND SEEK RELEVANT INFORMATION

Because the Commission lawfully issued the subpoenas and, because the testimony being sought is relevant to the Commission's investigation, the Court should order Respondents to show cause why they should not fully comply.

### A. The Subpoenas Are Lawful

The Commission properly issued the subpoenas as part of an investigation concerning possible violations of Section 5 of the FTC Act. *See* Sections 5 and 9 of the FTC Act, 15 U.S.C. §§ 45, 49; *see FTC v. Adams*, 296 F.2d 861, 867-70 (8th Cir. 1961); *FTC v. United States Pipe & Foundry Co.*, 304 F. Supp. 1254, 1259 (D.D.C. 1969); *see also Carter*, 636 F.2d at 787-88; *FTC v. Green*, 252 F. Supp. 153, 155-56 (S.D.N.Y. 1966). Respondents have not challenged the authority of the Commission to issue subpoenas requiring their testimony, nor have they claimed that the subpoenas would impose an undue burden on them.[3] *See* Pet. Exh. 4. Indeed, Respondents have indicated they would comply with the subpoenas if their hearings were recorded only by stenographic means. *See* Pet. Exh. 6. Thus, Respondents' sole argument is that the Commission lacks authority to videotape its investigational hearings. *Id.*; Pet. Exh. 1, ¶ 13.

---

[3] Arguments not first raised before the Commission in a petition to quash a subpoena are waived. *See FTC v. O'Connell*, 828 F. Supp. 165, 168 (E.D. N.Y. 1993); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247 (E.D. Wis. 1996); *FTC v. Invention Submission Corp.*, 1991-1 Trade Cas. (CCH) ¶ 69,338 at 65,351 n.12 (D.D.C. 1991), *aff'd*, 965 F.2d 1086 (D.C. Cir. 1992).

### B. The Subpoenas Seek Information That Is Reasonably Relevant
### To The Commission's Investigation

The standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one. In an investigation the Commission does not seek information necessary to prove specific charges; it merely seeks to learn whether the law is being violated and whether to file a complaint. *See Texaco*, 55 F.2d at 872. The requested testimony, therefore, need only be relevant to the investigation – the boundary of which may be defined quite generally. *See Carter*, 636 F.2d at 787-88; *Texaco*, 555 F.2d at 874 & n. 26.

The present investigation seeks to determine, among other things, whether Solvay's payments to Par and Paddock were made to delay those companies from marketing a generic version of AndroGel. Pet. Exh. 1, ¶ 10. As part of this investigation, the FTC seeks to question the Respondents about their knowledge of the settlement agreements and other relevant conduct. *Id.* Indeed, Scott Tarriff, Par's former President and CEO, and Paul Campanelli, Par's current Generics Division President, were the key individuals who negotiated, and decided to enter into, the patent litigation settlement and other agreements related to AndroGel on behalf of Par. Ed Maloney, Paddock's Vice President of Business Development, was the chief negotiator for Paddock in the AndroGel settlement. The testimony sought by the subpoenas – including the non-verbal credibility evidence of their demeanor and tone – is highly relevant to the Commission's investigation. *See* Pet. Exh. 1, ¶ 17. Neither Par nor Paddock has challenged the relevance of the information requested by the subpoenas. Based on the foregoing, the subpoenas should be enforced. *See FTC v. Texaco, Inc.*, 555 F.2d at 874-76.

## II. RESPONDENTS HAVE NOT PROFFERED ANY VALID OBJECTION TO THE SUBPOENAS

Respondents have not proffered any valid objection for their failure to comply with the Commission's subpoenas. Their sole reason for refusing to comply is their mistaken belief that the Commission lacks the authority to videotape its own investigational hearings. *See* Pet. Exh. 4. In support of their position Respondents cite Commission Rule 2.8, 16 C.F.R. § 2.8, which governs investigational hearings, and specifically to Rule 2.8(b), which states:

> Investigational hearings shall be conducted by any Commission member, examiner, attorney, investigator, or other person duly designated under the FTC Act, for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation. Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation.

