UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,
    600 Pennsylvania Ave., N.W.
    Washington, D.C.  20580

                    *Petitioner*,

        v.

SCOTT TARRIFF, *et al.*,
    c/o Eric Grannon, Esq.
    White & Case LLP
    701 Thirteenth Street, N.W.
    Washington, D.C.  20005

                    *Respondents*.

Misc. No.

08-MC-00217 (RCL)

## RESPONSE TO ORDER TO SHOW CAUSE AND MEMORANDUM IN OPPOSITION TO PETITION TO ENFORCE SUBPOENAS *AD TESTIFICANDUM* THAT PROVIDE FOR VIDEOTAPED INVESTIGATIONAL HEARINGS

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Eric Grannon (D.C. Bar No. 473778)
Douglas M. Jasinski (D.C. Bar No. 454230)
Noah A. Brumfield (D.C. Bar No. 488967)
**WHITE & CASE**LLP
701 Thirteenth Street, N.W.
Washington, D.C.  20005
Tel.:  (202) 626-3600
Fax:  (202) 639-9355

Dated:  May 7, 2008                    *Attorneys for Respondents*

## **QUESTION PRESENTED**

With regard to the investigational hearings that the Federal Trade Commission conducts, 16 C.F.R. § 2.8(b) provides:  "Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation."

The question presented is whether the Commission may nonetheless videotape such investigational hearings.

## TABLE OF CONTENTS

**PAGE**

QUESTION PRESENTED ....................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

REGULATION INVOLVED ................................................................................. v

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 3

LEGAL STANDARD ......................................................................................... 16

ARGUMENT ...................................................................................................... 17

    THE COMMISSION'S AUTHORITY TO RECORD INVESTIGATIONAL
    HEARINGS IS LIMITED TO THAT PROVIDED IN 16 C.F.R. § 2.8(b),
    WHICH PROVIDES THAT INVESTIGATIONAL HEARINGS "SHALL BE
    STENOGRAPHICALLY REPORTED." ........................................................ 17

    I.    TITLE 16 C.F.R. § 2.8(b) MUST BE CONSTRUED ACCORDING TO
        ITS PLAIN MEANING. ........................................................................ 18

        A.  The Plain Meaning of the Words in 16 C.F.R. § 2.8(b) Requires
            the Commission to Record Investigational Hearings Only by
            Stenographic Means. ................................................................... 19

        B.  The Context and History of 16 C.F.R. § 2.8(b) Confirm Its Plain
            Meaning. ...................................................................................... 22

        C.  Absent Absurd Results, the Court Must Enforce 16 C.F.R.
            § 2.8(b) According to Its Plain Meaning. ................................... 25

    II.   TITLE 16 C.F.R. § 2.8(b) IS THE DISPOSITVE AUTHORITY HERE,
        AND NO OTHER PROVISION AUTHORIZES THE COMMISSION TO
        VIDEOTAPE INVESTIGATIONAL HEARINGS. .................................... 26

CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Beverly Health & Rehab. Servs., Inc. v. NLRB*,
    317 F.3d 316 (D.C. Cir. 2003) ........................................................ 19, 19-20, 20, 21

*Christensen v. Harris County*,
    529 U.S. 576 (2000) .................................................................................19

*Ctr. for Auto Safety v. Dole*,
    828 F.2d 799 (D.C. Cir. 1987) ................................................................27

*D.C. Fin. Responsibility & Mgmt. Auth. v. Concerned Senior Citizens
    of the Roosevelt Tenant Ass'n, Inc.*,
    129 F. Supp. 2d 13 (D.D.C. 2000) (Lamberth, J.) ....................................... 19, 20-21

*Exportal Ltda. v. United States*,
    902 F.2d 45 (D.C. Cir. 1990) .................................................................27

*FTC v. Cephalon, Inc.*,
    __ F. Supp. 2d __, No. 08-244 (JDB),
    2008 WL 1867103 (D.D.C. Apr. 28, 2008) ...............................................6

*FTC v. Texaco, Inc.*,
    555 F.2d 862 (D.C. Cir. 1977) ...............................................................16

*FTC v. Whole Foods Mkt., Inc.*,
    502 F. Supp. 2d 1 (D.D.C. 2007) ............................................................9

*Goldring v. District of Columbia*,
    416 F.3d 70 (D.C. Cir. 2005) .................................................................25

*Hannah v. Larche*,
    363 U.S. 420 (1960) ............................................................................9

*In re Tamoxifen Citrate Antitrust Litig.*,
    466 F.3d 187 (2d Cir. 2006) ................................................................ 5-6

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................................19

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
    127 S. Ct. 2518 (2007) ........................................................................19

*Pfizer, Inc. v. Heckler*,
    735 F.2d 1502 (D.C. Cir. 1984) ..........................................................18, 26

---

*Indicates cases or authorities upon which counsel chiefly rely.

*Resolution Trust Corp. v. Thornton,*
    41 F.3d 1539 (D.C. Cir. 1994) ..............................................................16

*Reuters Ltd. v. FCC,*
    781 F.2d 946 (D.C. Cir. 1986) ..............................................................18

*S.A. Storer & Sons Co. v. Sec'y of Labor,*
    360 F.3d 1363 (D.C. Cir. 2004) ....................................................... 25-26

*Schering-Plough Corp. v. FTC,*
    402 F.3d 1056 (11th Cir. 2005) ......................................................5, 6, 7

*Service v. Dulles,*
    354 U.S. 363 (1957).........................................................................26, 27

*Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue,*
    55 T.C.M. (CCH) 144 (1988) ...............................................................10

*[*]U.S. Int'l Trade Comm'n v. ASAT, Inc.,*
    411 F.3d 245 (D.C. Cir. 2005) ................................................ 16, 17-18

*U.S. Steel Corp. v. United States,*
    43 F.R.D. 447 (S.D.N.Y. 1968) ............................................................23

*Valley Drug Co. v. Geneva Pharms., Inc.,*
    344 F.3d 1294 (11th Cir. 2003) ...............................................................6

## OTHER AUTHORITIES

16 C.F.R. § 2.7(d) ....................................................................................13

[*]16 C.F.R. § 2.8(b) ......................................................................... *passim*

16 C.F.R. § 2.8(c) ...............................................................................8, 22

16 C.F.R. § 2.9(a) ....................................................................................22

16 C.F.R. § 2.9(b) ...........................................................................8, 9, 28

Fed. R. Civ. P. 30(c) (1967)....................................................................22

Fed. R. Civ. P. 30(b)(4) (1970)...............................................................23

Fed. R. Civ. P. 30(b)(2) (1993)...............................................................24

F.T.C. Operating Manual § 3.3.1 ..........................................................3-4

Michael J. Henke & Craig D. Margolis, *The Taking and Use of Video
    Depositions:  An Update*, 17 Rev. Litig. 1 (1998)................................23

---

[*] Indicates cases or authorities upon which counsel chiefly rely.

## **REGULATION INVOLVED**

16 C.F.R. § 2.8    Investigational hearings.

(a) Investigational hearings, as distinguished from hearings in adjudicative proceedings, may be conducted in the course of any investigation undertaken by the Commission, including rulemaking proceedings under Subpart B of Part 1 of this chapter, inquiries initiated for the purpose of determining whether or not a respondent is complying with an order of the Commission or the manner in which decrees in suits brought by the United States under the antitrust laws are being carried out, the development of facts in cases referred by the courts to the Commission as a master in chancery, and investigations made under section 5 of the Export Trade Act.

(b) Investigational hearings shall be conducted by any Commission member, examiner, attorney, investigator, or other person duly designated under the FTC Act, for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation.  Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation.

(c) Unless otherwise ordered by the Commission, investigational hearings shall not be public.  In investigational hearings conducted pursuant to a civil investigative demand for the giving of oral testimony, the Commission investigators shall exclude from the hearing room all other persons except the person being examined, his counsel, the officer before whom the testimony is to be taken, and the stenographer recording such testimony.  A copy of the transcript shall promptly be forwarded by the Commission investigator to the custodian designated in § 2.16.

On behalf of the named Respondents, who are current and former executives of Par Pharmaceutical Companies, Inc. and Paddock Laboratories, Inc. (together "the Companies"), the Companies hereby file this Response to the Court's April 17, 2008 Order to Show Cause and Memorandum in Opposition to the Petition for an Order Enforcing Subpoenas *Ad Testificandum* that the Federal Trade Commission filed *ex parte* on April 16, 2008.  The Companies also file the Declaration of Noah A. Brumfield, Esq. (incorporating exhibits) in support of this filing.  For the reasons detailed herein, Respondents have good cause for their good-faith non-compliance with the Commission's *ultra vires* subpoenas calling for videotaped investigational hearings.

## PRELIMINARY STATEMENT

This action is about whether the Commission can videotape investigational hearings when 16 C.F.R. § 2.8(b) provides that, "Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation."   As detailed in the Argument section below, the plain meaning of this language is, as common sense would suggest, that investigational hearings must be recorded by stenographic means and not other means. Numerous precedents, including from the Supreme Court and the D.C. Circuit, dictate the traditional rules of construction that yield the plain and ordinary meaning of 16 C.F.R. § 2.8(b). Further precedent from the Supreme Court and D.C. Circuit confirms the obvious point that an agency subpoena cannot exceed the agency's regulations.

The Commission bases its claim that it can videotape investigational hearings not on the words in 16 C.F.R. § 2.8(b) but on policy arguments about the importance of capturing "demeanor evidence" and keeping up with "technology."  Whatever the merits of such policy arguments that the Commission may consider for seeking to amend 16 C.F.R. § 2.8(b), they are not reasons for the Court to ignore the regulation's plain meaning.  Tellingly, the Commission

seeks to sidestep 16 C.F.R. § 2.8(b) by relying on other general provisions that do not address the recording of investigational hearings, but as detailed in the Argument below, that attempted sidestep fails precisely because 16 C.F.R. § 2.8(b) is the only regulation that provides for the recording of investigational hearings.

The Court may be curious as to why parties would dispute so vigorously the videotaping of investigational hearings when the videotaping of depositions under the Federal Rules of Civil Procedure, for example, has been a matter of right since 1993. The difference is that an investigational hearing is entirely a creature of the Commission's "Part-II" investigative regime. Under the Commission's Part-II rules, witnesses in investigational hearings do *not* have the due process rights of witnesses in depositions under the Federal Rules, such as the right to object and to cross-examination. And the Commission holds its investigational hearings on an *ex parte* basis, excluding the attendance and participation of other parties to the investigation. As discussed herein, the Supreme Court has held these distinctions between investigational hearings and adjudicative proceedings, such as depositions, significant under the Due Process Clause of the Constitution.

Additionally, the Federal Rules of Civil Procedure underwent years of amendments before videotaped depositions were first allowed as a matter of right in 1993. In contrast, 16 C.F.R. § 2.8(b) still employs the original "shall be stenographically reported" language it had when first promulgated in 1967.

In an attempt to avoid the necessity of this action, the Companies offered to have their executives participate in videotaped investigational hearings if the Commission would agree to use the videotaped testimony only as part of the Part–II investigation and not in any subsequent adjudicative proceeding. The Commission categorically rejected that offer. The Commission,

instead, wished to preserve an option to seek to use videotapes of objectionable testimony in a subsequent adjudicative proceeding. There is no question that the Commission will be able to videotape the depositions of these executives under the Federal Rules if the Commission brings an enforcement action on the merits in this case—and the Commission's unwavering practice in an adjudication is to depose the same witnesses it has subjected to investigational hearings—so the option the Commission seeks to preserve is to have these executives run the gauntlet of videotaped testimony twice.

Thus, in addition to the videotape subpoenas being *ultra vires* under the plain meaning of 16 C.F.R. § 2.8(b), the other reasons for objection to videotaping are evident. The Court should also know that the Commission is the Plaintiff in this action in name only. The parties have a good-faith dispute over the meaning of 16 C.F.R. § 2.8(b) and each side acknowledged that the dispute could not be resolved by a district court until the executives established their technical non-compliance with the Commission's subpoenas calling for videotaped investigational hearings. As detailed herein, the Companies have acted at all times for an expedient resolution of this good-faith dispute over a straightforward legal issue.

## BACKGROUND

### A.     The Investigation

This subpoena-enforcement action has nothing whatsoever to do with the merits of the Commission's current non-public investigation of the Companies and other parties. Nonetheless, the Commission's papers delve unnecessarily into the details and merits of the investigation, possibly in breach of the Commission's own rules on the confidentiality of non-public investigations: "to protect individuals or business entities under investigation from premature adverse publicity, the Commission treats the fact that a particular proposed respondent is under

3

investigation and the documents and information submitted to or developed by staff in connection with the investigation as confidential information . . . ."  F.T.C. Operating Manual, Chapter Three § 3.3.1.

Prior to this action, the Companies requested that the Commission refrain from unnecessarily identifying the parties and other details of the underlying non-public investigation when bringing this subpoena-enforcement action on the straightforward legal question of whether pursuant to 16 C.F.R. § 2.8(b) the Commission is authorized to videotape investigational hearings.  Ex. A at 3 (April 4, 2008 Letter from Eric Grannon to David C. Shonka).  It is troubling that the Commission's commitment to protecting parties subject to non-public investigations from "premature adverse publicity" does not extend to parties who raise good-faith questions about whether the Commission is seeking to engage in *ultra vires* investigation tactics.

Because the Commission has unnecessarily addressed certain details of the non-public investigation and, furthermore, inaccurately cast the Companies as both recalcitrant in the investigation and guilty of the alleged anticompetitive acts that the Commission still purports to be investigating rather than prosecuting, the Companies are constrained to respond with three brief points at the outset.

First, the Companies have been demonstrably cooperative in the investigation.  In the eighteen months since the Commission first issued "Voluntary Request Letters" to the Companies, and subsequently Civil Investigative Demands, the Companies have produced nearly a half-million pages of documents, answered fifty-two different corporate interrogatories, and had four executives sit for daylong investigational hearings conducted by the Commission (each recorded solely by stenographic means).

Second, the Commission's investigation of the Companies is one of the numerous investigations the Commission is currently conducting of commonplace settlements of patent-infringement litigation between innovator and generic pharmaceutical companies. Such settlements are the result of the Hatch-Waxman Act of 1984, and subsequent legislation, in which Congress provided a special regime for the conduct of patent litigation between innovator and generic pharmaceutical companies.

The Commission began investigating such settlements in the late 1990s. In 2001, the Commission brought its first enforcement action in such a case, against Schering-Plough Corporation and Upsher-Smith Laboratories, Inc. After a forty-day trial before the Commission's own administrative law judge (in a "Part-III, adjudicative" proceeding), Schering-Plough and Upsher-Smith prevailed, the judge finding that there was nothing anticompetitive about the parties' settlement of patent litigation and entry into contemporaneous licensing arrangements. Subsequently, the Commission reversed the findings of its own administrative law judge by a 5-0 vote.

Schering-Plough and Upsher-Smith appealed successfully to the U.S. Court of Appeals for the Eleventh Circuit, which unanimously vacated the Commission's opinion and vindicated the findings of the trial judge in favor of the pharmaceutical companies. *Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005). The Commission petitioned the Supreme Court for a writ of *certiorari*. In response, the Court invited the views of the Solicitor General. The Solicitor General's brief recommended that the Commission's *certiorari* petition be denied and the Court did so in 2006, finally ending the matter. (The undersigned law firm represented Upsher-Smith in that five-year battle with the Commission.) The Eleventh Circuit standard for review of pharmaceutical patent settlements has since largely been adopted by the Second

Circuit and followed by numerous district courts. *See, e.g.*, *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2006).

Since its loss in *Schering-Plough*, the Commission has been on an avowed campaign to create a circuit split on the legality of Hatch-Waxman patent settlements to encourage review by the Supreme Court. Pursuant to this circuit-split strategy, the Commission recently filed its second-ever such enforcement action. Notably, in his recent order transferring that action from this Court to the Eastern District of Pennsylvania, U.S. District Judge John D. Bates acknowledged that "the Commission is rather openly shopping for a circuit split on the issue of reverse-payment Hatch-Waxman settlements . . . ." *FTC v. Cephalon, Inc.*, __ F. Supp. 2d __, No. 08-0244 (JDB), 2008 WL 1867103, at *8 (D.D.C. Apr. 28, 2008).

This is the context in which the Commission has been investigating the Companies for entering into a pharmaceutical patent settlement in 2006 in the Eleventh Circuit, under that circuit's law, that the Commission was party to creating in *Schering-Plough*. *See also Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294 (11th Cir. 2003) (prior Eleventh Circuit case providing the underpinning for *Schering-Plough*).

Third, in its Petition, the Commission inappropriately states: "Under the terms of the agreement, [the Companies] agreed to delay the marketing of their generic version of [the product] until 2015." Pet. ¶ 9. The alleged "agreement" is the public settlement of patent-infringement litigation in the U.S. District Court for the Northern District of Georgia, in which the Companies were the generic-pharmaceutical defendants. At the time of settlement, the litigation had gone on for over three years at substantial expense to each side.