Respondents argue that this language limits the manner in which the Commission may record its hearings to stenographic means, and that it precludes the use of any other additional method.[4] *See* Pet Exh. 4. Respondents' argument is wrong because it ignores the broad authority granted to the Commission under the FTC Act. Further, it discounts the breadth of the Commission's regulations, which authorize the Commission to videotape investigational hearings as a supplement to making a stenographic record.

---

[4] In their Petition to Quash, Respondents also claimed that videotaping the investigational hearings implicated the procedural due process rights of the witnesses. It is axiomatic that there can be no violation of due process rights unless there is a deprivation of liberty or property. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). In the investigational hearing context, no such interest is at stake. Nor is any purported due process issue ripe for judicial consideration. If the Commission seeks to use the investigational hearing material in a proceeding at which liberty or property interests are at stake, *i.e.*, in a judicial or administrative law enforcement proceeding, due process issues may be raised at that time.

### A. The Commission Has Authority to Order the Videotaping of Investigational Hearings under its Broad Grant of Subpoena Power

Congress endowed the Commission with expansive subpoena authority to be used flexibly in furtherance of its important statutory goals. *U.S. v. Morton Salt*, 338 U.S. 632, 642-43 (1950); *FTC v. Rockerfeller*, 591 F.2d 182, 188 (2d Cir. 1979). Given the importance of memorializing the evidence of witness's demeanor and the potential disciplining effects of videotape on the conduct of a witness, this broad grant of subpoena power permits the Commission to videotape hearings in furtherance of its investigational processes.

Section 9 of the FTC Act, 15 U.S.C. § 49, provides:

> The Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the Commission may sign subpoenas, and members and examiners of the Commission may administer oaths and affirmations, examine witnesses, and receive evidence.

The D.C. Circuit has held that the Commission's subpoena power under Section 9 should be broadly construed to effect Congress's goal of permitting the Commission to accomplish its investigative duties. *FTC v. Browning,* 435 F.2d 96, 99 (D.C. Cir. 1970) (interpreting the agency's subpoena power under Section 9 to effect the "[C]ongressional purpose to endow the Commission with broad powers of investigation . . . ."); *see also FTC v. Tuttle*, 244 F.2d 605, 614 (2d Cir. 1957) (rejecting respondent's proposed narrow interpretation of the words "such documentary evidence" as used in the first paragraph of Section 9 of the Act because "[i]t was clearly the purpose of the Congress that the Commission should have adequate subpoena power to perform its duties"); *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 743-44 (1984) (upholding similar "expansive" subpoena power of the SEC).

Congress's grant of authority to the Commission to subpoena witnesses to testify necessarily

-10-

includes the authority to record such testimony.  But there is nothing in Section 9 that limits the manner in which testimony may be recorded.[5]  The form of recordation is left to the discretion of the Commission.

Given this wide-reaching grant, the Commission has ample authority to videotape testimony at its investigational hearings.  Witness testimony includes both a verbal component and a non-verbal component.  This non-verbal component is sometimes referred to as demeanor evidence.  Videotaping captures that demeanor evidence, thereby preserving evidence regarding the credibility of the witness providing the testimony.  Videotaping permits Commission staff to share among one another, and with the Commission, the evidence of a witness's demeanor, gestures, timing, and tone.  For the Commissioners, and for Commission staff who cannot be present at a hearing, this sound-and-visual record enables better, and more extensive, assessment of evidence than could be obtained by review of a written transcript.  Videotaping investigational hearings allows the Commissioners to view these witnesses, instead of relying on a written record or second-hand description.  This is useful in any investigation, particularly where the credibility of the witness may assist in determining whether there is reason to believe that a violation of law has taken place.  A videotape record further permits even Commission staff who were present at the hearings the opportunity to review their impressions of witnesses' credibility after the live hearings have ended.  Videotaping an investigational hearing consequently permits the Commission more effectively to perform its fact-finding investigative duties.

---

[5] To the extent that Section 9 addresses procedural matters at all, it addresses them for depositions, as opposed to other testimony taken pursuant to a subpoena, such as investigational hearings.  Section 9 of the FTC Act only requires that depositions be "reduced to writing by the person taking the deposition" and then be subscribed by the deponent.  15 U.S.C. § 49.