The settlement was approved by U.S. District Judge Thomas W. Thrash, Jr., who in the ensuing Consent Judgment described the settlement as "a good faith final settlement agreement

regarding this Litigation . . . ." Ex. B at 2 (Consent Judgment and Order of Permanent Injunction). Judge Thrash's Consent Judgment specifically described the settlement as providing the parties the "opportunity to more productively use money and other resources that would have been spent in the continued prosecution and defense of this Litigation, to the benefit of the Parties and consumers alike, such as by investing more money in marketing, research and development and education of physicians and patients regarding use and benefits of the [product] . . . ." *Id.* at 2-3.

Contrary to the Commission's characterization of the settlement as "delaying" generic entry of the product at issue, Judge Thrash's Consent Judgment expressly acknowledged that the settlement enabled generic entry "five years earlier than could be achieved if [the Companies] were permanently enjoined during the life of the [] patent." *Id.* at 3. Thus, the Companies entered a public settlement of expensive patent-infringement litigation that was approved by a federal district court and is indisputably permissible under that circuit's precedent in *Schering-Plough*, in which the Commission was a party.

The Companies do not, in this action, dispute the Commission's authority to investigate the circumstances of the settlement. The Companies do, however, dispute the attempts by the Commission to portray the Companies as anything less than cooperative or as liable for charges the Commission has not brought. This action is solely about whether the Commission has the authority to videotape investigational hearings pursuant to 16 C.F.R. § 2.8(b). As addressed below, the Companies have questioned that authority in good faith and have at all times sought to avoid unnecessary delay in the resolution of that issue, including by continuing to cooperate in all other respects with the Commission's investigation.

**B.      Witnesses in Investigational Hearings Lack the Due Process Rights Found in Adjudicative Proceedings, Yet the Commission Uses Investigational Hearing Testimony in Adjudicative Proceedings.**

Pursuant to 16 C.F.R. § 2.8, the investigational hearings at issue occur during the Commission's "Part-II, non-adjudicative" investigation.  The sole purpose of such an investigation is to determine whether the Commission wishes to initiate a lawsuit.  If so, the Commission must file a complaint in federal district court or before an administrative law judge in a "Part-III, adjudicative" proceeding.  Whichever adjudicative path the Commission elects, the ensuing adjudication is entirely separate from the Commission's prior, Part-II investigative phase.

Significantly, by virtue of the Commission's Part-II regulations, witnesses in investigational hearings (i.e., those at issue here) lack at least three due process rights enjoyed by witnesses in adjudicative proceedings, such as depositions under the Federal Rules of Civil Procedure.  First, under the Commission's Part-II rules, investigational hearings are *ex parte*.  16 C.F.R. § 2.8(c) ("[T]he Commission investigators shall exclude from the hearing room all other persons except the person being examined, his counsel, the officer before whom the testimony is to be taken, and the stenographer recording such testimony.").  Accordingly, in this multi-party investigation, the Commission has prevented counsel for the Companies from attending the investigational hearings of witnesses from the other companies that are party to the investigation and vice versa.  *See* Ex. C (December 18, 2007 Letter from Douglas M. Jasinski to Meredyth Smith Andrus).

Second, under the Commission's Part-II rules, there is no right to cross-examination in an investigational hearing.  16 C.F.R. § 2.9(b)(5).

Third, under the Commission's Part-II rules, the rights of witnesses to object to questions in investigational hearings are limited strictly to objections that the question:  (i) is outside the scope of the investigation; or (ii) calls for privileged information.  16 C.F.R. § 2.9(b)(2).  Thus, for example, objections are not permitted in investigational hearings even to questions that call for notoriously unreliable hearsay evidence.  *Id.*

In *Hannah v. Larche*, 363 U.S. 420 (1960), the Court held that the circumscribed rights in the investigational hearings conducted under the F.T.C.'s Part-II rules are tolerated under the Constitution only because such hearings are "purely fact-finding" and "any person investigated by the Federal Trade Commission will be accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding[.]"  *Id.* at 445-46.  Nonetheless, the Commission's consistent practice is to seek to use investigational hearing testimony in subsequent adjudicative proceedings, despite also deposing the same witnesses in the adjudicative proceeding.  *E.g.*, *FTC v. Whole Foods Mkt., Inc.*, 502 F. Supp. 2d 1, 4 (D.D.C. 2007) (noting that the Commission admitted as evidence both the Part-II investigational hearing testimony of witnesses as well as depositions of those same witnesses taken by the Commission under the Federal Rules).

In this case, the Commission rejected the Companies' compromise offer to participate in videotaped investigational hearings if the Commission agreed to use such videotaped testimony only as part of the Part-II investigation (as opposed to in a subsequent adjudicative proceeding).  Thus, in addition to videotaped investigational hearings being *ultra vires* under the plain meaning of 16 C.F.R. § 2.8(b), which alone would be a sufficient basis to object to videotaping, Respondents have practical concerns for seeking to avoid such improper videotaping:  the Commission is preserving the option to use in a subsequent adjudicative proceeding videotapes of objectionable testimony taken under constitutionally circumscribed circumstances.

Notably, F.T.C. investigational hearing testimony has also been used in adjudicative proceedings conducted by *other* federal agencies. *E.g.*, *Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue*, 55 T.C.M. (CCH) 144 (1988) (Internal Revenue Service using a witness's seven-year-old F.T.C. investigational hearing testimony in a federal court tax adjudication). And the Commission is fine with that. *See* Ex. D at 5 n.8 (March 14, 2008 F.T.C. Letter Ruling denying the Companies' Petition to Quash or Limit subpoenas calling for videotaped investigational hearings).

### C.     The Videotaping Controversy

On November 29, 2007, a subpoena *ad testificandum* for an investigational hearing was issued for Mr. Paul Campanelli. Ex. E. Subsequently, on January 16, 2008, subpoenas *ad testificandum* for investigational hearings were issued for Messrs. Scott Tarriff and Ed Maloney. Exs. F, G (respectively). None of the subpoenas for these current and former executives of the Companies provided for recording the investigational hearings by means other than the stenographic recording expressly provided for in 16 C.F.R. § 2.8(b).

On January 16, 2008, Mr. Campanelli appeared for his investigational hearing as scheduled by his subpoena. Declaration of Noah A. Brumfield, Esq. ¶ 5. Consistent with the due process limitations on investigational hearings under the Commission's Part-II rules, Mr. Campanelli was examined (i) *ex parte*, (ii) with no right to cross-examination, and (iii) without recourse to traditional form and evidentiary objections. Under the Commission's long-standing Part-II regulations and practice, Mr. Campanelli's investigational hearing was recorded only by stenographic means. After a full-day hearing, Mr. Campanelli agreed to the Commission staff's request to continue the hearing to a second day, March 5, 2008. To date, the Commission has not provided Mr. Campanelli with a transcript of the first day of his investigational hearing.

On January 28, 2008, the Commission staff raised for the first time the issue of recording certain of the investigational hearings by "sound-and-visual" means (i.e., videotaping). The Commission staff declared by letter its intention to record by "sound-and-visual" means the continued investigational hearing of Mr. Campanelli and the yet-to-be-commenced investigational hearings of Messrs. Tarriff and Maloney. Ex. H (January 28, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield). The Commission staff offered no authority or rationale for this deviation from the express language of 16 C.F.R. § 2.8(b) or the Commission's customary practice (or, in the case of Mr. Campanelli's hearing, the recording method the Commission had already followed).

Counsel for the Companies then attempted to resolve the matter, seeking via written and oral communications the Commission staff's authority for videotaping investigational hearings, as well as the rationale for this departure from the Commission's customary practice. *See* Declaration of Noah A. Brumfield, Esq. ¶¶ 9, 10, 12, 13 (detailing four letters exchanged between the Companies and the Commission in which the Commission failed to cite any authority for videotaping investigational hearings).

In these written and oral communications, the Commission staff was unable to cite any authority for recording investigational hearings by other than stenographic means. Instead, the Commission staff purported that the Commission has the authority to record investigational hearings by "sound-and-visual" means because nothing in the pertinent regulations expressly prohibits such a method of recording: "[N]othing in either the FTC Act or the FTC Rules of Practice prevents staff from videotaping investigational hearings to further this objective." Ex. I (eye) (February 6, 2008 Letter from Jonathan R. Lutinski to Noah A. Brumfield). In addition to failing to cite any authority for recording investigational hearings by "sound-and-visual" means,

11

the Commission staff refused to provide any reason for seeking such recording.  Declaration of
Noah A. Brumfield, Esq. ¶¶ 10, 11, 12, 14, 15.  Furthermore, the Commission staff admitted that
its attempt to videotape the investigational hearings was novel and unprecedented prior to this
investigation. *Id.* ¶ 11.

The Companies responded that in the absence of authority other than 16 C.F.R. § 2.8(b),
which expressly provides for the stenographic reporting of investigational hearings, the three
witnesses would not participate in investigational hearings recorded by other than stenographic
means.  Exs. J, K (February 12 and February 13, 2008 Letters from Noah A. Brumfield to
Jonathan R. Lutinski) (respectively).  The Companies also noted that the applicable subpoenas
made no provision for the recording of the investigational hearings by anything other than the
stenographic means expressly provided for by 16 C.F.R. § 2.8(b).

In response to the issues raised by the Companies, on February 13, 2008, new subpoenas
*ad testificandum* were issued for the continuation of Mr. Campanelli's investigational hearing
and for the investigational hearings of Messrs. Tarriff and Maloney.  Each new subpoena
provided that the investigational hearing of the named witness would be "recorded by sound-
and-visual means in addition to stenographic means."  Exs. L, M, N.  No regulation or authority
for this wording appeared in the subpoenas.  The original dates for each investigational hearing
were unchanged.  Thus, for Mr. Tarriff, for example, the new subpoena providing for recording
by "sound-and-visual" means was issued only four business days prior to his investigational
hearing scheduled for February 21.

After receiving the new subpoenas calling for videotaped investigational hearings,
counsel for the Companies conferred with the Commission staff numerous times telephonically
in hope of a resolution, particularly for the investigational hearing of Mr. Tarriff, which was

rapidly approaching.  Declaration of Noah A. Brumfield, Esq. ¶¶ 14-16.  The Commission staff indicated that no compromise was possible and that the Commission staff preferred that the Companies seek a ruling from the Commission by way of a Petition to Quash or Limit pursuant to 16 C.F.R. § 2.7(d) rather than proceed with Mr. Tarriff's investigational hearing by stenographic recording alone.  *Id.* ¶¶ 15-16.

Accordingly, on February 19, 2008, counsel for the Companies and the Commission staff agreed that, pursuant to the Commission's rules, the filing of a Petition to Quash or Limit by the Companies would stay the necessity of Mr. Tarriff appearing for his scheduled investigational hearing.  Ex. O (February 19, 2008 Letter from Eric Grannon to Jackson McGrady).  The next day, February 20, 2008, the Companies filed with the Secretary of the Commission a "Petition to Quash or Limit Subpoenas Dated February 13, 2008," which expressly sought to limit or quash each of the three subpoenas at issue to the extent the subpoenas required videotaping of the investigational hearings.

During the pendency of the Petition to Quash with the Commission (a 23-day period), the Companies continued cooperating in the Commission's investigation by, among other things, having one of the Companies' executives testify in an investigational hearing that was recorded only by stenographic means.  Also during that time, counsel for the Companies conferred regularly with the Commission staff both orally and in writing on new investigational hearing dates for the three witnesses the Commission had sought to videotape, so those investigational hearings might proceed expeditiously after the Commission resolved the Petition to Quash. These conferrals on new dates were not required by any rule and counsel for the Companies initiated the conferrals to avoid any unnecessary delay in proceeding with the investigational

hearings. *See* Exs. P, Q, R (February 29, March 4, and March 5, 2008 Letters from Eric Grannon to Bradley S. Albert) (respectively).

On March 14, 2008, the Commission issued its Letter Ruling denying the Companies' Petition to Quash; the ruling was unsigned by any Commissioner and issued without the opportunity for oral presentation often granted to petitions to quash. The Commission rejected the Companies' argument on the plain meaning of the "shall be stenographically reported" language in 16 C.F.R. § 2.8(b): "Although not stated by Petitioners, they in effect ask the Commission to invoke the old Latin maxim of construction *expressio unius est exclusio alterius* in their favor. . . . [W]e decline the opportunity to use this maxim to construe Rule 2.8 in a manner that would preclude using technology to enhance the accuracy of the records of investigational hearings without enhancing fairness [sic] in any way." Ex. D at 3 n.3. Instead, the Commission reasoned that, "the rules do not explicitly forbid the use of videotaping." *Id.* at 4. Furthermore, the Commission declared that 16 C.F.R. § 2.8(b) "does not foreclose any, much less all, other means of recording." *Id.* at 3.

The Companies viewed the Letter Ruling as irreconcilable with the plain meaning of 16 C.F.R. § 2.8(b). Nonetheless, in the spirit of compromise, the Companies conferred with the Commission staff and offered to have the three witnesses participate in videotaped investigational hearings if the Commission would agree to use the videotaped testimony only in this Part-II investigation (i.e., not in a subsequent adjudicative proceeding). Ex. S (March 20, 2008 Letter from Eric Grannon to Markus H. Meier). The Commission rejected that offer, preferring to preserve without restriction the ability to seek to use the videotaped testimony in a subsequent adjudicative proceeding. *Id.* The Companies also offered that, if a district court enforcement action were unavoidable, to consider accelerating the dates of the three

investigational hearings at issue to the next day, March 21, 2008, to expedite the technical non-compliance required for an enforcement action, but the Commission declined that offer as well. *Id.*

On March 21, 2008, the day after the Commission rejected the Companies' offer of compromise, the Companies notified the Commission in writing of "our unequivocal, good-faith intention not to comply with the three subpoenas at issue because those subpoenas notice videotaped investigational hearings rather than the stenographically reported investigational hearings expressly provided for in 16 C.F.R. § 2.8(b)."  Ex. T (March 21, 2008 Letter from Eric Grannon to Markus H. Meier).  The Companies explained:  "We are communicating this intention to the Commission today rather than waiting to establish our good-faith non-compliance on each of the applicable subpoena return dates—March 28, April 4, and April 10, 2008—to enable the Commission to bring an enforcement action as soon as possible, without undue delay, to set the matter for resolution by a district court.  To further facilitate and expedite such resolution, I will accept service of process on behalf of my clients."  *Id.*

The Commission filed this subpoena-enforcement action, *ex parte*, nearly four weeks later.  During that four-week interim, the Companies continued cooperating with the Commission's investigation, including completing the Commission's requisite certification of "Substantial Compliance" with the Civil Investigative Demands.  During that time, the Commission also conducted an investigational hearing of another of the Companies' executives, which was recorded only by stenographic means.

## **LEGAL STANDARD**

The question presented is whether the Commission has the authority to videotape investigational hearings pursuant to 16 C.F.R. § 2.8(b).  The standard of review, therefore, is a straightforward legal one of whether the agency is acting within its regulations.  *E.g.*, *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (holding that review of whether an agency subpoena exceeds an agency's regulations is "a question of law").

Because the issue here is the threshold legal question of whether the Commission is authorized given 16 C.F.R. § 2.8(b) to issue subpoenas calling for videotaped investigational hearings, the Court need not reach the secondary issues of whether the subpoenas seek relevant information or are unduly burdensome.  *E.g.*, *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544, 1548 n.7 (D.C. Cir. 1994) (holding that determination of subpoena authority is a prerequisite to addressing questions of relevance or burden).

To be sure, the question here has nothing whatsoever to do with the substantive competence of the Commission to investigate the Companies for potential acts of unfair competition, an issue not before the Court.  Rather, the issue here is whether in the conduct of such an investigation the Commission may disregard its own regulations.  That issue is one for the Court to decide in this action without deference or leeway to the Commission.  *Compare, e.g.*, *FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977) ("[S]ubstantive issues which may be raised in defense against an administrative complaint are premature in an enforcement proceeding."), *with, e.g.*, *ASAT*, 411 F.3d at 253 (D.C. Cir. 2005) (reversing district court order enforcing agency subpoena, because the agency did "not have authority under its regulations" to issue the subpoena and "of course, the [agency] is bound by its regulations").

16

## ARGUMENT

**THE COMMISSION'S AUTHORITY TO RECORD INVESTIGATIONAL HEARINGS IS LIMITED TO THAT PROVIDED IN 16 C.F.R. § 2.8(b), WHICH PROVIDES THAT INVESTIGATIONAL HEARINGS "SHALL BE STENOGRAPHICALLY REPORTED."**

First principles of administrative law dictate that the text of 16 C.F.R. § 2.8(b) is dispositive of the issue before the Court. Title 16 C.F.R. § 2.8(b) provides, with regard to the investigational hearings at issue here: "Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation." The plain meaning of those words is not in serious dispute. The Commission concedes as much in its Petition here and in its Letter Ruling below. In each, the Commission invokes *other* provisions in support of its argument that it can videotape investigational hearings, but the Commission never hangs its hat on the words in 16 C.F.R. § 2.8(b), the specific regulation governing the recording of investigational hearings. For good reason, because if 16 C.F.R. § 2.8(b) intended to require stenographic recording yet also to permit the Commission unfettered discretion to employ any other additional means of recording, the provision surely could have conveyed that meaning more easily than with the exclusive reference to stenographic recording.