As discussed *infra,* videotaping investigational hearings also provides a deterrent to dilatory or obstructionist behavior by witnesses and counsel. This also enhances the Commission's ability to investigate. The additional benefits of videotape may not justify the added expense in every case, but when, as here, the Commission deems videotaping necessary, it has the authority to do so.

### B. Nothing in the Commission's Rules Limits its Authority to Videotape its own Investigational Hearings.

In their Petition to Quash, Respondents did not argue that the Commission lacked the *statutory* authority to require videotaping. Rather, they focused entirely on the Commission's regulations, and argued that the absence of an express statement in those regulations authorizing videotaping of investigational hearings somehow precludes the Commission from doing so. Pet. Exh. 4, pp. 5-6. That is, Respondents contended that, no matter how broad the Commission's statutory authority to conduct investigations, the Commission may not exercise any aspect of that authority unless it first promulgates a rule allowing itself to do so. But this argument is flatly contrary to basic principles of administrative law. Where, as here, an administrative agency is empowered by statute to exercise authority, it is up to the agency whether to carry out its program by means of regulations, case-by-case determinations, or a combination of these approaches. *See generally SEC v. Cheney Corps,* 332 U.S. 194 (1947).

To the extent that Respondents also argue that the Commission's present actions are contrary to its existing regulations, such arguments are based on a misreading of the regulations. The Commission, under its independent authority to enact rules and regulations to carry out its statutory mission, has properly implemented rules of practice for non-adjudicative proceedings through rule-making procedures. 16 C.F.R. §§ 2.1-2.16. These rules particularly address investigational hearings, 16 C.F.R. § 2.8, and the rights of witnesses in these investigative proceedings, 16 C.F.R. § 2.9.

-12-

The Commission's rules echo the broad authority given to the Commission by statute. As the Commission held in its decision on Respondents' Petition to Quash, its rules also permit the videotaping of investigational hearings in order to record the demeanor evidence of witnesses' nonverbal testimony. The Commission noted that interpreting its rules to permit videotaping is consistent with Congress's broad grant of investigational authority. Pet. Exh. 5. The Commission refused to endorse a narrow interpretation of its rules that would foreclose all means of recording investigational hearings other than stenographic means. The Commission's interpretation of its own procedural rules, an interpretation that is neither "plainly erroneous" nor "plainly * * * inconsistent" with the text of the rule, is "controlling." *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2349 (2007).

    **1. Rule 2.8.** The Commission concluded that Rule 2.8(b)'s requirement that investigational hearings be "stenographically reported" and transcribed establishes a *minimum* standard of recordation. Pet. Exh. 5, p. 3. Indeed, the purpose of the Commission's requirement under Section 2.8 for a written transcript of an investigational hearing is to provide witnesses a minimum procedural guarantee to ensure that an accurate record exists of the hearing. This standard does not foreclose any, much less all, other means of recording. *Id.*

    Rather, in broad language similar to that of the FTC Act, Rule 2.8(b), 16 C.F.R. § 2.8(b) states that "[i]nvestigational hearings shall be conducted . . . for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation."[6] As

---

[6] "Data" is neither a narrow nor technical term. It includes "factual information . . . used as a basis for reasoning, discussion, or calculation" . . . as well as "information output by a sensing device or organ that includes both useful and irrelevant or redundant information and must be processed to be meaningful." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 293 (10th ed. 2002).

the Commission concluded, witness testimony includes both verbal and nonverbal evidence, including demeanor evidence.  Pet. Exh. 5, p. 4.  A videotaped investigational hearing establishes an even more complete record of an official proceeding than merely a written transcript, and it protects both the witness and the Commission.  The Commission consequently held that Rule 2.8 permits videotaping to capture the witness's nonverbal testimony because this relates to a subject that is always relevant in an investigation: the credibility of each witness.  It rejected Petitioners' narrow interpretation of Rule 2.8(b), which would require finding that the Rule was intended to yield records of investigational hearings devoid of witness demeanor evidence.  *Id.*

Respondents' interpretation of Rule 2.8 would preclude the Commission from making use of technology that is routine in today's legal climate.  Further, Respondents' interpretation of Rule 2.8 is unreasonable and, if adopted, would lead to absurd results.  In its Petition to Quash, Respondents rely on a dictionary definition of "stenography" as:

> 1: the art or process of writing in shorthand; 2: shorthand esp. written from dictation or oral discourse; 3: the making of shorthand notes and the subsequent transcription of them * * *.