Rather than grounding its position in the words of 16 C.F.R. § 2.8(b), the Commission argues about how important videotaping "demeanor evidence" is to its investigations and that a plain-meaning interpretation of 16 C.F.R. § 2.8(b) would deprive the agency of "technology that is routine in today's legal climate." Pet. Mem. 14. Whatever the merits of those policy arguments for the Commission to consider seeking to amend 16 C.F.R. § 2.8(b), they are not reasons for this Court to look past the words in 16 C.F.R. § 2.8(b) and the ordinary result those words compel.

Once this Court examines the plain meaning of the words in 16 C.F.R. § 2.8(b), and is satisfied that those words do not lead to an absurd result, the controversy before the Court will be resolved because there is no doubt that the Commission is bound by its own regulations.  *E.g.*, *ASAT*, 411 F.3d at 253 (D.C. Cir. 2005) (holding agency subpoena invalid because the subpoena exceeded the agency's regulations); *Reuters Ltd. v. FCC*, 781 F.2d 946, 950-51 (D.C. Cir. 1986) ("[I]t is elementary that an agency must adhere to its own rules and regulations.  *Ad hoc* departures from those rules, even to achieve laudable aims, cannot be sanctioned . . . . Simply stated, rules are rules, and fidelity to the rules which have been properly promulgated, consistent with applicable statutory requirements, is required of those to whom Congress has entrusted the regulatory missions of modern life.").

## I.  TITLE 16 C.F.R. § 2.8(b) MUST BE CONSTRUED ACCORDING TO ITS PLAIN MEANING.

"Our construction of the . . . regulation must begin with the words in the regulation and their plain meaning."  *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1507 (D.C. Cir. 1984).  Title 16 C.F.R. § 2.8(b) provides:

> Investigational hearings shall be conducted by any Commission member, examiner, attorney, investigator, or other person duly designated under the FTC Act, for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation.  Such hearings ***shall be stenographically reported*** and a ***transcript*** thereof shall be made a part of the record of the investigation.

(Emphasis added.)

The parties do not dispute that 16 C.F.R. § 2.8(b) requires stenographic recording of investigational hearings.  The issue in controversy is whether 16 C.F.R. § 2.8(b):  (i) requires

stenographic recording and permits no other; or (ii) requires stenographic recording and permits the Commission unfettered discretion to employ any other additional means of recording. For the reasons detailed below, the words in 16 C.F.R. § 2.8(b) yield the first meaning and cannot support the latter.

### A. The Plain Meaning of the Words in 16 C.F.R. § 2.8(b) Requires the Commission to Record Investigational Hearings Only by Stenographic Means.

"When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576, 583 (2000) (citation and internal quotation marks omitted). "Affirmative words are often, in their operation, negative of other objects than those affirmed." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803), *quoted in D.C. Fin. Responsibility & Mgmt. Auth. v. Concerned Senior Citizens of the Roosevelt Tenant Ass'n, Inc.*, 129 F. Supp. 2d 13, 16 (D.D.C. 2000) (Lamberth, J.) (holding that "the affirmative statement that certain laws 'shall apply' to the Control Board necessarily implies that laws not referenced shall *not* apply.") (emphasis in original).

Thus, because the words in 16 C.F.R. § 2.8(b) require stenographic recording and only specify stenographic recording, those words set both the "ceiling" and the "floor" of the Commission's authority to record investigational hearings. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2533 (2007) (holding that a provision's use of "shall" as a directive "does not just set forth *minimum* requirements . . . . The provision operates as a ceiling as well as a floor.") (emphasis in original).

Significantly, a mandatory provision that is otherwise plain on its face cannot be rendered ambiguous simply because it does not use the word "only." In *Beverly Health & Rehabilitation Services, Inc. v. NLRB*, 317 F.3d 316 (D.C. Cir. 2003), for example, the court addressed a statute's requirement for unions to notify their employer institutions at least ten days before the

date the union would begin to strike.  The statute provided one exception from the ten-day notice requirement for mutually agreed-upon extensions of prior notification:  "The notice, once given, may be extended by the written agreement of both parties."  *Beverly*, 317 F.3d at 320 (D.C. Cir. 2003) (quoting the statute).  The National Labor Relations Board argued, in defense of its administrative decision below upholding a union's unilateral declaration of an extension, that the statute permitted extensions other than by mutual agreement because the statute did not use the word "only" (i.e., the statute did not provide, "The notice, once given, may be extended *only* by the written agreement of both parties.").  The court rejected that argument out of hand:

> Despite the plain meaning of the statute, the Board contends that it is somehow ambiguous because it does not expressly state that agreement of the parties is the *only* means to obtain an extension.  No such express provision is necessary.  If the Congress had intended to allow either party to extend the notice unilaterally, it could easily have said so—but it did not.

*Beverly*, 317 F.3d at 321 (D.C. Cir. 2003) (emphasis in original).

Here, too, 16 C.F.R. § 2.8(b) cannot be rendered ambiguous simply because it does not use the word "only."  If, when the Commission promulgated 16 C.F.R. § 2.8(b) in 1967, the Commission had intended the regulation to require stenographic recording yet permit the Commission unfettered discretion to use any other additional means, the Commission could easily have said so—but it did not.

In its Letter Ruling, the Commission derided this plain-meaning construction of 16 C.F.R. § 2.8(b).  Ex. D at 3 n.3 ("Although not stated by Petitioners, they in effect ask the Commission to invoke the old Latin maxim of construction *expressio unius est exclusio alterius* in their favor. . . . [W]e decline the opportunity to use this maxim to construe Rule 2.8 in a

manner that would preclude using technology to enhance the accuracy of the records of investigational hearings without enhancing fairness [sic] in any way."). But courts have not so cavalierly discarded this traditional, plain-meaning canon of construction. *E.g.*, *D.C. Fin. Responsibility & Mgmt. Auth.*, 129 F. Supp. 2d at 16 (D.D.C. 2000) (Lamberth, J.) ("One of the most firmly established canons of interpretation is *expressio unius est exclusio alterius*, that is, the expression of one is the exclusion of the other.").

In its Letter Ruling, the Commission relied on essentially the same argument expressly rejected in *Beverly*: the Commission must have the authority to videotape investigational hearings because "the rules do not explicitly forbid the use of videotaping." Ex. D at 4. The Commission's Letter Ruling took the position that 16 C.F.R. § 2.8(b) "establishes a *minimum* standard of recordation, and, further, that this minimum standard does not foreclose any, much less all, other means of recording." Ex. D at 3 (emphasis in original). Thus, the Commission expressly purports unfettered discretion to use any additional means to record investigational hearings. *See also, e.g.*, Pet. Mem. 11 ("The form of recordation is left to the discretion of the Commission."). By that logic, the Commission could, for example, administer lie detectors or voice-stress analyzers as additional means of recording testimony in investigational hearings because such methods of recording are not expressly prohibited by the purported "minimum standard" of 16 C.F.R. § 2.8(b).

Under *Beverly* and the other precedents noted above, the Commission's position claiming unfettered discretion for additional means of recording investigational hearings is irreconcilable with the plain and ordinary meaning of the words in 16 C.F.R. § 2.8(b). The regulation says "shall be stenographically reported" and provides for no alternatives. Ordinarily, that phrasing

would not be associated with broad discretion. Instead, the regulation simply specifies traditional stenographic transcription as the manner of recording investigational hearings.

### B. The Context and History of 16 C.F.R. § 2.8(b) Confirm Its Plain Meaning.

The context of 16 C.F.R. § 2.8(b) confirms its plain meaning that the Commission is required to record investigational hearings only by stenographic means. Each and every other reference to the recording of investigational hearings throughout the pertinent regulations mentions only stenographic means. *E.g.*, 16 C.F.R. § 2.8(c) ("In investigational hearings . . . the Commission investigators shall exclude from the hearing room all other persons except the person being examined, his counsel, the officer before whom the testimony is to be taken, and *the stenographer* recording such testimony."); 16 C.F.R. § 2.9(a) ("Any person compelled . . . to testify in an investigational hearing shall be entitled to retain a copy . . . of his own testimony *as stenographically reported*, except that in a nonpublic hearing the witness may for good cause be limited to inspection of the official *transcript* of his testimony.") (emphases added).

Indeed, nowhere in any of the Commission's regulations on investigational hearings is there any reference to videotaping, "sound-and-visual" recording, or memorializing investigational hearings by anything other than "stenographic" means. Nor is there any other indication whatsoever that investigational hearings might be recorded by videotaping, "sound-and-visual" recording, or anything other than "stenographic" means.

The history of 16 C.F.R. § 2.8(b) also confirms its plain meaning that the Commission is required to record investigational hearings only by stenographic means. The Commission promulgated 16 C.F.R. § 2.8, including subsection (b), in 1967. At that time, the Federal Rules of Civil Procedure used nearly identical language with regard to depositions: "The testimony *shall be taken stenographically* and transcribed unless the parties agree otherwise." Fed. R. Civ.

P. 30(c) (1967) (emphasis added). Courts construed that language in the Federal Rules to preclude videotaping:

> There is no provision in Rule 30(c) for use of a tape recorder or video tape recorder. The deposition must be recorded stenographically and transcribed unless the parties agree otherwise. . . . [W]e perceive neither occasion nor necessity for imparting to [Rule 30(c)'s] language a meaning which its framers never contemplated, since it is so readily susceptible of prompt amendment, should amendment be found either necessary or desirable.

*U.S. Steel Corp. v. United States*, 43 F.R.D. 447, 451 (S.D.N.Y. 1968) (denying motion to videotape a deposition in addition to stenographic recording); *see also* Michael J. Henke & Craig D. Margolis, *The Taking and Use of Video Depositions: An Update*, 17 Rev. Litig. 1, 3 n.4 (1998) ("Courts interpreted [Rule 30(c)] strictly to prohibit recording a deposition either by audio tape recorder or by videotape.").

If anything, the language in 16 C.F.R. § 2.8(b) is stricter than the contemporaneous, analogous provision of the Federal Rules because 16 C.F.R. § 2.8(b) requires and specifies only stenographic recording and does not provide for the possibility of other means as the Federal Rules did.

It was not until 1970, three years after the Commission promulgated 16 C.F.R. § 2.8, that the Federal Rules first explicitly provided for non-stenographic recording. *See* Fed. R. Civ. P. 30(b)(4) (1970) ("The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means."). Despite this shift in the Federal Rules, when the Commission amended 16 C.F.R. § 2.8(b) for the first time in 1980, the Commission left

untouched the original 1967 language at issue here that requires and specifies only stenographic recording.

In 1993, the Federal Rules for the first time provided for videotaped depositions as a matter of right. *See* Fed. R. Civ. P. 30(b)(2) (1993) (providing that depositions "may be recorded by sound, sound-and-visual, or stenographic means"). But when the Commission amended 16 C.F.R. § 2.8(b) three years later in 1996 (for the second and last time), the Commission again left untouched the original 1967 language at issue here that requires and specifies only stenographic recording.

Conspicuously, however, for the three subpoenas at issue, the Commission apparently borrowed the "sound-and-visual" language from the modern Federal Rules—e.g., "The investigational hearing of Scott Tarriff will be recorded by sound-and-visual means in addition to stenographic means." Ex. M—just as the Commission apparently borrowed the "shall be stenographically" language from the 1967 version of the Federal Rules when the Commission promulgated 16 C.F.R. § 2.8(b).

It seems apparent that the language in 16 C.F.R. § 2.8(b) derives from the Federal Rules as they existed in 1967, which were construed to preclude videotaping. Unlike the subsequent series of amendments to the Federal Rules enacted to adapt to evolving technology and legal practice, however, the Commission has twice amended 16 C.F.R. § 2.8(b) since 1967 and each time left untouched the original "shall be stenographically reported" language. That inaction by the Commission, whether deliberate or neglectful, is the cause of the Commission's current predicament of being bound by a regulation that the Commission no longer wishes to follow according to its terms. The indisputable plain meaning of the words in 16 C.F.R. § 2.8(b), as

confirmed by their context and history, is that the Commission must record investigational hearings only by stenographic means.

### C. Absent Absurd Results, the Court Must Enforce 16 C.F.R. § 2.8(b) According to Its Plain Meaning.

Title 16 C.F.R. § 2.8(b) simply specifies traditional stenographic transcription as the manner of recording investigational hearings, and there is nothing absurd about giving effect to this meaning, which therefore ought to end the Court's inquiry. *E.g.*, *Goldring v. District of Columbia*, 416 F.3d 70, 74 (D.C. Cir. 2005) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations marks and citation omitted).

Nonetheless, the Commission argues that plain meaning "would lead to absurd results." Pet. Mem. 14. But the proffered parade of horribles—"the Commission could not employ court reporters using standard modern reporting systems such as steno masks, audiotape or digital back-up systems, all of which help to enhance the accuracy of transcription," *id.*—does not follow from a plain-meaning construction here. As the Commission admits, steno masks and such are merely aids to stenographic transcription; they do not themselves purport to memorialize investigational hearings as the evidence of testimony. Naturally, the plain meaning of 16 C.F.R. § 2.8(b) also would not preclude attorneys from "taking longhand notes during the course of investigational hearings, or from using laptop computers," Pet. Mem. 14, because those also do not serve as the record of testimony.

Thus, plain meaning here leads not to absurd results, but to a result the Commission now apparently finds undesirable. That, however, is not a reason for the Court to look beyond the plain meaning of the regulation. *E.g.*, *S.A. Storer & Sons Co. v. Sec'y of Labor*, 360 F.3d 1363, 1370 (D.C. Cir. 2004) (applying a plain-meaning construction of agency regulations to deny the

agency's attempt to improve worker safety: "The [agency] may be dissatisfied with the regulation's current formulation; if so, [the agency] can amend or eliminate it. But [the agency] cannot do so by ascribing a meaning to words they simply do not have.").

Notably, because the meaning of 16 C.F.R. § 2.8(b) is plain and does not lead to an absurd result, the deference sought by the Commission here, Pet. Mem. 13, never comes into play. *E.g.*, *Pfizer, Inc. v. Heckler*, 735 F.2d at 1509 (D.C. Cir. 1984) ("Deference to agency interpretations is not in order if the rule's meaning is clear on its face.").

## II. TITLE 16 C.F.R. § 2.8(b) IS THE DISPOSITVE AUTHORITY HERE, AND NO OTHER PROVISION AUTHORIZES THE COMMISSION TO VIDEOTAPE INVESTIGATIONAL HEARINGS.

The Commission effectively concedes that 16 C.F.R. § 2.8(b) does not permit videotaping of investigational hearings. Instead, the Commission argues at length that 16 C.F.R. § 2.8(b), the specific regulation on recording investigational hearings, is not dispositive here because of the Commission's broad, general statutory subpoena power. *E.g.*, Pet. Mem. 9 ("Respondents' argument is wrong because it ignores the broad authority granted to the Commission under the FTC Act."); Pet. Mem. 12 ("Respondents did not argue that the Commission lacked the *statutory* authority to require videotaping.") (emphasis in original).

The Commission's argument is demonstrably incorrect. An agency cannot retreat to a general grant of statutory authority to avoid the outcome under the agency's specific regulations. In *Service v. Dulles*, 354 U.S. 363 (1957), for example, the Court addressed the discharge of a Foreign Service officer by the Secretary of State. The Secretary had terminated the employee under a broad grant of statutory authority: "Notwithstanding the provisions of any other law, the Secretary of State may, in his absolute discretion, terminate the employment of any officer or employee of the Department of State or of the Foreign Service of the United States whenever he

shall deem such termination necessary or advisable in the interests of the United States." *Service v. Dulles*, 354 U.S. at 370 (quoting the statute).

The termination was not in conformity with the State Department's own regulations, however. On that basis, the Court held the termination invalid: "While it is of course true that under the [statute] the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so, as we have already held, and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." *Service v. Dulles*, 354 U.S. at 388.

This rule that an agency cannot rely on a general statutory grant to avoid the agency's own regulation is a regularly applied first principle of administrative law. *E.g.*, *Exportal Ltda. v. United States*, 902 F.2d 45, 49 (D.C. Cir. 1990) (holding agency action invalid under the agency's regulations, and rejecting agency's assertion of statutory authority as "largely beside the point" because "the Secretary has adopted [a regulation], under which the Secretary's discretion has been strictly limited by the plain terms of the regulation"); *Ctr. for Auto Safety v. Dole*, 828 F.2d 799, 805 (D.C. Cir. 1987) ("Even when a statute grants an agency broad discretion in making a decision and itself provides no basis for review of that decision, it is well-settled that judicial review still exists to require the agency to follow procedural or substantive standards contained in its own regulations, which curtail the discretion conferred by statute.").

Thus, the Commission's invocation of broad subpoena powers under Section 9 of the F.T.C. Act as the authority for videotaping investigational hearings is a nonstarter. *See, e.g.*, Pet. Mem. 11 (arguing that under the testimony subpoena powers of Section 9, "The form of recordation is left to the discretion of the Commission."). Because 16 C.F.R. § 2.8(b) specifically provides the manner for recording investigational hearings, the Commission cannot

sidestep that regulation by invoking Section 9 or any other general statutory provision that, as the Commission concedes, does not address the recording of investigational hearings.