Pet. Exh. 4, p. 4.  Under Respondent's definition of "stenography," the Commission could not employ court reporters using standard modern reporting systems such as steno masks, audiotape or digital back-up systems, all of which help to enhance the accuracy of transcription.  *See* April C. Artegian, National Center for State Courts, *The Technology-Augmented Court Record* (1997), http://www.ncsconline.org/D_Tech/ctc/showarticle.asp?id=87 ("Many stenographic reporters use various forms of audio recording as back-up devices").  Respondents' interpretation could even prohibit both Commission staff and counsel for the witness from taking longhand notes during the course of investigational hearings, or from using laptop computers.  In rejecting these arguments, the Commission concluded that Respondents construction of Rule 2.8 would deny it and any witness the

-14-

increased protections afforded by a more accurate record of the proceedings.  Pet. Exh. 5, p. 3.

**2. Rule 2.9.**  An examination of Commission Rule 2.9(b)(6), 16 C.F.R. § 2.9(b)(6), makes

the absurdity of Respondents' argument even more apparent.  Rule 2.9(b)(6) provides:

> The person conducting the hearing shall take all necessary action to regulate the
> course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory,
> obstructionist, or contumacious conduct, or contemptuous language.  *Id.*

As the Commission found in its decision on Respondents' Petition to Quash, this provision

provides the investigator broad discretion in the means and manner of conducting the hearing to

ensure that investigational objectives are achieved.  Pet. Ex. 5, n. 6.  Under this provision the person

conducting the hearing has the authority, in appropriate cases, to require that the testimony be taped

because of its effect to curb improper conduct.  *Id.* citing to Michael J. Henke and Craig D. Margolis,

*The Taking and Use of Video Depositions: An Update*, 17 REV. LITIG. 1, 20 (1998) ("[c]onduct that

a stenographic transcript could not adequately convey – such as aggressive examination, abusive

treatment of opposing counsel or the witness, and witness coaching – may be preserved in full detail

on video.  Therefore, the video deposition is a powerful means of curbing discovery abuse").

Videotaping provides the person conducting the hearing with an important tool to protect the integrity

of the investigation and the subjects being investigated.  Videotaping a hearing can be a "necessary

action to regulate the course of the hearing" within the meaning of Rule 2.9(b)(6).  Pet. Ex. 5, n. 6.

In the present case, the Commission did not invoke Rule 2.9(b)(6) as an affirmative ground

for videotaping these investigational hearings.  Nevertheless, as the Commission recognized, the

availability of the authority to do so in appropriate cases disproves Respondents' argument that Rule

2.8 categorically precludes videotaping.  Thus, the Commission was well within its broad underlying

statutory authority in providing that, in addition to stenographic transcription, Respondents'

investigational hearings be videotaped.

## CONCLUSION

For the reasons set forth above, this Court should enter an Order for Par and Paddock to comply, in full, with the Subpoena *Ad Testificandum* by providing testimony within thirty (30) days of the Court's order.

Dated:  April 16, 2008

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel (D.C. Bar No. 339283)

JOHN F. DALY
Deputy General Counsel for Litigation
(D.C. Bar No. 250217)

LAWRENCE DeMILLE-WAGMAN
Attorney (D.C. Bar No. 929950)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-2448
Email: lwagman@ftc.gov

JACKSON L. MCGRADY (LD-W)
Attorney
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-3193
Fax  (202) 326-2477
Email:  jmcgrady@ftc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. No. |
| | ) | |
| SCOTT TARRIFF, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Petitioner, the Federal Trade Commission, has invoked the aid of this Court, pursuant to

Sections 9 and 16 of the Federal Trade Commission Act, 15 U.S.C. §§ 49, 56, to require

Respondents Scott Tarriff, Edward Maloney, and Paul Campanelli, to provide testimony in

compliance with subpoenas issued on February 13, 2008, by the Federal Trade Commission in aid

of a Commission law enforcement investigation.  (FTC File No. 071-0060).