Separately, in a footnote in its Letter Ruling, the Commission half-heartedly invoked a regulation not at issue, 16 C.F.R. § 2.9(b)(6), as a basis for videotaping investigational hearings. Ex. D at 4 n.6. Section 2.9(b)(6) says nothing whatsoever about recording investigational hearings. Instead, Section 2.9(b)(6) addresses only the Commission's ability to "regulate the course of the hearing" after some predicate act of misconduct has occurred during the hearing. No such misconduct has occurred in this case. Indeed, as the Commission concedes in its Petition, "the Commission did not invoke Rule 2.9(b)(6) as an affirmative ground for videotaping these investigational hearings." Pet. Mem. 15. For these reasons, Section 2.9(b)(6) is entirely unhelpful to the resolution of the issue before the Court.

## CONCLUSION

For the foregoing reasons, Respondents have shown cause for their good-faith non-compliance with the subpoenas *ad testificandum* calling for investigational hearings

to be recorded by "sound-and-visual means," and the Petition of the Federal Trade Commission
to enforce those subpoenas should be denied.

Respectfully submitted,

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Eric Grannon (D.C. Bar No. 473778)
Douglas M. Jasinski (D.C. Bar No. 454230)
Noah A. Brumfield (D.C. Bar No. 488967)

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C.  20005
Tel.:  (202) 626-3600
Fax:  (202) 639-9355

Dated:  May 7, 2008                                    *Attorneys for Respondents*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

*Petitioner,*

v.

SCOTT TARRIFF, *et al.*,

*Respondents.*

Misc. No.

08-MC-00217 (RCL)

## ORDER

Upon consideration of the Petition for an Order Enforcing Subpoenas filed by the Federal Trade Commission (D.E. 1), the Response to Order to Show Cause and Memorandum in Opposition to Petition to Enforce Subpoenas filed by Respondents on May 7, 2008 as well as any Reply thereto, and the parties' arguments at the hearing on May 23, 2008 at 10:00 a.m. in Courtroom No. 22A, it is hereby

ORDERED that Respondents have shown cause for their good-faith non-compliance with the subpoenas calling for investigational hearings to be recorded by "sound-and-visual" means and the Court's April 17, 2008 Order to Show Cause (D.E. 2) is hereby RESOLVED;

ORDERED that the Petition for an Order Enforcing Subpoenas (D.E. 1) is hereby DENIED; and

FURTHER ORDERED that pursuant to 16 C.F.R. § 2.8(b) Respondents Scott Tarriff, Edward Maloney, and Paul Campanelli participate in investigational hearings conducted by the

Federal Trade Commission to be recoded only by stenographic means within thirty (30) days of the entry of this Order, or such other time period as the parties mutually agree.

SO ORDERED:

_____
Honorable Royce C. Lamberth
United States District Judge

Dated: _____, Washington, DC

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

*Petitioner*,

v.

SCOTT TARRIFF, *et al.*,

*Respondents*.

Misc. No.

08-MC-00217 (RCL)

## DECLARATION OF NOAH A. BRUMFIELD, ESQ.

Pursuant to 28 U.S.C. § 1746, Noah A. Brumfield, Esq., declares as follows:

1.     I am an attorney, a member of the bar of the District of Columbia and of the State of California, and I have been employed by White & Case LLP ("White & Case") since April 2003.

2.     I am counsel to Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") (together, "the Companies") in connection with the Federal Trade Commission's (the "Commission") investigation of a patent litigation settlement agreement concerning a pharmaceutical product.  I am also counsel to Scott Tarriff, Paul Campanelli, and Edward Maloney, who are current and former executives of the Companies (together, "the Respondents"), in the Commission's investigation.

3.     I submit this declaration in support of the Response to Order to Show Cause and Memorandum in Opposition to Petition to Enforce Subpoenas *Ad Testificandum* that Provide for Videotaped Investigational Hearings ("Opposition") to be filed concurrently with this Declaration by the Companies on behalf of the Respondents

1

for subpoenas issued by the Commission on February 13, 2008, and served on the following individuals: (1) Paul Campanelli; (2) Scott Tarriff; and (3) Ed Maloney.

4.    The facts set forth herein are based on my personal knowledge or information made known to me in the course of my official duties.  I have read the exhibits attached to the Opposition (hereinafter referred to as "Ex."), and verify that Ex. A through Ex. T are true and correct copies of original documents contained in the official files of White & Case.

5.    On November 29, 2007, the Commission issued a subpoena *ad testificandum* to Mr. Paul Campanelli, compelling his appearance at an investigational hearing.  Ex. E.  This hearing took place on January 16, 2008, and the parties mutually agreed to continue the hearing for a second day at a date to be determined in the future.

6.    On November 29, 2007, Commission staff issued a subpoena *ad testificandum* to Mr. Ed Maloney, compelling his appearance at an investigational hearing.  This hearing was scheduled for December 21, 2007, but the hearing was cancelled on December 18, 2007, due to illness by a Commission staff member.

7.    On January 16, 2008, staff issued two subpoenas *ad testificandum*, to Scott Tarriff and Ed Maloney, compelling their appearance at investigational hearings.  Exs. F and G (respectively).

8.    On January 28, 2008, I received a letter from Mr. Jonathan R. Lutinski, a member of Commission staff, stating staff's intention to record the investigational hearings of Messrs. Paul Campanelli, Scott Tarriff, and Ed Maloney by "sound-and-visual means."  Ex. H.  This was the first statement made by the FTC to counsel for the

Companies and Respondents of staff's intention to record any investigational hearing by anything other than stenographic means.

9.      On February 4, 2008, I responded with a letter to Mr. Lutinski, stating that 16 C.F.R. § 2.8(b) provides that investigational hearings "shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation." I requested the citation of authority providing for a method of recording an investigational hearing other than stenographically, as provided for by 16 C.F.R. § 2.8(b), and provided notice that, absent such authority, Messrs. Campanelli, Tarriff, or Maloney, could not agree to videotaping.

10.      On February 6, 2008, I received a letter from Mr. Lutinski stating that "Congress granted to the Commission broad authority" to conduct investigations, but citing no authority in support of recording investigational hearings by other than stenographic means.  Ex. I.

11.      On February 8, 2008, Mr. Douglas M. Jasinski, also counsel to the Companies and Respondents, and I had a late afternoon teleconference with Mr. Bradley S. Albert, a member of Commission staff.  Mr. Albert declined to provide a reason for the proposed videotaping of the investigational hearings, nor did Mr. Albert provide the requested legal authority permitting videotaping.   Instead, Mr. Albert stated that the Commission has broad authority even if the Commission's rules are silent as to the means of conducting an investigation.   Mr. Jasinski and I noted that, to our knowledge, the videotaping of an investigational hearing was extraordinary and without precedent.  Mr. Albert acknowledged that the Commission had not before expressed a view either way as

to the staff's authority to videotape an investigational hearing, suggesting that the issue is a novel one.

12.    On February 12, 2008, I sent a letter to Mr. Lutinski stating that Commission staff had not provided authority for the Commission to videotape investigational hearings.  Additionally, I stated in my letter that the original subpoenas for Mr. Campanelli (issued on November 29, 2007) and for Messrs. Tarriff and Maloney (issued on January 16, 2008) did not provide notice of the Commission's intention to videotape the investigational hearings.  I also stated that petitioning to quash or limit the subpoenas was premature in the absence of subpoenas that provide notice that the investigational hearings would be videotaped.   I reiterated the position of the Companies and Respondents that Messrs. Campanelli, Tarriff, and Maloney intended to comply with subpoenas as issued.  Ex. J.

13.    On February 13, 2008, I received a letter from Mr. Lutinski enclosing new investigational hearing subpoenas for each of Messrs. Campanelli, Tarriff, and Maloney, Exs. L, M, and N (respectively), and noticing the recording of each would be by "sound-and-visual means in addition to stenographic means."  On the same day (February 13, 2008), I responded in writing, stating that Messrs. Campanelli, Tarriff, and Maloney would appear for investigational hearings, on the scheduled dates, taken in the customary manner of stenographic recording.  I also reiterated that the Commission had yet to identify any legal authority for the noticed recording by non-stenographic means.  Ex. K.

14.    On February 14, 2008, at approximately 5:00 p.m., Mr. Jasinski and I had a teleconference with Mr. Albert.  We requested from Mr. Albert a reason for the decision to videotape the investigational hearings and for legal authority in support of

4

that recording method.   Mr. Albert declined to provide a reason and noted that videotaping was not inconsistent with the applicable rules and statutes.  Mr. Albert also declined to negotiate the matter further, stating that a videographer and a stenographer would be present at each of the investigational hearings.

15.    On February 15, 2008, Mr. Jackson McGrady of the Office of General Counsel and I held three teleconferences.

      a.    At approximately 10:30 a.m., I telephoned Mr. McGrady to discuss the videotaping of the investigational hearings.   I stated that the witnesses would attend a stenographically-transcribed investigational hearing, as previously agreed, but that the parties objected to videotaping as outside the scope of the F.T.C.'s authority.   I reiterated that Commission staff had not provided any legal authority or any rationale supporting the videotaping.  Mr. McGrady did not identify the reason or legal support for videotaping other than to identify 16 C.F.R. § 2.9(b)(6), which I explained was inapplicable as relating only to counsel conduct and sanctions.

      b.    At approximately 2:15 p.m., I telephoned Mr. McGrady, with a suggested resolution at least as to Mr. Tarriff to allow Mr. Tarriff's investigational hearing to proceed as scheduled six days later on February 21, 2008, with only stenographic reporting, and thus avoid further delay.  Mr. McGrady offered to consider further the option of proceeding with Mr. Tarriff's investigational hearing with only stenographic reporting.

c.  At approximately 2:55 p.m., I received a telephone call from Mr.
McGrady declining the suggested resolution as to at least Mr. Tarriff,
stating that Commission counsel preferred a ruling on the issue rather
than to take Mr. Tarriff's investigational hearing as scheduled without
videotaping.    Mr. McGrady identified no alternative offer of
compromise or resolution on the matter.

16.    On February 19, 2008, at approximately 1:00 p.m., I spoke with Mr.
Albert by telephone and discussed whether it was possible to avoid filing the petition
through an agreement not to proceed with the proposed videotaping.    Mr. Albert
indicated that the F.T.C. would not change its position on videotaping, noting that the
issue does not lend itself to compromise.

17.    On February 20, 2008, the Companies, on behalf of Messrs. Campanelli,
Tarriff, and Maloney, filed a Petition to Quash or Limit the Subpoenas ("Petition to
Quash").  The Petition to Quash asserted that the Commission lacks the authority to
record the investigational hearings of Messrs. Campanelli, Tarriff, and Maloney by
anything other than stenographic means.

18.    On March 14, 2008, the Commission issued a Letter Ruling denying the
Petition to Quash.  Ex. D.  The Commission's Letter Ruling reset the investigational
hearing dates of Messrs. Campanelli, Maloney, and Tarriff, to March 28, 2008, April 4,
2008, and April 10, 2008, respectively.

19.    On March 20, 2008, Mr. Eric Grannon, counsel for the Companies and
Respondents, sent a letter on which I was copied to Mr. Markus Meier, a member of
Commission staff, that memorialized a telephone conversation between Mr. Grannon and

Mr. Meier, and reiterated that Messrs. Campanelli, Tarriff, and Maloney were each willing to comply with the subpoenas so long as the hearings were recorded only by stenographic means. Ex. S. Mr. Grannon's letter additionally memorialized several offers of compromise made on March 20, 2008 to Mr. Meier made during this telephone conversation:

    a. Mr. Grannon's letter stated that Mr. Grannon offered to have each of Messrs. Campanelli, Tarriff, and Maloney appear for videotaped investigational hearings pursuant to a written agreement by the Commission not to use the videotapes outside of this Part-II investigation. Mr. Grannon's letter additionally stated that Mr. Meier declined this offer of compromise on same day, March 20, 2008, stating that the Commission was unwilling to entertain videotaping the hearings with restrictions as to the use of the videotapes outside of this Part-II investigation.

    b. Mr. Grannon's letter stated that Mr. Grannon told Mr. Meier that the Companies and Respondents were considering resolving the dispute in court. In exchange for agreements from the Commission regarding the litigation, the Companies would be willing to move the applicable hearing dates to as early as the next day, March 21, 2008, to accelerate the Respondents' good-faith non-compliance with the applicable subpoenas and thereby enable the Commission to bring an enforcement action as soon as possible. Additionally, Mr. Grannon's letter stated that Mr. Grannon told Mr. Meier that the Companies would be willing to limit the challenge to the Commission's authority to videotape hearings, rather than

also challenging, for example, the Commission's authority to administer
oaths at investigational hearings.

c.  Mr. Grannon's letter stated that Mr. Grannon offered these compromises
in exchange for an agreement by the Commission to bring the enforcement
action in the Northern District of Georgia, where the patent case and the
settlement originated.  Additionally, the letter stated that Mr. Grannon
asked for certain assurances regarding the caption of the enforcement
action.

d.  Mr. Grannon's letter stated that Mr. Meier indicated that he would have to
consult with the Office of the General Counsel concerning the offers of
compromise.

e.  Finally, in his letter, Mr. Grannon asked Mr. Meier to contact White &
Case, or have the appropriate person from the F.T.C.'s General Counsel's
office contact White & Case, by Friday, March 21, 2008, regarding the
above-identified offers of compromise to effectuate an expeditious
resolution to this issue.

20.     On March 21, 2008, at approximately 4:00 p.m., Mr. Grannon spoke with
Mr. Meier by telephone.  Mr. Meier indicated that the F.T.C. was not interested in
discussing litigation options, including the acceleration of the investigational hearing
dates.

21.     On March 21, 2008, Mr. Grannon sent a letter on which I was copied to
Mr. Meier reiterating that the Commission had declined the parties' offers of
compromise, despite the Companies' history of cooperation with the Commission's

investigation for well over a year without serious dispute and that the Companies have a good-faith objection regarding the Commission's use of videotape at each of the investigational hearings.   Ex. T.   Mr. Grannon stated that the letter represented the Respondents' good-faith intention not to comply with the applicable subpoenas, which was communicated ahead of each of the subpoena dates to enable the Commission to bring an enforcement action as soon as possible.

I declare under the penalty of perjury that the foregoing is true and correct.


Dated:  May 7, 2008


Noah A. Brumfield, Esq.

9

# Exhibit A

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 202-626-3646        egrannon@whitecase.com

COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
REQUESTED UNDER FTC RULES AND FOIA

April 4, 2008


VIA E-MAIL


David C. Shonka, Esq.
Acting Principal Deputy General Counsel
Federal Trade Commission
Office of the General Counsel
601 New Jersey Ave, NW
Washington, D.C.  20580


Re:  Petition to Quash or Limit Subpoenas Dated February 13, 2008


Dear Mr. Shonka:

I write in response to your letter dated March 28, 2008, which concerns the confidentiality of our Petition to Quash or Limit Subpoenas Dated February 13, 2008.  As you may know, but your letter does not reflect, we requested confidential treatment of our Petition at the invitation of the Commission's Office of the Secretary.  *See* Letter of February 20, 2008 from Eric Grannon, White & Case LLP, to Crystal Hunter, Office of the Secretary, Federal Trade Commission (attached).  In any event, as detailed below, under the Commission's own rules, if the Commission publicizes the Petition and the Commission's letter ruling on the Petition, the Commission must treat confidentially, via redactions, the companies and witnesses named in the Petition and the ruling.

More fundamentally, the identity of the companies and witnesses has no bearing on the dispute at issue, namely, whether the Commission is authorized to videotape investigational hearings.  This issue can and should be resolved — consistent with the public's interest in access to information — without disclosing information related to the investigation, including the subject matter of the investigation and the identity of the companies and company witnesses under investigation.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG
HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUNICH
NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

David C. Shonka, Esq.

WHITE & CASE

April 4, 2008

As you know, my clients have been subject to and cooperating in a non-public, Part-II investigation by the Commission for well over a year. The Commission's Operating Manual provides unequivocally that the identities of such parties are to be treated confidentially:

> To promote orderly investigative procedures and to protect individuals or business entities under investigation from premature adverse publicity, the Commission treats the fact that a particular proposed respondent is under investigation and the documents and information submitted to or developed by staff in connection with the investigation as confidential information that can be released only in the manner and to the extent authorized by law and by the Commission. In general, even if a proposed respondent in a nonpublic investigation makes a public disclosure that an investigation is being conducted, Commission personnel may not acknowledge the existence of the investigation or discuss its purpose and scope or the nature of the suspected violation.

FTC Operating Manual, Chapter Three § 3.3.1; *see also, e.g.*, FTC Operating Manual, Chapter Seventeen § 2.5 ("Even when a proposed respondent in a non-public investigation makes a public disclosure that an investigation is being conducted, staff may neither acknowledge the existence of the investigation nor discuss its purpose or scope of the nature of the suspected violation. . . . Special care must be exercised regarding any comment or action that could effect [sic] the value of stock or other securities.").