After considering the papers of record and the arguments of the parties, the Court has

determined that the inquiry is within the authority of the Federal Trade Commission, that the

Respondents' testimony is reasonably relevant to the inquiry, and that Respondents have offered no

valid objection for their failure to comply with the Commission's subpoenas.  Because the Court is

of the opinion that the relief sought by the Commission should be granted, it is hereby

ORDERED that, within five (5) business days of the receipt of this Order, or at such later

date as may be agreed upon by the parties, the Respondents be, and hereby are, commanded to

schedule a time to provide their testimony as required by the subpoenas, and that such testimony

shall be provided within 30 days of the date of this Order.


SO ORDERED:



                                                        _____
                                                        United States District Judge

Dated: _____, Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Petitioner, | ) |
| v. | ) Misc. No. |
| SCOTT TARRIFF, *et al.*, | ) |
| Respondents. | ) |

## ORDER TO SHOW CAUSE

Pursuant to the authority conferred by Sections 9 and 16 of the Federal Trade Commission

Act, 15 U.S.C. §§ 49, 56, Petitioner, the Federal Trade Commission, has invoked the aid of this

Court, pursuant to Fed. R. Civ. P. 81(a)(3), for an order requiring the Respondents Scott Tarriff,

Edward Maloney, and Paul Campaenelli to comply in full with subpoenas *ad testificandum* issued

to each of them in aid of a law enforcement investigation being conducted by the Commission.

(FTC File No. 071-0060).

The Court has considered the Commission's Petition for an Order Enforcing Subpoenas and

the papers filed in support thereof; and it appears to the Court that Petitioner has shown good cause

for the entry of this Order.  It is by this Court hereby

ORDERED that Respondents appear at _____ m. on the _____ day of _____, 2008,

in Courtroom No. _____ , United States Courthouse, Washington, D.C., and show cause, if any

there be, why this Court should not grant said Petition and enter an Order enforcing the subpoenas

issued to the Respondents and directing them to immediately set a date to provide their testimony,

such date being within 30 days of the date of the Order.  Unless the Court determines otherwise,

notwithstanding the filing or pendency of any procedural or other motions, all issues raised by the Petition and supporting papers, and any opposition to the Petition will be considered at the hearing on the Petition, and the allegations of said Petition shall be deemed admitted unless controverted by a specific factual showing.

IT IS FURTHER ORDERED that, if Respondents believe it necessary for the Court to hear live testimony, they must file an affidavit reflecting such testimony (or if a proposed witness is not available to provide such an affidavit, a specific description of the witness's proposed testimony) and explain why Respondents believe live testimony is required.

IT IS FURTHER ORDERED that, if Respondents intend to file pleadings, affidavits, exhibits, motions or other papers in opposition to said Petition or to the entry of the Order requested herein, such papers must be filed and hand-delivered to Petitioner's counsel by __ a.m./p.m. on _ _____, 2008. Such submission shall include, in the case of any affidavits or exhibits not previously submitted, or objections not previously made to the Federal Trade Commission in support of the Petition to Quash filed by respondents, if any, an explanation as to why such objections were not made or such papers or information not submitted to the Commission. Any reply by Petitioner shall be filed with the Court and received by Respondents by _____ a.m./p.m. on _____, 2008.

IT IS FURTHER ORDERED, pursuant to Fed. R. Civ. P. 81(a)(3), that this is a summary proceeding and that no party shall be entitled to discovery without further order of the Court upon a specific showing of need; and the dates for a hearing and the filing of papers established by this Order shall not be altered without prior order of the Court upon good cause shown; and

IT IS FURTHER ORDERED, pursuant to Fed. R. Civ. P. 81(a)(3), that a certified copy of this Order and copies of said Petition and the Memorandum of Points and Authorities in support

thereof filed herein, be served forthwith upon Respondents, or their counsel, by Petitioner by personal service, or by certified or registered mail return receipt requested, or by overnight express delivery service.

SO ORDERED:

_____
United States District Judge

Dated: _____, Washington, D.C.