It would be odd if these safeguards on the confidentiality of Part-II investigations no longer applied simply because a party to such an investigation raised in good-faith a question as to whether the Commission is acting beyond the plain language of its regulatory authority. The Commission's rules on protecting the confidentiality of parties subject to investigations, including from "premature adverse publicity," surely must apply with equal force to a party that questions an aspect of the Commission's authority.

Furthermore, as you acknowledge in your letter, Title 16 C.F.R. § 4.9(c)(3) provides for the redaction of "information that is not required to be made public" from materials such as the Petition and the Commission's letter ruling on the Petition. Disclosure of the companies and witnesses named in the Petition and the Commission's ruling is not justified; such disclosure would add nothing whatsoever to the question at issue in those papers: namely, whether the Commission is authorized to videotape investigational hearings. Identifying the companies and witnesses would not illuminate the videotaping issue for the public, but would subject the companies and witnesses to "premature adverse publicity" prior to the Commission determining that an adjudicative proceeding is warranted. The danger of such publicity is particularly acute because the Commission's letter ruling unnecessarily discusses the subject matter of the investigation in addressing the videotaping issue.

The only way to reconcile (i) the Commission's express commitments to protecting the identities of parties in investigations, (ii) the provision in 16 C.F.R. § 2.7(g) that petitions to quash are public, and (iii) the provision in 16 C.F.R. § 4.9(c)(3) authorizing redaction to protect non-public information would be to redact the names of the companies and witnesses identified in the Petition and the Commission's ruling prior to publication of those materials. In particular,

David C. Shonka, Esq.

April 4, 2008

Title 16 C.F.R. § 4.10(a)(8)-(9) mandates that the names of the witnesses be withheld as non-public "material" that was received by the Commission pursuant to an investigation (including my clients' cooperation during the voluntary disclosure period prior to the formal investigation).

As we have stated previously, the Commission's non-public, Part-II investigation is akin to grand jury proceedings. *E.g., Hannah v. Larche*, 363 U.S. 420, 449 n.30 (1960); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). Accordingly, the identities of the parties subject to a Part-II investigation must be similarly safeguarded. Indeed, the Supreme Court has articulated bases for grand jury secrecy that apply equally here and mirror the confidentiality concerns emphasized throughout the Commission's own rules. *E.g., Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.10 (1979) (holding that grand jury secrecy serves "to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation"). For these reasons, our Petition was captioned *"In re Subpoenas Ad Testificandum Dated February 13, 2008"* just as grand jury proceedings are so captioned. *E.g., In re Grand Jury Subpoena Duces Tecum Dated May 3, 1990*, 957 F.2d 911 (D.C. Cir. 1992).

For the foregoing reasons, redaction of the names of the companies and witnesses identified in the Petition and the Commission's ruling is justified by the Commission's own rules and other relevant authority. Moreover, we request that, to the extent your office pursues an enforcement action on the videotaping issue in district court, you agree to file such an action under seal and avoid including any information on the public record regarding the subject matter of the investigation, the parties being investigated, or other information that may be highly prejudicial to my clients but that has no bearing on the Commission's authority to videotape investigational hearings. If your office does not agree that this information should remain confidential, we ask that you file any enforcement action under seal provisionally, so that we may preserve the issue and seek a conference with the court to address whether confidential treatment is appropriate.

(I note that the timing of your letter is conspicuous in that it comes well over a month after we filed our Petition but on the heels of our having informed the Commission that we believe a district court will be required to resolve our dispute on the videotaping issue. We remain hopeful that our good-faith dispute on the videotaping issue will not affect the confidentiality issue.)

\*    \*    \*

The information in this letter is confidential business information of Par and Paddock. We thus respectfully request that this letter and all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality

David C. Shonka, Esq.

WHITE & CASE

April 4, 2008

provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Mark Gidley, Esq.

Attachment

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646     egrannon@whitecase.com

February 20, 2008

<u>VIA HAND DELIVERY</u>

Crystal Hunter
Office of the Secretary
Federal Trade Commission
600 Pennslyvania Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE**
**PROPRIETARY BUSINESS INFORMATION**
**CONFIDENTIAL TREATMENT**
<u>**REQUESTED UNDER FTC RULES AND FOIA**</u>

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),</u>
        <u>Civil Investigative Demands ("CIDs")</u>

Dear Ms. Hunter:

As per our conversation of today, February 20, 2008, please treat our Petition to Quash or Limit Subpoenas Dated February 13, 2008 confidentially.

The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNIMED PHARMACEUTICALS, INC., | : | |
| A Delaware Corporation, and | : | |
| LABORATORIES BESINS | : | |
| ISCOVESCO, a Delaware Corporation | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No.: 1:03-CV-2503 |
| | : | |
| PADDOCK LABORATORIES, INC. | : | |
| A Minnesota Corporation, | : | |
| | : | |
| Defendant. | : | |

## CONSENT JUDGMENT AND ORDER OF PERMANENT INJUNCTION

This action for patent infringement (the "Litigation") has been brought by

Plaintiff Unimed Pharmaceuticals, Inc. ("Unimed") (a wholly-owned subsidiary of

Solvay Pharmaceuticals, Inc. ("Solvay")), and Laboratories Besins Iscovesco

("Besins"), against Defendant Paddock Laboratories, Inc. ("Paddock") for

infringement of United States Patent No. 6,503,894 (the "'894 Patent"), covering a

pharmaceutical transdermal gel sold under the trademark Androgel®  (the

"Unimed Product"). Each of Unimed, Solvay, and Besins (the "Plaintiffs") and

Paddock, together with its assignee Par Pharmaceutical Companies, Inc. ("Par"),

acknowledge there is significant risk to each of them associated with the continued

prosecution of this Litigation and have consented to judgment through a final

settlement, which was encouraged by the Court pursuant to its Local Rules, and as

reflected in the consent judgment set forth herein.

Plaintiffs and Paddock, together with Par, have agreed to enter into a good

faith final settlement agreement regarding this Litigation on the expectation and

belief that this would result in a number of public interest benefits. Pursuant to a

settlement agreement and ancillary patent license agreement (the "Agreements")

entered into for the final resolution of this Litigation, Par will be able to market the

Paddock Product, as defined herein, by no later than 2016, allowing entry of a

generic version of the Unimed Product in advance of the 2020 expiration of the

'894 Patent, which competition otherwise might not have occurred or been allowed

to continue had Plaintiff prevailed on any one of the numerous claims brought

against Paddock in the Litigation.

The proposed settlement also would eliminate the substantial litigation costs

that would otherwise be incurred by both Plaintiffs and Paddock during the

Litigation, while also serving the public interest by saving judicial resources and

avoiding the risks to each of the parties associated with infringement. This will

afford Plaintiffs and Paddock the opportunity to more productively use money and

2

other resources that would have been spent in the continued prosecution and

defense of this Litigation, to the benefit of the Parties and consumers alike, such as

by investing more money in marketing, research and development and education of

physicians and patients regarding use and benefits of the Unimed Product, that will

facilitate competition and the benefits therefrom approximately five years earlier

than could be achieved if the Paddock Product were permanently enjoined during

the life of the '894 patent.

In order to effectuate this settlement, Par consents to the jurisdiction of this

Court.

Plaintiffs and Paddock now consent to this Judgment and Order of

Permanent Injunction (the "Judgment") and

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.   This Court has jurisdiction over the parties and subject matter

of this action.

2.   The '894 Patent is owned by Plaintiffs (or its affiliates) and is

valid and enforceable, as asserted in their Complaint against Paddock, in all

respects.

3.   Paddock and Par acknowledge that the claims of the '894

Patent are valid and enforceable in all respects.

4.    Paddock and Par acknowledge that the sale of the product described in its Abbreviated New Drug Application No. 76-744 (the "Paddock Product") would infringe the claims of the '894 Patent, as asserted in the Complaint against Paddock.

5.    Paddock assigned its rights in the Paddock Product to Par and Par has assumed certain obligations to defend Paddock in the Litigation.

6.    As a result, Paddock and Par are barred from practicing the '894 Patent until

the earliest of (a) August 31, 2015, provided there is no commercialization sufficient to trigger Hatch-Waxman 180 day exclusivity; (b) the date any Generic Testosterone Gel Product (as defined in the relevant Agreements) is offered for sale in the Territory (as defined in the relevant Agreements); or (c) in any other event, February 28, 2016, by manufacturing, marketing or selling the Paddock Product, pursuant to the terms of the parties' Agreements that permit the practice of the '894 Patent.

7.    The submission of Paddock's Abbreviated New Drug Application No. 76-744 under Section 505(j) of the Federal Food, Drug and

Cosmetic Act is an act of infringement of the '894 Patent under 35 U.S.C.

271(e)(2)(A).

8.    Paddock and Par would infringe the '894 Patent by selling,

offering to sell, importing and/or using the Paddock Product.

9.    All affirmative defenses, claims and counterclaims, which have

been or could have been raised by Paddock in this action with respect to the

validity or enforceability of the '894 Patent, are dismissed with prejudice.

10.    Except as agreed to by the parties pursuant to the Agreements

in settlement of this Litigation or otherwise, Paddock and Par are also hereby

enjoined and estopped during the term of the '894 Patent, from making any

challenge to the validity or enforceability of the '894 Patent with respect to

the claims asserted against Paddock, or from marketing and selling the

Paddock Product.

11.    The foregoing injunction against Paddock and Par shall take

effect immediately upon entry of this Judgment, and shall continue

generally with respect to the '894 Patent coterminous with the license grant

provided by the Agreements,  unless earlier terminated or modified by

further order of this Court.

12.    The parties waive all right to appeal from this Judgment.

13.   This Court shall retain jurisdiction of this action and over the

parties for purposes of enforcement of the provisions of this Judgment.

14.   Each party is to bear its own costs and attorney's fees.

Dated: September 14, 2006

By:   /s/ Bradley W. Grout

Bradley W. Grout
Georgia Bar No. 313950
Hunton & Williams
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(t) 404-888-4000
(f) 404-888-4190


James R. Ferguson
MAYER, BROWN, ROWE & MAW
LLP
71 South Wacker Drive
Chicago, Illinois 60606
(t) 312-782-0600
(f) 312-701-7711


Attorneys for Plaintiffs
Unimed Pharmaceuticals, Inc. and
Laboratories Besins Iscovesco

By:   /s/ Daniel A. Ladow

Daniel A. Ladow
(admitted *pro hac vice*)
Greenberg Traurig LLP
Met Life Building
34th Floor
200 Park Avenue
New York, NY 10166
(t) 212-801-2181


Mark G. Trigg
Georgia Bar No. 716295
Greenberg Traurig LLP
The Forum
3290 Northside Parkway, N.W.
Atlanta, GA 30327
(t) 678-553-2400

Attorneys for Defendant
Paddock Laboratories, Inc.



SO ORDERED, this 15th day of September, 2006


/s/Thomas W. Thrash
Thomas W. Thrash Jr.
United States District Judge

6

# Exhibit C

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 202-626-3648

**COMPETITION SENSITIVE**
**PROPRIETARY BUSINESS INFORMATION**
**CONFIDENTIAL TREATMENT**
**REQUESTED UNDER FTC RULES AND FOIA**

December 18, 2007

<u>VIA HAND DELIVERY AND EMAIL</u>

Meredyth Smith Andrus
Federal Trade Commission
601 New Jersey Ave., N.W.
Washington, DC  20580

Re:   Par Pharmaceuticals, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"), Civil
       Investigative Demands ("CID")

Dear Meredyth:

        We request that the Federal Trade Commission provide Par and Paddock with reasonable
notice of the date, time and place of every investigational hearing to be conducted as part of the
FTC's investigation of the *Unimed Pharmaceutical, et al. v. Paddock Laboratories*, Dkt.
No. 1:03-cv-02503-TWT patent litigation settlement.   Furthermore, we request to attend the
investigational hearings on behalf of Par and Paddock.

        Par and Paddock also request a copy of each investigational hearing transcript.  Par and
Paddock will reimburse the FTC or the court reporter the reasonable costs for investigational
hearing transcripts.

* * * * * * *

        The information in this letter is confidential business information of Par and Paddock.
We thus respectfully request that this letter and all materials submitted by Par and Paddock be
held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of
the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-
2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality
provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§
552(b)(3), (4), (6), & (7).

Meredyth Smith Andrus

**WHITE & CASE**

December 18, 2007

Best regards,

Douglas M. Jasinski

Enclosures

cc:    June Im, Esq.
       Jonathan Lutinski, Esq.
       Steve Vieux, Esq.
       Noah A. Brumfield, Esq.

# Exhibit D



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Office of the Secretary

March 14, 2008

**VIA FACSIMILE AND EXPRESS MAIL**

Par Pharmaceutical Co., Inc.
Paddock Laboratories, Inc.
c/o J. Mark Gidley, Esquire
White & Case, LLP
701 13th Street, N.W.
Washington, DC 20005

      Re:    *Petition to Quash or Limit Subpoenas Dated February 13, 2008*
              File No. 0710060

Dear Mr. Gidley:

      The challenged subpoenas were issued in the Commission's investigation to determine whether there is reason to believe that patent settlements between a manufacturer of branded pharmaceuticals and Petitioners (Par Pharmaceutical Co., Inc. and Paddock Laboratories, Inc.) violate § 5 of the Federal Trade Commission Act. 15 U.S.C. § 45. This letter advises you of the Commission's disposition of the Petition to Quash or Limit Subpoenas Dated February 13, 2008 ("Petition to Quash") issued to Messrs. Paul Campanelli, Ed Maloney, and Scott Tarriff for oral testimony at investigational hearings to be conducted in accordance with the provisions of Commission Rules 2.8 and 2.9, 16 C.F.R. §§ 2.8, 2.9, on various dates, compliance with which is stayed pending disposition of this motion. 16 C.F.R. § 2.7(d)(4). Commissioner Pamela Jones Harbour, acting as the Commission's delegate, in her sole discretion, has referred this Petition to the full Commission for determination. *See Id.*

      The Petition to Quash does not challenge the Commission's right to take these investigational hearings or argue that the hearings themselves constitute some undue burden; rather, it argues that video recording of investigational hearings is prohibited by the Commission's Rules, and would deprive Petitioners of due process of law. The Petition to Quash is denied for the reasons stated herein. Unless modified in accordance with 16 C.F.R. § 2.7(c), Messrs. Campanelli, Maloney, and Tarriff must comply with the Subpoenas *Ad Testificandum* on the following dates: Campanelli, March 28, 2008; Maloney, April 4, 2008; and Tarriff, April 10, 2008.

J. Mark Gidley, Esquire – Page 2.                                          **March 14, 2008**

---

## I.    Background and Summary

The Federal Trade Commission issued subpoenas *ad testificandum* on February 13, 2008, to Messrs. Campanelli, Maloney, and Tarriff for oral testimony at investigational hearings. Petitioners' counsel accepted service of process on their behalf. In relevant part, each subpoena provides that: "The investigational hearing of [person directed to appear] will be recorded by sound-and-visual means in addition to stenographic means." Exhibits A, B, and C to Petition to Quash. Petitioners timely filed the Petition to Quash on February 20, 2008.[1]

## II.    Investigative Authority of the Federal Trade Commission.

The investigational powers of the Commission are derived from Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, 57b-1, and are exercised in accordance with the procedures set out in Part 2A of the Commission's Rules. 16 C.F.R. §§ 2.1-2.16. Congress vested the Federal Trade Commission with broad independent authority to enact rules and regulations to carry out its mission. The Commission has properly implemented those rules of practice for non-adjudicative Part 2 proceedings, including investigational hearings, through proper rule making procedures. *See id.* The Commission's Rules do not forbid videotaping investigational hearings. The Petition to Quash, however, claims that the *absence* of express reference to videotaping in the Rules bars the Commission from videotaping investigational hearings.

Congress intended the Commission to "have ample power of subpoena" which it "expressly made broad enough to permit a full exercise of that power in connection with any kind of investigation which may be undertaken." H.R. Rep. No. 63-533, pt. 1, at 7 (1914). The courts have confirmed the "[C]ongressional purpose to endow the Commission with broad powers of investigation. . . ." *Fed. Trade Comm'n v. Browning*, 435 F.2d 96, 99 (D.C. Cir. 1970). This is the context in which the Commission must interpret whether the Commission's Rules allow videotaping of investigational hearings.

---

[1] In ruling on the Petition to Quash, the Commission expressly does not reach the issue of whether Petitioners have standing to file the Petition to Quash subpoenas served on Messrs. Campanelli, Maloney, and Tarriff–who are either current or former employees of Petitioners–without joining them as parties to this Petition to Quash. While the Commission has reason to believe that counsel for Petitioners also represent Messrs. Campanelli, Malone, and Tarriff, no representation to that effect appears in the Petition to Quash. The Commission assumes that the individuals subpoenaed are aware of the instant Petition to Quash and have elected not to raise any objections particular to themselves regarding compliance with the subpoenas.

J. Mark Gidley, Esquire – Page 3.                                    March 14, 2008

## III.    The Rules Permit Videotaping of Investigational Hearings.

Investigational hearings are conducted pursuant to Commission Rules 2.8 and 2.9.  Rule 2.8 (b) reads in part that investigational hearings "shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation."  16 C.F.R. § 2.8(b).  Petitioners interpret this language as foreclosing all other means of recording investigational hearings.[2]  In doing so, Petitioners read the Rule narrowly and ask the Commission to find a negative implication in the Rule's reference to stenographic recording and transcription.[3]

The Commission finds that the requirement that such hearings be "stenographically reported" and transcribed establishes a *minimum* standard of recordation, and, further, that this minimum standard does not foreclose any, much less all, other means of recording.  Were we to accept Petitioners' narrow reading of the rule, it would forbid court reporters from using stenotype machines or other modern recording systems such as steno masks, audiotapes, and digital back-up systems to enhance the accuracy of transcription.  It would also seem to prohibit both Commission staff and counsel for the witness from taking longhand notes during the course of investigational hearings.[4]  The Commission sees no merit in denying either itself or the witness the protections afforded by an accurate record, and therefore does not draw any negative

---

[2]  Petitioners' reliance on an analogy to the 1993 amendments to the Federal Rules of Civil Procedure allowing videotaped depositions, Petition to Quash at 5, to argue that a negative implication is appropriate here is unpersuasive.  The important feature of the 1993 amendment was not that it referred to videotaping, but that it allowed the noticing party to decide to videotape without prior leave of court.  Fed. R. Civ. P. 30(b)(2) and (3) advisory committee notes (1993).  Further, the Federal Rules of Civil Procedure provide no authority regarding the Commission's own Part 2–Nonadjudicative Procedures.

[3]  Although not stated by Petitioners, they in effect ask the Commission to invoke the old Latin maxim of construction *expressio unius est exclusio alterius* in their favor. Reed Dickerson refers to this maxim as, "Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. . . .  Accordingly, the maxim is at best a description, after the fact, of what the court has discovered from context."  Reed Dickerson, The Interpretation and Application of Statutes 234-35 (1975).  Likewise, Richard Posner observed that the Supreme Court's usage of this maxim "confirms that judicial use of canons of construction is opportunistic." Richard A. Posner, The Federal Courts: Crisis and Reform 282 (1985).  The Commission's rules concern themselves with insuring the fairness and reliability of its investigations; accordingly, we decline the opportunity to use this maxim to construe Rule 2.8 in a manner that would preclude using technology to enhance the accuracy of the records of investigational hearings without enhancing fairness in any way.

[4]  The Petition to Quash, page 4, relies on a narrow definition of stenography: "'1: the art or process of writing in shorthand[] 2: shorthand esp. written from dictation or oral discourse[] 3: the making of shorthand notes and subsequent transcription of them – stenographic . . . *adj* – stenographically . . . *adv*'. . ." (citation omitted).

J. Mark Gidley, Esquire – Page 4.                                    **March 14, 2008**

or preclusive inference from the Rule's stenographic reporting requirement. Instead, we find that the FTC Act and our Rules permit video recording of investigational hearings.

Rule 2.8(b), 16 C.F.R. § 2.8(b) states that "[i]nvestigational hearings shall be conducted . . . for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation."[5] Witness testimony includes both verbal and nonverbal evidence, sometimes referred to as the witness's demeanor, or demeanor evidence. Petitioners' interpretation of Rule 2.8(b) would require the Commission to hold that the Rule was intended to yield records of investigational hearings devoid of witness demeanor evidence. Videotaping captures the witness's nonverbal testimony which, at a minimum, relates to a subject which is always relevant in an investigation: the credibility of each witness.[6]

Finally, the Petition to Quash relies on various cases at pages 5 and 6 for the general proposition that the Commission cannot violate its own rules, especially when doing so would be prejudicial to others. However, the Petitioners concede that the rules do not explicitly forbid the use of videotaping. Moreover, Petitioners have not identified how supplementing the stenographic record of these hearings with videotape could unfairly prejudice the witnesses. Accordingly, the cases cited by Petitioners are inapposite and the Commission finds that Petitioners have not provided sufficient law or facts to warrant granting this Petition to Quash.[7]

---

[5] "Data" is neither a narrow nor technical term. It includes "factual information . . . used as a basis for reasoning, discussion, or calculation" . . . as well as "information output by a sensing device or organ that includes both useful and irrelevant or redundant information and must be processed to be meaningful." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 293 (10th ed. 2002).

[6] In appropriate cases, 16 C.F.R. § 2.9(b)(6) provides additional authority for videotaping investigational hearings. The person conducting the hearing is vested with broad discretion to "take all necessary action to regulate the course of the hearing" in order to "avoid delay" and to "prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct. . . ." *Id.* "Conduct that a stenographic transcript could not adequately convey–such as aggressive examination, abusive treatment of opposing counsel or the witness, and witness coaching–may be preserved in full detail on video. Therefore, the video deposition is a powerful means of curbing discovery abuse." Michael J. Henke and Craig D. Margolis, *The Taking and Use of Video Depositions: An Update*, 17 REV. LITIG. 1, 20 (1998). Videotaping provides the person conducting the hearing with an important tool to protect the integrity of the investigation and the subjects being investigated. Videotaping a hearing, especially one not directly supervised by an independent adjudicative officer, can be a "necessary action to regulate the course of the hearing" within the meaning of Rule 2.9(b)(6).

[7] *See Fed. Trade Comm'n v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977) ("The burden of showing that the request is unreasonable is on the subpoenaed party. Further, that burden is not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to the purpose.").

J. Mark Gidley, Esquire – Page 5.                                        March 14, 2008

**IV.    Videotaping These Investigational Hearings Will Not Infringe Any of Petitioners'
Due Process Rights.**

Petitioners do not claim that the Commission's procedures for these investigational hearings, other than videotaping, deprive them or Messrs. Campanelli, Maloney, and Tarriff of any due process rights. Rather, Petitioners argue that "videotaping an investigational hearing would erode the constitutional distinction between an investigational hearing and an adjudicative hearing . . ." because it "would over-dignify the former and imperil the sanctity of the latter." Petition to Quash at 9. Petitioners further argue that "there is no genuine reason to seek to [videotape] other than to attempt to invade a subsequent adjudicative proceeding with the videotaped testimony from the investigational hearing." *Id.* at 10.

Petitioners also do not identify which attribute of videotaping makes that recording medium more capable of turning investigational hearings into adjudicative hearings than the attributes of any other recording medium–be it stenography, audio tape recording, or trial testimony regarding the investigational hearing. Thus, Petitioners have advanced no cognizable claim that videotaping, by itself, could ever abridge their due process rights, in these or any other hearings.

Finally, Petitioners assert that testimony taken during an investigational hearing can never be admissible in evidence at the time of trial. Petition to Quash at 9-10. Petitioners have not shown how differences between stenographic recording and video recording would ever determine whether that testimony should be received in evidence at trial. Petitioners also have not demonstrated, and we reject any implication, that it would *always* be impermissible as a matter of due process to offer testimony from our investigational hearings into evidence at the time of trial. Indeed, Petitioners themselves cite a case which is contrary to that proposition.[8]

---

[8] *Universal Church of Jesus Christ, Inc. v. Comm'r of Internal Revenue*, 55 T.C.M. (CCH) 144 (1988), cited by Petition to Quash at 12, is such a case. In that matter a witness was confronted with his prior contradictory testimony from an investigational hearing conducted by the FTC during a subsequent IRS adjudicative proceeding testing the validity of a claimed tax exemption. *See also FTC v. Whole Foods Market, Inc.*, 502 F. Supp. 2d 1, 4; *FTC v. Foster*, No. Civ. 07-352, 2007 WL 1793441, at *9, *38 (D.N.M. May 29, 2007); *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 117 n.4, 141, 152 (D.D.C. 2004). Indeed, the Supreme Court has even allowed illegally seized evidence which could not be used as evidence in the prosecutor's case-in-chief in a criminal trial to be used to impeach a defendant's testimony. *Walder v. United States*, 347 U.S. 62, 65 (1954) ("It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment."). Petitioners' reliance on *Hanna v. Larche*, 363 U.S. 420 (1960), is unavailing. Petition to Quash at 1, 7-9. Nothing in that case questions the reliability of the Commission's investigational hearings or limits the

**J. Mark Gidley, Esquire – Page 6.**                    **March 14, 2008**

---

The means used to memorialize investigational hearing testimony does not control whether or when that testimony can be used at trial. Whether particular testimony from an investigational hearing will be admissible at the time of trial depends on facts particular to the evidence being offered, the circumstances prevailing at the time of the offer, and the purpose for which it is offered.

Because the Commission cannot anticipate every fact that might arise at the time of trial bearing on the admissibility of any given testimony that might be taken during these investigational hearings, it would be premature and speculative for the Commission to rule on such issues at this time. There will be time enough for the trial judge to review any due process implications arising from such evidence. Accordingly, we find that this Petition to Quash does not raise any due process issues we can resolve at this time regarding subsequent uses of testimony from these investigational hearings, regardless of how they might be recorded.

## V.    CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS ORDERED THAT** the Petition to Quash be, and it hereby is, **DENIED**. Pursuant to Rule 2.7(e), Messrs. Campanelli, Maloney, and Tarriff must appear and testify on the following dates: Mr. Campanelli, March 28, 2008; Mr. Maloney, April 4, 2008; and Mr. Tarriff, April 10, 2008.

**By direction of the Commission.**

Donald S. Clark
Secretary

---

subsequent use of testimony from such hearings in adjudicative proceedings under appropriate circumstances.

# Exhibit E



# SUBPOENA AD TESTIFICANDUM

| 1. TO | 2. FROM |
|---|---|
| Mr. Paul Campanelli<br>Par Pharmaceutical Companies, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | January 16, 2008, 9:00 am |

**6. SUBJECT OF INVESTIGATION**

Unimed (AndroGel), File No. 0710060

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED<br>11/25/07 | COMMISSIONER'S SIGNATURE |
|---|---|

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

# UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

**COMMISSIONERS:**

> Deborah Platt Majoras, Chairman
> Pamela Jones Harbour
> Jon Leibowitz
> William E. Kovacic
> J. Thomas Rosch

## RESOLUTION AUTHORIZING USE OF COMPULSORY PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED: March 2, 2007

Standard Form 1157 (Rev. 4-80)
Department of the Treasury
I TFRM 4-2000
1157-107

Case 1:08-mc-00217-RCL    Document 4-2    Filed 05/07/2009    Page 27 of

Previous editions obsolete
NSN 7540-00-634-4347

# CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND MISCELLANEOUS EXPENSES

Page 1 of 2

## PART I - ATTENDANCE CERTIFICATION

**1. General Information**

a. Witness Name _____

b. Witness Address

   Street _____

   City _____ State _____ Zip _____

c. U.S. Citizen:  Yes ○  No ○   Alien:  Legal ○   Illegal ○

d. Case Name  Watson Unimed, et al.

e. Case Number  0710060

f. District or Location _____

g. SSN or Tax ID Number _____

**2. Travel and Attendance Information**

a. Dates of Travel From Residence to Case Location:  From _____ To _____

b. Dates of Travel From Case Location to Residence:  From _____ To _____

c. Dates of Attendance:  From _____ To _____

**3.**           **Certification**

I certify that the witness named above attended in the case or matter indicated and is entitled to the statutory allowances for attendance and travel. In the proceedings before United States Magistrate where more than four witnesses were called, the Magistrate also certifies that the approval and certificate of the U.S. Attorney were first obtained.

_____     _____     _____
*(Signature)*              *(Title)*              *(Date)*

## PART II - WITNESS CLAIM FOR FEES AND ALLOWANCES

| | Rate | No. of Days | Amount Claimed | Totals |
|---|---|---|---|---|
| **1. Attendance Fees** | | | | |
| a. Fact, Pretrial Conference & Detained Witness | _____ | _____ | $ _____ | |
| Total Attendance Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | $ _____ |

| | Rate | No. of Miles | Amount Claimed | |
|---|---|---|---|---|
| **2. Mileage Allowance** (Indicate type of privately owned vehicle) : | | | | |
| ☐ *Auto*  ☐ *Motorcycle*  ☐ *Airplane* | | | | |
| a. From Residence to Case Location (and Return) | _____ | _____ | $ _____ | |
| b. From Hotel/Motel to Court (or Court to Hotel/Motel) | _____ | _____ | | |
| Total Mileage Allowance . . . . . . . . . . . . . . . . . . . . . . . . . | | | | $ _____ |

**3. Subsistence Per Diem Rate:** _____ **or HRGA Rate:** _____

*HRGA: High Rate Geological Area*

| | Rate | No. of Days | Amount Claimed | |
|---|---|---|---|---|
| a. Meals | _____ | _____ | $ _____ | |
| b. Lodging | _____ | _____ | | |
| Total Subsistence Allowance . . . . . . . . . . . . . . . . . . . . . . | | | | $ _____ |

| | Amount Claimed |
|---|---|
| **4. Miscellaneous Allowances** (See Item 8 Below) | |
| a. Common Carrier | $ _____ |
| b. Parking Fees, Tolls, Taxi Fares | |
| Total Miscellaneous Allowances . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| **5. Total Amount Claimed** (Items 1-4, Part II) . . . . . . . . . . . . . . . . . . . | $ _____ |
| **6. Less Outstanding Check or Cash Advances** . . . . . . . . . . . . . . . . . . | $ _____ |
| **7. Net Amount Claimed by Witness** . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |

**8.** Use this space to itemize your expenses from Item 4, Part II above. Receipts are required for all common carriers, hotels, parking fees, and for all other single items in excess of $75.00.

Paid by Check No.

Paid by    $ _____

*(Signature of Payee)*

*(Date)*

**9.**            **Witness Certification**

I certify that the above data is correct and that payment has not been received, and that at the time of travel and attendance I (was) (was not) a U.S. Government employee and I (was) (was not) a citizen of the United States. (If not a citizen, present your Alien Registration Record with this form.) I (did) (did not) receive a Government Transportation Request to pay for my official travel.

_____        _____
*(Signature)*                  *(Date)*

Standard Form 1157 (Rev. 4-80)
Department of the Treasury
I TFRM 4-2000
1157-107

Case 1:08-mc-00217-RCL   Document 4-3   Filed 05/07/2008   Page 28 of 109

Previous editions obsolete
NSN 7540-00-634-4347

CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND
MISCELLANEOUS EXPENSES

Page 2 of 2

## PART III - RESERVED FOR FINANCE OFFICE

1. **Computation**

   a. New Amount Claimed by Witness (From Item 7, Part II)                                          $ _____

   b. Adjustments Due to Any Differences (Explain Differences)                                        _____

   _____

   _____

   c. Amount Authorized for Payment   _____   $ _____

   d. By _____   Title _____   Date _____

2. **Accounting Classification Data** _____

# Exhibit F



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Scott Tarriff<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | 2/21/08, 9am or other agreed upon time and place |

6. SUBJECT OF INVESTIGATION

Unimed (AndroGel), File No. 0710060

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 1 16 08 | |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within*
*subpoena was duly served:*    (check the method used)

○  *in person.*

○  *by registered mail.*

○  *by leaving copy at principal office or place of business, to wit:*

--------------------------------------------------------

--------------------------------------------------------

--------------------------------------------------------

--------------------------------------------------------

*on the person named herein on:*

-------------------------------------------------------------
(Month, day, and year)


-------------------------------------------------------------
(Name of person making service)


-------------------------------------------------------------
(Official title)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
William E. Kovacic
J. Thomas Rosch

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay
Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson
Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock
Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is
engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of
the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining
trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and
supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED:  March 2, 2007

Standard Form 1157 (Rev. 4-80)
Department of the Treasury
I TFRM 4-2000
1157-107

# CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND
## MISCELLANEOUS EXPENSES

Previous editions obsolete
NSN 7540-00-634-4347

*Page 1 of 2*

## PART I - ATTENDANCE CERTIFICATION

**1. General Information**

a. Witness Name _____

b. Witness Address _____

   Street _____

   City _____ State _____ Zip _____

c. U.S. Citizen:    Yes ○    No ○    Alien:    Legal ○    Illegal ○

d. Case Name   Watson Unimed, et al

e. Case Number   0710060

f. District or Location _____

g. SSN or Tax ID Number _____

**2. Travel and Attendance Information**

a. Dates of Travel From Residence to Case Location:    From _____ To _____

b. Dates of Travel From Case Location to Residence:    From _____ To _____

c. Dates of Attendance:    From _____ To _____

**3.**                     **Certification**

I certify that the witness named above attended in the case or matter indicated and is entitled to the statutory allowances for attendance and travel.  In the proceedings before United States Magistrate where more than four witnesses were called, the Magistrate also certifies that the approval and certificate of the U.S. Attorney were first obtained.

_____    _____    _____
    *(Signature)*                         *(Title)*                    *(Date)*

## PART II - WITNESS CLAIM FOR FEES AND ALLOWANCES

| | Rate | No. of Days | Amount Claimed | Totals |
|---|---|---|---|---|
| **1. Attendance Fees** | | | | |
| a. Fact, Pretrial Conference & Detained Witness | _____ | _____ | $ _____ | |
|    Total Attendance Fees............................... | | | | $ _____ |

| | Rate | No. of Miles | Amount Claimed | Totals |
|---|---|---|---|---|
| **2. Mileage Allowance (Indicate type of privately owned vehicle) :** | | | | |
| ☐ *Auto*    ☐ *Motorcycle*    ☐ *Airplane* | | | | |
| a. From Residence to Case Location (and Return) | _____ | _____ | $ _____ | |
| b. From Hotel/Motel to Court (or Court to Hotel/Motel) | _____ | _____ | _____ | |
|    Total Mileage Allowance ........................ | | | | $ _____ |

| | Rate | No. of Days | Amount Claimed | Totals |
|---|---|---|---|---|
| **3. Subsistence Per Diem Rate:** _____ or HRGA Rate: _____ | | | | |
|    *HRGA: High Rate Geological Area* | | | | |
| a. Meals | _____ | _____ | $ _____ | |
| b. Lodging | _____ | _____ | _____ | |
|    Total Subsistence Allowance ........................... | | | | $ _____ |

| | Amount Claimed | Totals |
|---|---|---|
| **4. Miscellaneous Allowances (See Item 8 Below)** | | |
| a. Common Carrier | $ _____ | |
| b. Parking Fees, Tolls, Taxi Fares | _____ | |
|    Total Miscellaneous Allowances ........................ | | $ _____ |
| **5. Total Amount Claimed (Items 1-4, Part II) ....................** | | $ _____ |
| **6. Less Outstanding Check or Cash Advances ....................** | | $ _____ |
| **7. Net Amount Claimed by Witness ........................** | | $ _____ |

**8.** Use this space to itemize your expenses from Item 4, Part II above.  Receipts are required for all common carriers, hotels, parking fees, and for all other single items in excess of $75.00.

Paid by Check No. _____

Paid by    $ _____

      *(Signature of Payee)*

      *(Date)*

**9.**                  **Witness Certification**

I certify that the above data is correct and that payment has not been received, and that at the time of travel and attendance I (was) (was not) a U.S. Government employee and I (was) (was not) a citizen of the United States.  (If not a citizen, present your Alien Registration Record with this form.)  I (did) (did not) receive a Government Transportation Request to pay for my official travel.

_____    _____
    *(Signature)*                               *(Date)*

Standard Form 1157 (Rev. 9-83)
Department of the Treasury
I TFRM 4-2000
1157-107
Case 1:08-mc-00217-RCL   Document 4-3   Filed 05/07/2008   Page 34 of 49
Previous editions obsolete
NSN 7540-00-634-4347

# CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND MISCELLANEOUS EXPENSES

## PART III - RESERVED FOR FINANCE OFFICE

1. **Computation**

   a. New Amount Claimed by Witness (From Item 7, Part II)          $ _____

   b. Adjustments Due to Any Differences (Explain Differences)      _____

   _____

   _____

   c. Amount Authorized for Payment  _____   $ _____

   d. By _____  Title _____  Date _____

2. **Accounting Classification Data** _____

# Exhibit G



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Ed Maloney<br>Paddock Laboratories, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | **5. DATE AND TIME OF HEARING OR DEPOSITION**<br>2/29/08, 9am or other agreed upon time and place |

**6. SUBJECT OF INVESTIGATION**

Unimed (AndroGel), File No. 0710060

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED<br>1/16/08 | COMMISSIONER'S SIGNATURE |
|---|---|

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-A (rev. 10/93)

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within
subpoena was duly served:*     (check the method used)

◯  *in person.*

◯  *by registered mail.*

◯  *by leaving copy at principal office or place of business, to wit:*

-------------------------------------------------------

-------------------------------------------------------

-------------------------------------------------------

-------------------------------------------------------

*on the person named herein on:*

-------------------------------------------------------
(Month, day, and year)

-------------------------------------------------------
(Name of person making service)

-------------------------------------------------------
(Official title)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
William E. Kovacic
J. Thomas Rosch

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay
Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson
Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock
Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is
engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of
the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining
trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and
supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED:  March 2, 2007

Standard Form 1157 (Rev. 7-91)
Department of the Treasury
I TFRM 4-2000
1157-107

Prior editions obsolete
NSN 7540-00-634-4347

# CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND MISCELLANEOUS EXPENSES

Page 1 of 2

## PART I - ATTENDANCE CERTIFICATION

**1. General Information**

a. Witness Name _____

b. Witness Address

    Street _____

    City _____ State _____ Zip _____

c. U.S. Citizen:  Yes ◯  No ◯  Alien:  Legal ◯  Illegal ◯

d. Case Name  Watson Unimed, et al

e. Case Number  0710060

f. District or Location _____

g. SSN or Tax ID Number _____

**2. Travel and Attendance Information**

a. Dates of Travel From Residence to Case Location:  From _____  To _____

b. Dates of Travel From Case Location to Residence:  From _____  To _____

c. Dates of Attendance:  From _____  To _____

**3.**         **Certification**

I certify that the witness named above attended in the case or matter indicated and is entitled to the statutory allowances for attendance and travel. In the proceedings before United States Magistrate where more than four witnesses were called, the Magistrate also certifies that the approval and certificate of the U.S. Attorney were first obtained.

_____    _____    _____
    (Signature)                   (Title)                  (Date)

## PART II - WITNESS CLAIM FOR FEES AND ALLOWANCES

| | Rate | No. of Days | Amount Claimed | Totals |
|---|---|---|---|---|
| **1. Attendance Fees** | | | | |
| a. Fact, Pretrial Conference & Detained Witness | ____ | ____ | $ ____ | |
| Total Attendance Fees.................. | | | | $ ____ |

| | Rate | No. of Miles | Amount Claimed | |
|---|---|---|---|---|
| **2. Mileage Allowance (Indicate type of privately owned vehicle):** | | | | |
| ☐ Auto  ☐ Motorcycle  ☐ Airplane | | | | |
| a. From Residence to Case Location (and Return) | ____ | ____ | $ ____ | |
| b. From Hotel/Motel to Court (or Court to Hotel/Motel) | ____ | ____ | ____ | |
| Total Mileage Allowance.................. | | | | $ ____ |

**3. Subsistence Per Diem Rate:** _____ or HRGA Rate: _____

    *HRGA: High Rate Geological Area*

| | Rate | No. of Days | Amount Claimed | |
|---|---|---|---|---|
| a. Meals | ____ | ____ | $ ____ | |
| b. Lodging | ____ | ____ | ____ | |
| Total Subsistence Allowance.................. | | | | $ ____ |

| | | | Amount Claimed | |
|---|---|---|---|---|
| **4. Miscellaneous Allowances (See Item 8 Below)** | | | | |
| a. Common Carrier | | | $ ____ | |
| b. Parking Fees, Tolls, Taxi Fares | | | ____ | |
| Total Miscellaneous Allowances................. | | | | $ ____ |
| **5. Total Amount Claimed (Items 1-4, Part II)**.................. | | | | $ ____ |
| **6. Less Outstanding Check or Cash Advances**.................. | | | | $ ____ |
| **7. Net Amount Claimed by Witness**.................. | | | | $ ____ |

**8.** Use this space to itemize your expenses from Item 4, Part II above. Receipts are required for all common carriers, hotels, parking fees, and for all other single items in excess of $75.00.

Paid by Check No. _____

Paid by  $ _____

_____
(Signature of Payee)

_____
(Date)

**9.**         **Witness Certification**

I certify that the above data is correct and that payment has not been received, and that at the time of travel and attendance I (was) (was not) a U.S. Government employee and I (was) (was not) a citizen of the United States. (If not a citizen, present your Alien Registration Record with this form.) I (did) (did not) receive a Government Transportation Request to pay for my official travel.

_____        _____
    (Signature)                           (Date)

Standard Form 1157 (Rev. 7-91)
Department of the Treasury
I TFRM 4-2000
1157-107

**CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND
MISCELLANEOUS EXPENSES**

Previous editions obsolete
NSN 7540-00-634-4347

*Page 2 of 2*

---

## PART III - RESERVED FOR FINANCE OFFICE

**1. Computation**

   a.  New Amount Claimed by Witness (From Item 7, Part II)      $ _____

   b.  Adjustments Due to Any Differences (Explain Differences)    _____

_____

_____

   c.  Amount Authorized for Payment _____    $ _____

   d.  By _____ Title _____ Date _____

**2. Accounting Classification Data** _____

# Exhibit H



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Bureau of Competition
601 New Jersey Ave, NW
Washington, DC 20001
~
Jonathan R. Lutinski, Esq.
~
Direct Line (202) 326-2679
Facsimile (202) 326-3384
E-mail: jlutinski@ftc.gov

January 28, 2008

BY ELECTRONIC MAIL

Noah A. Brumfield, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Re:  Par Pharmaceuticals, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
Civil Investigative Demands ("CID")

Dear Noah:

I write to provide notice that the following investigational hearings will be recorded by sound-and-visual means in addition to stenographic means:

      Scott Tarriff (February 21)
      Ed Maloney (February 29)
      Paul Campanelli (March 5)

Please contact Brad Albert, Meredyth Andrus, or me with any questions.

Best regards,

Jonathan R. Lutinski

# Exhibit I



UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Bureau of Competition
601 New Jersey Ave, NW
Washington, DC 20001
~
Jonathan R. Lutinski, Esq.
~
Direct Line (202) 326-2679
Facsimile (202) 326-3384
E-mail: jlutinski@ftc.gov

February 6, 2008

BY ELECTRONIC MAIL

Noah A. Brumfield, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Re: Par Pharmaceuticals, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
Civil Investigative Demands ("CID")

Dear Noah:

I write in response to your February 4, 2008 correspondence. We strongly disagree with your view that the Commission is so limited in its authority that it cannot even videotape its own investigational hearings. Indeed, it is long and well established that Congress granted the Commission broad authority in conducting investigations, issuing subpoenas, and taking testimony under the FTC Act.[1] The Commission in turn has granted staff broad discretion to "regulate the course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct...."[2] And, nothing in either the FTC Act or the FTC Rules of Practice prevents staff from videotaping investigational hearings to further this objective.

Please be aware that the outstanding subpoenas to Scott Tarriff, Ed Maloney, and Paul Campanelli remain in effect. If you continue to believe that the Commission lacks authority to videotape investigational hearings in addition to stenographic reporting, we suggest you promptly file a petition to quash or limit the subpoenas. If you choose instead to ignore these subpoenas and fail to appear and testify at the designated time and place, we will seek to enforce the subpoenas in federal district court and take all other appropriate action.

---

[1] See FTC v. Browning, 435 F.2d 96, 99-100 (D.C. Cir. 1970) (explaining that, "[t]he Supreme Court has [] recognized the breadth of power to obtain information that is vested in the Commission by the FTC Act.").

[2] 16 C.F.R. § 2.9(b)(6).

Noah A. Brumfield, Esq.
February 6, 2008
Page 2

Please contact Brad Albert, Meredyth Andrus, or me with any questions.

Best regards,

Jonathan R. Lutinski

# Exhibit J

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial  + 202-626-3698        nbrumfield@whitecase.com

COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>

February 12, 2008

<u>VIA E-MAIL</u>

Jonathan R. Lutinski, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Ave, NW
Washington, DC  20580

Re:   Par Pharmaceuticals, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") Civil
       Investigative Demands ("CIDs")

Dear Mr. Lutinski:

I write in response to your February 6, 2008 letter regarding videotaping the investigational hearings of Paul Campanelli, Scott Tarriff, and Ed Maloney.  As noted in our letter of February 4, 2008, 16 C.F.R. § 2.8(b) provides that investigational hearings "shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation."  Your February 6 letter ignores entirely 16 C.F.R. § 2.8(b) and cites no authority for the Commission to videotape investigational hearings.[†]

---

[†] *FTC v. Browning*, 435 F.2d 96 (D.C. Cir. 1970), cited in your February 6 letter, has nothing whatsoever to do with the Commission's ability to videotape investigational hearings.  *Browning* addresses the territorial reach of a subpoena for documents.  Your out-of-context quotation regarding the Commission's "breadth of power" is from a footnote squarely within the court's discussion of the territorial reach of the subpoena *duces tecum* at issue, *Browning*, 435 F.2d at 99 n.7, which has nothing at all to do with investigational hearings, much less videotaping them.  Similarly, your citation of 16 C.F.R. § 2.9(b)(6) does not address the means of recording an investigational hearing, which is provided for expressly in 16 C.F.R. § 2.8, the provision you ignore.

Jonathan R. Lutinski, Esq.

WHITE & CASE

February 12, 2008

Furthermore, the investigational hearing subpoenas—that were issued and signed by an FTC Commissioner—for Mr. Campanelli (on November 29, 2007) and for Messrs. Tarriff and Maloney (on January 16, 2008) do not provide notice of the Commission's intent to videotape these investigational hearings. Indeed, your January 28, 2008 letter, which raised this issue for the first time, acknowledges that the subpoenas lack such notice: "I write to provide notice that the following investigational hearings will be recorded by sound-and-visual means . . . ." Your letter did not include an amended subpoena calling for videotape recording. Notably, Mr. Campanelli's investigational hearing commenced prior to your January 28 letter and has thus far been recorded stenographically. If the Commission staff wishes to modify a subpoena, 16 C.F.R. § 2.7(c) provides for negotiation, not a unilateral modification via correspondence.

Because the subpoenas for these witnesses do not notice videotaped investigational hearings, we do not share the view expressed in your February 6 letter that it is incumbent upon us to file a petition to quash or limit the subpoenas. If and when a Commissioner issues subpoenas to these witnesses for videotaped investigational hearings, we will consider our options at that time. Until such time, neither Messrs. Campanelli, Tarriff, or Maloney shall participate in any investigational hearing in which the Commission attempts to record the hearing by other than the stenographic means expressly provided for under 16 C.F.R. § 2.8(b). To be clear, Messrs. Campanelli, Tarriff, and Maloney intend to comply with the subpoenas addressed to them (which say nothing about videotape recording).

The information in this letter is confidential business information of Par and Paddock. We thus respectfully request that this letter and all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Please do not hesitate to contact Doug Jasinski or me with any questions.

Best regards,

Noah A. Brumfield

cc:    Bradley Albert, Esq.
       Meredyth Smith Andrus, Esq.
       June Im, Esq.
       Steve Vieux, Esq.
       Doug M. Jasinski, Esq.

# Exhibit K

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial  + 202-626-3698      nbrumfield@whitecase.com

**COMPETITION SENSITIVE**
**PROPRIETARY BUSINESS INFORMATION**
**CONFIDENTIAL TREATMENT**
**REQUESTED UNDER FTC RULES AND FOIA**

February 13, 2008

<u>VIA E-MAIL</u>

Jonathan R. Lutinski, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Ave, NW
Washington, DC  20580

Re:   Par Pharmaceuticals, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") Civil
       Investigative Demands ("CIDs")

Dear Mr. Lutinski:

I write in response to your February 13, 2008 letter concerning the Commission's intent to videotape the investigational hearings of Paul Campanelli, Scott Tarriff, and Ed Maloney.  We note that, as stated in your letter, the Commission has, this day, "issued additional subpoenas to these individuals [Messrs. Campanelli, Tarriff, and Maloney] identifying that the hearings will be recorded by sound-and-visual means in addition to stenographic means."

As we have stated in our prior correspondence on this issue, 16 C.F.R. § 2.8(b) provides that investigational hearings "shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation."

We reiterate that Messrs. Campanelli, Tarriff, or Maloney stand ready to participate in Investigational Hearings, on the scheduled dates, in the customary manner of stenographic transcription.  However, as of this writing, the Commission has yet to identify any authority to record these Investigational Hearings by other than stenographic means (e.g., by video).

The information in this letter is confidential business information of Par and Paddock.  We thus respectfully request that this letter and all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the

Jonathan R. Lutinski, Esq.

**WHITE & CASE**

February 13, 2008

Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Please do not hesitate to contact Doug Jasinski or me with any questions.

Best regards,

Noah A. Brumfield

cc:   Bradley Albert, Esq.
      Meredyth Smith Andrus, Esq.
      June Im, Esq.
      Steve Vieux, Esq.
      Doug M. Jasinski, Esq.

2

# Exhibit L



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Paul Campanelli<br>Par Pharmaceutical Companies, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq.<br><br>**5. DATE AND TIME OF HEARING OR DEPOSITION**<br>3/05/08, 9am (or other agreed upon date) until complete |

**6. SUBJECT OF INVESTIGATION**

Unimed (AndroGel), File No. 0710060

The investigational hearing of Paul Campanelli will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 02/13/08 | |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within*
*subpoena was duly served:*     (check the method used)

○ *in person.*

○ *by registered mail.*

○ *by leaving copy at principal office or place of business, to wit:*

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------

*on the person named herein on:*

--------------------------------------------------
(Month, day, and year)

--------------------------------------------------
(Name of person making service)

--------------------------------------------------
(Official title)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

        Deborah Platt Majoras, Chairman
        Pamela Jones Harbour
        Jon Leibowitz
        William E. Kovacic
        J. Thomas Rosch

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

      To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining trade in the manufacture or sale of AndroGel or its generic equivalent.

      The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

      Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and supplements thereto.

      By direction of the Commission.

                                Donald S. Clark
                                Secretary

ISSUED:  March 2, 2007

# Exhibit M



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Scott Tarriff<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | **UNITED STATES OF AMERICA**<br>**FEDERAL TRADE COMMISSION** |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | 2/21/08, 9am (or other agreed upon date) until complete |

6. SUBJECT OF INVESTIGATION

Unimed (AndroGel), File No. 0710060

The investigational hearing of Scott Tarriff will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 02/13/08 | *J. Th R* |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form **68-A** (rev. 10/93)

## RETURN OF SERVICE

*I hereby certify that a duplicate original of the within subpoena was duly served:*     (check the method used)

○ *in person.*

○ *by registered mail.*

○ *by leaving copy at principal office or place of business, to wit:*

................................................................

................................................................

................................................................

................................................................

*on the person named herein on:*

................................................................
(Month, day, and year)

................................................................
(Name of person making service)

................................................................
(Official title)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
William E. Kovacic
J. Thomas Rosch

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

ISSUED:  March 2, 2007

# Exhibit N



# *SUBPOENA AD TESTIFICANDUM*

| 1. TO | 2. FROM |
|---|---|
| Mr. Ed Maloney<br>Paddock Laboratories, Inc.<br>c/o Noah A. Brumfield, Esq.<br>White & Case LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005 | **UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION** |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described below (Item 6).

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001 | Meredyth Smith Andrus, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | 2/29/08, 9am (or other agreed upon date) until complete |

6. SUBJECT OF INVESTIGATION

Unimed (AndroGel), File No. 0710060

The investigational hearing of Ed Maloney will be recorded by sound-and-visual means in addition to stenographic means.

| 7. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 8. COMMISSION COUNSEL |
|---|---|
| Bradley S. Albert, Esq., Custodian<br>Meredyth Smith Andrus, Esq., Deputy Custodian | Meredyth Smith Andrus, Esq. |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 04/17/08 | |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 8.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-A (rev. 10/93)

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within subpoena was duly served:* (check the method used)

⭕ *in person.*

⭕ *by registered mail.*

⭕ *by leaving copy at principal office or place of business, to wit:*

................................................................

................................................................

................................................................

................................................................

*on the person named herein on:*

................................................................
(Month, day, and year)

................................................................
(Name of person making service)

................................................................
(Official title)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:

Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
William E. Kovacic
J. Thomas Rosch

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATIONS

File No. 0710060

Nature and Scope of Investigation:

To determine whether Unimed Pharmaceuticals, Inc. ("Unimed"), Solvay
Pharmaceuticals Inc. ("Solvay"), Laboratories Besins Iscovesco ("Besins"), Watson
Pharmaceuticals, Inc. ("Watson"), Par Pharmaceutical Companies, Inc. ("Par") and Paddock
Laboratories, Inc. ("Paddock") and their subsidiaries, or any other person, has engaged or is
engaging in unfair methods of competition in or affecting commerce, in violation of Section 5 of
the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, by unreasonably restraining
trade in the manufacture or sale of AndroGel or its generic equivalent.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1 *et seq.*, and
supplements thereto.

By direction of the Commission.

*Donald S. Clark*

Donald S. Clark
Secretary

ISSUED: March 2, 2007

# Exhibit O

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646     egrannon@whitecase.com

February 19, 2008

VIA E-MAIL

Jackson McGrady, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
REQUESTED UNDER FTC RULES AND FOIA**

Re:     Par Pharmaceutical Companies, Inc., Civil Investigative Demand

Dear Jack:

This letter memorializes our telephone conversation this afternoon in which you agreed that our filing of a petition to quash or limit the investigational hearing subpoenas issued on February 13, 2008 will, without limitation as to other applicable witnesses, stay the necessity of Scott Tarriff appearing for his investigational hearing scheduled for Thursday, February 21, 2008.  For the avoidance of doubt, you agreed that because such a petition could not be resolved before Thursday, February 21, 2008 that Mr. Tarriff is no longer required to appear for his investigational hearing on Thursday, February 21, 2008.

In a subsequent telephone conversation this afternoon, you indicated that your office, the General Counsel's office, would not entertain our offer to have Mr. Tarriff appear for a videotaped investigational hearing on Thursday, February 21, 2008 subject to an agreement that such videotaped testimony would not be used outside the current Part II investigation.  You indicated that your office viewed such a potential compromise as a Commission staff decision.

Jackson McGrady, Esq.

WHITE & CASE

February 19, 2008

The information in this letter is the confidential business information of Par. We thus respectfully request that all materials submitted by Par be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very Truly Yours,

Eric Grannon

Enclosures

cc:    Meredyth Smith Andrus, Esq.
       June Im, Esq.
       Jonathan Lutinski, Esq.
       Bradley S. Albert, Esq.
       Noah A. Brumfield, Esq.
       Douglas M. Jasinski, Esq.

# Exhibit P

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646    egrannon@whitecase.com

February 29, 2008

<u>VIA E-MAIL</u>

Bradley S. Albert, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>**

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
Civil Investigative Demand</u>

Dear Brad:

This letter memorializes our telephone conversation this afternoon in which you agreed on behalf of the Commission that Paul Campanelli is not required to appear for the continuation of his investigational hearing set for March 5, 2008.  Instead, if a Commissioner has resolved by March 21, 2008 at 5:00 p.m. (EST) the pending Petition to Quash or Limit Subpoenas Dated February 13, 2008, Mr. Campanelli will be required to appear for the continuation of his investigational hearing on March 28, 2008 (in Washington, D.C.).  I agree that this date change is effective without the issuance of a new subpoena.  Furthermore, you agreed that nothing herein waives any right of Par to seek further review of a Commissioner resolution of the above-referenced Petition.  Separately, I agree to confer with you as soon as possible regarding dates for Scott Tarriff and Ed Maloney.

The information in this letter is the confidential business information of Par and Paddock.  We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and §

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

Bradley S. Albert, Esq.

WHITE & CASE

February 29, 2008

57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very Truly Yours,

Eric Grannon

cc:   Meredyth Smith Andrus, Esq.
      June Im, Esq.
      Steve Vieux, Esq.
      Mark Woodward, Esq.
      Jonathan R. Lutinski, Esq.
      Noah A. Brumfield, Esq.
      Douglas M. Jasinski, Esq.

# Exhibit Q

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646     egrannon@whitecase.com

March 4, 2008

<u>VIA E-MAIL</u>

Bradley S. Albert, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>**

Re:  <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
Civil Investigative Demands</u>

Dear Brad:

This letter memorializes our communications on Friday, February 29, 2008 and Monday, March 3, 2008 in which you agreed on behalf of the Commission that the investigational hearing of Ed Maloney has been rescheduled for Friday, April 4, 2008 (in Washington, D.C.), provided that a Commissioner has resolved by Friday, March 28, 2008 at 5:00 p.m. (EST) the pending Petition to Quash or Limit Subpoenas Dated February 13, 2008.  If a Commissioner has not resolved the Petition by March 28, 2008 at 5:00 p.m. (EST), Mr. Maloney will not be required to appear for his investigational hearing on April 4, 2008 and a later date will be arranged.  You further agreed on behalf of the Commission that the investigational hearing of Scott Tarriff has been rescheduled for Wednesday, April 9, 2008 (in Washington, D.C.), provided that a Commissioner has resolved by Wednesday, April 2, 2008 at 5:00 p.m. (EST) the above-referenced Petition.  If a Commissioner has not resolved by April 2, 2008 at 5:00 p.m. (EST) the above-referenced Petition, Mr. Tarriff will not be required to appear for his investigational hearing on April 9, 2008 and a later date will be arranged.  Furthermore, you agreed that nothing herein waives any right of Par or Paddock to seek further review of a Commissioner resolution of the above-referenced Petition.

The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the

Bradley S. Albert, Esq.

WHITE & CASE

March 4, 2008

Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Meredyth Smith Andrus, Esq.
       June Im, Esq.
       Steve Vieux, Esq.
       Mark Woodward, Esq.
       Jonathan R. Lutinski, Esq.
       Noah A. Brumfield, Esq.
       Douglas M. Jasinski, Esq.

# Exhibit R

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646    egrannon@whitecase.com

March 5, 2008

<u>VIA E-MAIL</u>

Bradley S. Albert, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC 20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>**

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
Civil Investigative Demands</u>

Dear Brad:

This letter memorializes our communications on Friday, February 29, 2008 and Tuesday, March 4, 2008 in which you agreed on behalf of the Commission that the investigational hearing of Scott Tarriff has been rescheduled for Thursday, April 10, 2008 (in Washington, D.C.), provided that a Commissioner has resolved by Thursday, April 3, 2008 at 5:00 p.m. (EST) the pending Petition to Quash or Limit Subpoenas Dated February 13, 2008. If a Commissioner has not resolved the Petition by April 3, 2008 at 5:00 p.m. (EST), Mr. Tarriff will not be required to appear for his investigational hearing on April 10, 2008 and a later date will be arranged. Furthermore, you agreed that nothing herein waives any right of Par or Paddock to seek further review of a Commissioner resolution of the above-referenced Petition.

The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the

ALMATY  ANKARA  BANGKOK  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUDAPEST  DRESDEN  DÜSSELDORF  FRANKFURT  HAMBURG  HELSINKI
HO CHI MINH CITY  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MILAN  MOSCOW  MUMBAI  NEW YORK  PALO ALTO
PARIS  PRAGUE  RIYADH  ROME  SAN FRANCISCO  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON, DC

Bradley S. Albert, Esq.

WHITE & CASE

March 5, 2008

Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Meredyth Smith Andrus, Esq.
       June Im, Esq.
       Steve Vieux, Esq.
       Mark Woodward, Esq.
       Jonathan R. Lutinski, Esq.
       Noah A. Brumfield, Esq.
       Douglas M. Jasinski, Esq.

# Exhibit S

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel  + 1 202 626 3600
Fax + 1 202 639 9355
www.whitecase.com

Direct Dial + 1 202 626 3646     cgrannon@whitecase.com

March 20, 2008

<u>VIA E-MAIL</u>

Markus H. Meier, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC  20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>**

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"),
       Civil Investigative Demands</u>

Dear Markus:

        This letter memorializes our telephone conversation this afternoon concerning our dispute with the Commission over the Commission's authority to videotape the three investigational hearings the Commission has noticed for such recording.   At the outset, I reiterated our willingness to have the three witnesses appear for stenographically recorded investigational hearings as expressly provided for in 16 C.F.R. § 2.8(b).  As a compromise, I also offered to have the three witnesses appear for videotaped investigational hearings pursuant to a written agreement with the Commission not to use the videotapes outside of this Part-II investigation. You declined that offer of compromise, responding that the Commission is only willing to entertain videotaping the investigational hearings without restriction as to use of the videotapes outside of this Part-II investigation.

        Separately, I stated that we are considering resolving this dispute in court.  I stated that in exchange for agreements from the Commission concerning such litigation, we would consider agreeing to move the applicable investigational hearing dates (March 28, April 4, and April 10) up to as early as tomorrow, March 21, 2008, to accelerate our good-faith non-compliance with the applicable subpoenas and thereby enable the Commission to bring an enforcement action as soon as possible to tee up resolution by a district court.  I also mentioned that we would similarly consider in exchange limiting our challenge of the Commission's authority to the videotape issue, rather than also challenging in such litigation, for example, the Commission's authority to administer oaths in investigational hearings.

Markus H. Meier, Esq.

WHITE & CASE

March 20, 2008

     I offered these potential agreements in exchange for the Commission agreeing to bring its enforcement action in a particular district, such as the Northern District of Georgia where the patent case and settlement originated. I also sought assurances from the Commission regarding the caption of an enforcement proceeding and references to my clients therein. As I stated on our call, the Commission's investigational hearings are akin to grand jury proceedings. *E.g., Hannah v. Larche*, 363 U.S. 420, 449 n.30 (1960); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). Accordingly, any enforcement proceeding brought by the Commission concerning an investigational hearing must similarly safeguard the identity of the subjects.

     You indicated that beyond declining my opening offer of compromise (i.e., videotapes to be used in this Part-II investigation only) you wanted to consult with your General Counsel's office before negotiating any of the other offers I made concerning an enforcement proceeding. To that end, please contact me at your earliest convenience tomorrow, Friday, March 21, 2008, or have the appropriate person from your General Counsel's office do so.

     The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Bradley S. Albert, Esq.
       Meredyth Smith Andrus, Esq.
       June Im, Esq.
       Steve Vieux, Esq.
       Mark Woodward, Esq.
       Jonathan R. Lutinski, Esq.
       Noah A. Brumfield, Esq.
       Douglas M. Jasinski, Esq.

# Exhibit T

**WHITE & CASE**

White & Case LLP                Tel  + 1 202 626 3600
701 Thirteenth Street, NW       Fax  + 1 202 639 9355
Washington, DC 20005            www.whitecase.com

Direct Dial + 1 202 626 3646    egrannon@whitecase.com

March 21, 2008

<u>VIA E-MAIL</u>

Markus H. Meier, Esq.
Federal Trade Commission
Health Care Division
601 New Jersey Avenue, NW
Washington, DC 20580

**COMPETITION SENSITIVE
PROPRIETARY BUSINESS INFORMATION
CONFIDENTIAL TREATMENT
<u>REQUESTED UNDER FTC RULES AND FOIA</u>**

Re:    <u>Par Pharmaceutical Companies, Inc. ("Par") and Paddock Laboratories, Inc. ("Paddock"), Civil Investigative Demands</u>

Dear Mr. Meier:

This letter follows our telephone conversation yesterday and my subsequent letter to you dated yesterday. As you know, after cooperating with the Commission's investigation for over a year without serious dispute, we have a good-faith objection concerning the Commission's authority to videotape the three investigational hearings that the Commission has noticed for such recording. Because you have declined our offer of compromise to proceed with videotaped investigational hearings for the three witnesses pursuant to a written agreement with the Commission not to use the videotapes outside of this Part-II investigation, we are left with no choice but to have the issue resolved by a district court.

To that end, this letter constitutes our unequivocal, good-faith intention not to comply with the three subpoenas at issue because those subpoenas notice videotaped investigational hearings rather than the stenographically reported investigational hearings expressly provided for in 16 C.F.R. § 2.8(b). For avoidance of doubt, Messrs. Campanelli, Maloney, and Tarriff — who would have appeared for stenographically reported investigational hearings and even for videotaped hearings pursuant to a written agreement with the Commission not to use those videotapes outside of this Part-II investigation — will not appear for investigational hearings to be videotaped without restriction as to use of the videotapes outside of this Part-II investigation. We are communicating this intention to the Commission today rather than waiting to establish our good-faith non-compliance on each of the applicable subpoena return dates — March 28, April 4, and April 10, 2008 — to enable the Commission to bring an enforcement action as soon as possible, without undue delay, to set the matter for resolution by a district court. To further facilitate and expedite such resolution, I will accept service of process on behalf of my clients.

Markus H. Meier, Esq.

**WHITE & CASE**

March 21, 2008

The Commission's non-public, Part-II investigational hearings are akin to grand jury proceedings. *E.g.*, *Hannah v. Larche*, 363 U.S. 420, 449 n.30 (1960); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). Accordingly, any enforcement proceeding brought by the Commission concerning an investigational hearing must similarly safeguard the identity of the relevant companies and witnesses in the caption and body of the Commission's enforcement papers (e.g., "*In re Subpoenas Ad Testificandum Dated February 13, 2008*").

The information in this letter is the confidential business information of Par and Paddock. We thus respectfully request that all materials submitted by Par and Paddock be held subject to the confidentiality protections afforded by Sections 6(f), 21(b), 21(c), and 21(f) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f) and 57b-2, including § 57b-2(b), § 57b-2(c), and § 57b-2(f), and by FTC Rule 4.10 (16 C.F.R. §4.10) and by the confidentiality provisions of the Freedom of Information Act, including without limitation 5 U.S.C. §§ 552(b)(3), (4), (6), & (7).

Very truly yours,

Eric Grannon

cc:    Bradley S. Albert, Esq.
        Meredyth Smith Andrus, Esq.
        June Im, Esq.
        Steve Vieux, Esq.
        Mark Woodward, Esq.
        Jonathan R. Lutinski, Esq.
        Noah A. Brumfield, Esq.
        Douglas M. Jasinski, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

*Petitioner,*

v.

SCOTT TARRIFF, *et al.,*

*Respondents.*

Misc. No.

08-MC-00217 (RCL)

## **CERTIFICATE OF SERVICE**

I hereby certify that on the May 7, 2008, I served a copy of the Response to Order to Show Cause and Memorandum in Opposition to Petition to Enforce Subpoenas *Ad Testificandum* that Provide for Videotaped Investigational Hearings, the Declaration of Noah A. Brumfield, Esq. (including accompanying exhibits), and the accompanying Proposed Order on each of the four counsel for the Petitioner by sending copies by hand delivery and via Federal Express to:

William Blumenthal, Esq.
General Counsel
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580

*Counsel for the Federal Trade Commission*

John F. Daly, Esq.
Deputy General Counsel for Litigation
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580

*Counsel for the Federal Trade Commission*

Lawrence DeMille-Wagman, Esq.
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580

*Counsel for the Federal Trade Commission*

Jackson L. McGrady, Esq.
Attorney
Federal Trade Commission
600 Pennsylvania, Ave., N.W.
Washington, DC 20580

*Counsel for the Federal Trade Commission*

Meytal McCoy

Dated: May 7, 2008