IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FEDERAL TRADE COMMISSION,           )
                                    )
            Petitioner,             )
                                    )
        v.                          )   Misc. No. 08-MC-217 (RCL)
                                    )
SCOTT TARRIFF, *et al.*,            )
                                    )
            Respondents.            )
_____)

**REPLY IN FURTHER SUPPORT OF PETITION OF THE
FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING
SUBPOENAS *AD TESTIFICANDUM***

Respondents' Memorandum in Opposition ("Opp.") is based upon a single untenable premise: that the word "shall" as used in the Commission's Rules of Practice is not only mandatory, but also limiting. That is, respondents contend that Commission Rule 2.8(b), which requires that the Commission's investigational hearings "shall be stenographically reported," both requires a stenographic transcription of the hearing, and also precludes the use of any additional means of recording, such as videotape. There is no legal support for this proposition in common usage or in case law. Also, it would lead to absurd results, and is not supported by the rule's history. Nor are respondents helped by a series of meritless arguments they raise that have nothing to do with the proper interpretation of Rule 2.8(b). Accordingly, this Court should reject respondents' attempt to derail the Commission's investigation, and should issue an order requiring respondents to comply with the subpoenas that were served on them.

The single issue before this Court may be narrowly framed because there are several crucial points that are not in dispute:

-1-

First, respondents have not disputed that, as explained in the Commission's Memorandum in Support of the Petition for an Order Enforcing Subpoenas *Ad Testificandum* ("Memo"), the Commission's authority to conduct investigations is broad, and the Commission has sufficient *statutory* authority to videotape an investigation.  Memo at 10; *see* Opp. at 7.  Indeed, it is well-settled that the Commission's investigative authority is akin to that of a grand jury, and that the Commission has substantial latitude to choose the means by which it conducts its investigations.  *See United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (the Commission's investigations are analogous to a grand jury, and the Commission has "the power to get information from those who best can give it and who are most interested in not doing so"); *see FTC v. Manager, Retail Credit Co., Miami Branch Office*, 515 F.2d 988, 993 (D.C. Cir. 1975) (the Commission's authority to conduct investigations is "plenary"); *see also* Fed. R. Crim. P. 6(e) (grand jury proceedings "must be recorded by court reporter or by a suitable recording device).

Second, respondents do not dispute that they each were served with subpoenas stating that the Commission intended to record their testimony stenographically, thereby complying with the mandate of Rule 2.8(b).  *See* Opp. at 12.  (The subpoenas also provided that, in addition to stenographic transcription, the hearings would be videotaped.)

Third, respondents do not contend that they have, in any way, complied with the subpoenas.  *See* Opp. at 15.

Fourth, respondents have never claimed that the subpoenas impose any undue burden on them.[1]

---

[1] Respondents advise this Court that it "need not reach the secondary issues of whether the subpoenas seek relevant information or are unduly burdensome."  Opp. at 16.  In fact, this Court

Thus, the only issue that remains is not, as respondents mistakenly contend, whether the Commission has the authority to videotape investigational hearings. *See* Opp. at 7. Most certainly, Section 9 of the FTC Act, 15 U.S.C. § 49, gives the Commission that authority. Instead, the only issue before this Court is whether, despite its broad statutory authority, the Commission has, through the promulgation of Rule 2.8(b), limited itself to recording its investigational hearings through stenographic means only. In fact, Rule 2.8(b) imposes no such limitation, but actually contemplates videotaping.

    1. There is simply no basis in common parlance or in law for respondents' contention that the word "shall" routinely expresses not only a mandatory direction, but also a limiting principle. *See* Opp. at 19-22. Indeed, to interpret the word, and to resolve this case, this Court need look no farther common meaning of "shall." *See Williams v. Taylor*, 529 U.S. 420, 431 (2000) (words of a statute must be given their ordinary, contemporary, common meaning); *Exportal, Ltda. v. United States*, 902 F.2d 45, 50 (D.C. Cir. 1990) (applying the plain meaning doctrine to the interpretation of regulations). As commonly used, "shall" means "must," and the dictionary expresses this mandatory meaning. *See Webster's New Collegiate Dictionary* 1056 (1979) ("shall" is "used in laws, regulations, or directives to express what is mandatory"). This is in accord with the normal usage of the word.[2] We are unaware of any dictionary that applies

---

need not reach those issues, not because they are somehow "secondary," but because they were not raised by respondents in their administrative petition to quash, and, therefore, have been waived. *See FTC v. Invention Submission Corp.*, 1991-1 Trade Cas. (CCH) ¶ 69,338 at 65,351 n.12 (D.D.C. 1991) (Lamberth, J.), *aff'd*, 965 F.2d 1086 (D.C. Cir. 1992); *FTC v. O'Connell*, 828 F. Supp. 165, 168 (E.D.N.Y. 1993); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247 (E.D. Wis. 1996).

[2] In particular, a direction to a teenage son that he "shall" clean his room does not thereby forbid him from taking out the trash, walking the dog, or going to school.

the limiting meaning suggested by respondents.

Case law confirms the mandatory (but not limiting) meaning. The Supreme Court has declined to interpret "shall" as a term of limitation. In *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823 (1990), the Court interpreted the enforcement provision of Title VII of the Civil Rights Act of 1964, which states that "each United States district court * * * shall have jurisdiction of actions brought under this subchapter." The Court specifically held that this language did not limit jurisdiction to federal courts, and, thus, did not oust state courts of jurisdiction to enforce the Act. *Id.* at 823. That is, despite the fact that district courts "shall" have jurisdiction to enforce the Act, state courts were not precluded from also exercising jurisdiction.

Similarly, in *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998), the court interpreted the citizen suit provision of the Resource Conservation and Recovery Act. That provision states that private suits "shall be brought" in the district court where the violation or alleged endangerment occurs. The court held that this provision does not divest state courts of jurisdiction because "the term 'shall' as it is used in the statute does not affirmatively divest the state courts of their presumptive jurisdiction."

In *Zyla v. Turner*, 590 A.2d 618 (N.H. 1991), the Supreme Court of New Hampshire addressed the meaning of the word "shall." The statute at issue stated that the trial court "shall cover" five factors when deciding whether to revoke a driver's motor vehicle license. The court held that "the language 'shall cover' does not limit the court to considering *only* those five factors and permits it to consider [other] relevant factors * * *." *Id.* at 620 (emphasis in original).

The cases cited by respondents are irrelevant because they only address whether "shall"

is mandatory or permissive, not whether it is limiting.  (The Commission does not dispute that, pursuant to Rule 2.8(b), it "shall," *i.e.*, must, provide for stenographic transcription.)  In *Nat'l Ass'n of Homebuilders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2007), *see* Opp. at 19, the Court interpreted a provision of the Clean Water Act ("CWA") that provided that EPA "shall approve" a transfer of permitting authority to a state unless that state lacked authority to perform nine functions specified in that section.  *Id.* at 2531.  The Ninth Circuit had held that the transfer of authority should also be conditioned on a tenth criterion, one not specified in the CWA.  *Id.* at 2532.  The Supreme Court reversed, holding that, if the nine criteria were met, the transfer of authority was mandatory.  The point of the Court's opinion was simply that, as used in this provision of the CWA, "shall" is mandatory -- once a state meets the conditions, authority must be transferred.  *Defenders of Wildlife* is irrelevant to respondents' argument because nothing in that opinion suggests that the provision of the CWA that was at issue somehow limits any other actions that the EPA might take with respect to the states.  Similarly, nothing in Rule 2.8(b) prohibits the Commission from also making a videotape of its hearings.

*Christensen v. Harris County*, 529 U.S. 576 (2000), rests on similar reasoning.  *See* Opp. at 19.  A provision of the Fair Labor Standards Act provided that, if an employee requested permission to use compensatory time, then, assuming certain conditions were met, that employee "shall be permitted by the employee's employer to use such time * * *."  29 U.S.C. § 207(o)(5).  The employees argued that § 207(o)(5) was exclusive, and that Harris County, their employer, could not mandate when they used compensatory time.  The Supreme Court disagreed, holding that the statute did not restrict the means by which compensatory time could be used.  Merely because employers were required to allow employees to take compensatory time when they requested it did not preclude the employer from taking some related action (*i.e.*, directing the

-5-

employee to take compensatory time at the employer's convenience) that was not inconsistent with the mandated action. *Id.* at 583-86. In this case, videotaping is not inconsistent with the mandated action (stenographic transcription).

Finally, this Court's decision in *District of Columbia Fin. Resp. and Mgmt. Auth. v. Concerned Senior Citizens of the Roosevelt Tenant Assoc., Inc.*, 129 F. Supp. 2d 13 (D.D.C. 2000) (Lamberth, J.), does not advance respondents' cause. *See* Opp. 21. In that case, this Court interpreted the statutory authority of the D.C. Control Board. The statute provided that "[t]he following laws of the District of Columbia * * * shall apply to the members and activities of the [Control Board]," and the statute then specified three laws. *Id.* at 16. This Court rejected the argument that a fourth statute also applied, citing the cannon of interpretation, "*expressio unius est exclusio alterius*, that is, the expression of one is the exclusion of the other."[3] *Id.*

But *expressio unius* cannot help respondents here. As the Supreme Court explained, "[t]he cannon [of *expressio unius*] depends upon identifying a series of two or more terms or things that should be understood to go hand in hand * * *." *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 81 (2002); *see Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356, 370 (2d Cir. 2006) (only when a list contains two or more items is it possible to "rais[e] the inference that a similar unlisted term was deliberately excluded"). Because Rule 2.8(b) does not include any sort of list, it is not possible to infer that the Commission intended to preclude videotape transcription.[4]

---

[3] When it interpreted the Control Board's authority, this Court relied not just on *expressio unius* but also on Congress's intent and on precedent. 129 F. Supp. 2d at 16.

[4] The D.C. Circuit's decision in *Beverly Health & Rehabilitation Services, Inc. v. NLRB*, 317 F.3d 316 (D.C. Cir. 2003), is completely irrelevant because it does not even involve an interpretation of the word "shall." *See* Opp. at 19-20. Moreover, the key to the court's decision

Thus, neither common usage nor case law supports respondents' refusal to comply with the Commission's subpoenas.

2. Neither the context of Rule 2.8(b) nor its history justifies any deviation from the mandatory, but non-limiting, meaning of the word "shall." Respondents ignore that the word "shall" appears numerous times in Part 2 of the Commission's Rules of Practice. If "shall" were given the limiting meaning urged by respondents, it would produce utterly absurd results throughout the Commission's Rules. For example, Rule 2.1, 16 C.F.R. § 2.1, authorizes the Commission's Director of the Bureau of Competition to open certain investigations in response to requests made pursuant to the International Antitrust Enforcement Assistance Act, 15 U.S.C. § 6201 *et seq.* Before responding to such a request, the rule states that the Bureau Director "shall" transmit his proposed response to the Commission's Secretary. If respondents' interpretation of the word "shall" were correct, the Bureau Director would be precluded from transmitting his proposed response to anyone else, such as his staff attorneys or his personal secretary.

As another example, Rule 2.6, 16 C.F.R. § 2.6, states that any person under investigation "shall be advised of the purpose and scope of the investigation and of the nature of the conduct constituting the alleged violation which is under investigation and the provisions of law applicable to such violation." If respondents' interpretation of "shall" prevailed, the target of the investigation could not be told the name of the Commission's investigator, or the investigator's phone number or e-mail address because the rule does not mention this information. Similarly,

---

in that case was that a statute should not be interpreted in a manner that render any of its provisions surplusage. 317 F.3d at 321. There is no portion of Rule 2.8(b) that will become surplusage if that rule is interpreted to permit the Commission to videotape investigational hearings.

if respondents' limiting meaning were applied to Rule 3.11, 16 C.F.R. § 3.11, which states the items that "shall" be included in an administrative complaint issued by the Commission, such a complaint could not include a caption, a date, or a signature.

Instead of focusing on the word "shall," as used in the Commission's rules, respondents direct this Court to two instances in which the rules use the word "stenographic." *See* Opp. at 22. But neither provides any support for their argument. As respondents note, the second sentence of Rule 2.8(c) enumerates those persons who are entitled to be present during certain investigational hearings (investigators, the person being examined, his counsel, the officer before whom the testimony is taken, and the stenographer). But respondents' quotation from Rule 2.8(c) omits a key phrase, which makes clear that the relevant portion of the rule applies only to investigational hearings conducted pursuant to a civil investigative demand. Civil investigative demands are another form of administrative compulsory process available to the Commission, and they are authorized pursuant to Section 20 of the FTC Act, 15 U.S.C. 57b-1. However, as respondents recognize, *see* Opp. at 3, the Commission has sought to compel their testimony with subpoenas, not with civil investigative demands. Subpoenas are authorized pursuant to Section 9 of the FTC Act, 15 U.S.C. § 49, not section 20. Because the second sentence of Rule 2.8(c) applies only to investigations conducted pursuant to civil investigative demands, it has no relevance here.[5]

Respondents' second example is no more relevant. In particular, respondents note that, pursuant to Rule 2.9(a), any person compelled to testify "shall" be entitled to a copy of his

---

[5] In any event, even if the second sentence of Rule 2.8(c) applied to investigational hearings conducted pursuant to subpoenas, this would not produce any anomalous result because a stenographer, who may be present during the hearing, could also serve as the videographer.

transcript as stenographically recorded. Respondents find it somehow significant that this section does not entitle the person to a copy of the video of his testimony. *See* Opp. at 22. But this rule is in no way inconsistent with the proper interpretation of Rule 2.8(b). Rule 2.8(b) requires that hearings be stenographically transcribed, and Rule 2.9(a) provides that, unless good cause is shown, the witness shall be given a copy of the stenographic transcript.[6] Just as Rule 2.8(b) allows, but does not require, the Commission to make a video transcript of the hearing, Rule 2.9(a) does not require the Commission to provide the witness with a copy of any video that is made. Again, Rule 2.9(a) is in no way inconsistent with a proper interpretation of Rule 2.8(b).[7]

Nor are respondents helped by their comparison of Rule 2.8(b) to Fed. R. Civ. P. 30(c). *See* Opp. 22-25. First, the comparison is false -- apples to oranges. As explained above, the Supreme Court has analogized the Commission's investigational hearings to grand jury proceedings, *see United States v. Morton Salt*, *supra*, not to post-complaint discovery under the Federal Rules. Fed. R. Civ. P. 30(c) governs post-complaint discovery, not pre-complaint investigative proceedings. Little wonder that Fed. R. Civ. P. 30(c) differs from Commission Rule 2.8(b). To the extent that Rule 2.8(b) may be validly compared to any of the federal rules, it would be to Fed. R. Crim. P. 6, which provides for grand juries. As of 1967, when the

---

[6] Respondents complain that Mr. Campanelli has not received a transcript of the portion of his investigational hearing that has already been completed. *See* Opp. at 10. As respondents recognize, that hearing has not been completed. *See id.* Nothing in Rule 2.9(a) entitles him to a transcript before his hearing has been completed.

[7] Respondents suggest that, if the Commission were authorized to videotape its investigational hearings, nothing would stop it from using lie detectors or voice stress analyzers. *See* Opp. at 21. This suggestion is both farfetched and irrelevant. Neither a lie detector nor a voice stress analyzer is a means of recording an investigational hearing, and the Commission has not sought to use either during respondents' investigational hearings.

Commission first promulgated Rule 2.8(b), Fed. R. Crim. P. 6(e) allowed for transcription by other than stenographic means.

Even if it were valid to compare Rule 2.8(b) to Fed. R. Civ. P. 30(c), respondents' analysis of the language of both provisions is simply incorrect. Respondents contend that the 1967 version of the Commission's rule and the 1967 version of Fed. R. Civ. P. 30(c) use "nearly identical language." Opp. at 22. In fact, the language is not identical at all.[8] Rule 2.8(b) stated then (and states now) as follows: "Such hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation." The 1967 version of Fed. R. Civ. P. 30(c) was quite different: "The testimony shall be taken stenographically and transcribed unless the parties agree otherwise." The final clause of the federal rule, which does not appear in the Commission's rule, makes it clear that, absent agreement, discovery depositions may be recorded only stenographically. The analysis of this federal rule provision is similar to the D.C. Circuit's analysis of the statute at issue in *Beverly Health v. NLRB*, *supra*, where the court was careful to avoid an interpretation that would render a clause surplusage. Similarly, the "unless" clause in the 1967 version of Fed. R. Civ. P. 30(c), would become surplusage if the party taking the deposition could, without agreement, designate another means of recording the deposition. Significantly, Commission Rule 2.8(b) has never had a clause similar to the "unless" clause of the 1967 version of Fed. R. Civ. P. 30(c). Thus, even if it were valid to compare Commission Rule 2.8(b) to Fed. R. Civ. P. 30(c), that comparison would not advance respondents' argument.

---

[8] Respondents provide no support whatsoever for their statement that "[i]t seems apparent that the language in 16 C.F.R. § 2.8(b) derives from the Federal Rules as they existed in 1967 * * *." *See* Opp. at 24.

As explained above, nothing in Rule 2.8(b) precludes the Commission from videotaping its investigational hearings. To the contrary, Rule 2.8(b) provides for videotaping because it authorizes the Commission to receive "other data relating to any subject under investigation." Relevant data encompasses the sort of demeanor evidence that a videotape would record. *See United States v. Zeigler*, 994 F.2d 845, 849 (D.C. Cir. 1993) ("a witness's demeanor is a part of the evidence") (quotation marks omitted). Indeed, the primary purpose of transcribing a hearing is to provide a record for the commissioners, who are not present at the hearing, but who are ultimately responsible for deciding whether to commence a law enforcement action. Videotaping provides a more complete record of a hearing, and, thus, better assists the commissioners.[9]

Thus, the Commission is not acting in contravention of its regulations, and the cases discussed by respondents in Part II of their Opposition are irrelevant. *See* Opp. at 26-27. In particular, in *Service v. Dulles*, 354 U.S. 363 (1957), the Court rejected the State Department's contention that its regulations did not apply to a personnel action, and that it could rely on a statute that allowed it more flexibility. Here, the Commission has never disputed that Rule 2.8(b) applies to respondents' hearings. Similarly, in *Exportal v. United States*, *supra*, the Department of Agriculture argued that the word "shall" in one of its regulations should be given a permissive, not a mandatory, meaning. The court rejected this argument, even though the agency's authorizing statute did not require a mandatory regulation. This case has no relevance because the Commission has not attempted to evade the mandate of Rule 2.8(b): as required by

---

[9] Even if Rule 2.8(b) did not give the Commission the authority to videotape, the Commission could rely on its statutory authority to do so. *See SEC v. Chenery Corp.,* 332 U.S. 194, 201 (1947) (holding that SEC properly exercised authority pursuant to statute despite "the absence of a general rule or regulation * * *").

-11-

that rule, the Commission will transcribe respondents' hearings stenographically.[10]

Moreover, even if there were any ambiguity in Rule 2.8(b), which there is not, that ambiguity should be resolved in favor of the Commission's interpretation, which is set forth in its decision denying respondents' Petition to Quash.[11] This interpretation should apply because an agency's interpretation of its own procedural rules, an interpretation that is neither "plainly erroneous" nor "plainly * * * inconsistent" with the text of the rule, is "controlling." *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2349 (2007).[12]

3. Finally, respondents raise a series of arguments that are irrelevant because they have nothing to do with the interpretation of Rule 2.8(b), and are also meritless. First, respondents attempt, in vain, to create a due process issue. *See* Opp. at 8-10. To the extent that they suggest that they have some sort of constitutional right to prevent the videotaping of an investigational hearing, they are mistaken since there can be no violation of due process rights unless there is a deprivation of liberty or property. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Bd. Of*

---

[10] *Center for Auto Safety v. Dole*, 828 F.2d 799 (D.C. Cir. 1987), is particularly irrelevant. The portion of that case cited by respondents merely holds that an agency's rules may create a legal standard, thereby allowing for review pursuant to the Administrative Procedure Act. *Id.* at 805; *see* Opp. at 27. Again, the Commission has never argued that it may ignore its rules.

[11] Respondents complain that the letter denying their petition to quash was "unsigned by any Commissioner." *See* Opp. at 14. In fact, the letter was signed by Donald S. Clark, the Commission's secretary. Respondents ignore that, pursuant to Commission Rule 0.12, 16 C.F.R. § 0.12, official actions of the Commission are signed by the Commission's secretary, not by any commissioner. Respondents also complain that they did not have an opportunity to make an oral presentation before the Commission in support of their petition to quash. However, the Commission's rules do not provide for such an oral presentation.

[12] Respondents claim that Commission staff "admitted" that videotaping would be "unprecedented." *See* Opp. at 12, citing ¶ 11 of Mr. Brumfield's Declaration, which was filed in conjunction with respondents' Opposition. Respondents are incorrect. Indeed, Mr. Brumfield merely stated that he, not Commission staff, was unaware of any previous videotaping.

*Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). In the investigational hearing context, no such interest is at stake.

To the extent that their concern is that, at some point in the future, the Commission may use the videotape in a manner that respondents believe is inappropriate, this concern is not ripe. Indeed, this argument depends upon a series of hypothetical assumptions -- respondents assume that the Commission's investigation will result in a law enforcement action, and they assume that, during the course of that action, the Commission will attempt to make some improper use of a videotape from an investigational hearing.[13] *See* Opp. at 9. Plainly, such a hypothetical constitutional concern should be ignored by this Court. *See American Library Ass'n v. Reno*, 33 F.3d 78, 93 (D.C. Cir. 1994) (constitutional issues should not be resolved on the basis of hypotheticals).

Second, respondents contend that, by filing this enforcement action and revealing the existence of the investigation of Solvay Pharmaceuticals, Inc., Par Pharmaceutical Companies, Inc., and Paddock Laboratories, Inc., the Commission somehow acted contrary to its policy to protect the confidentiality of its investigations. *See* Opp. at 3-4. This argument is wrong as a matter of fact because this investigation was first made public by Par, not by the Commission. In particular, well before the Commission filed its petition in this case, Par had revealed the existence of the investigation in a public filing that it made with the SEC. *See* http://sec.edgar-online.com/2007/11/21/0001144204-07-063664/Section14.asp at 42. Moreover, respondents ignore that Commission Rule 2.7(g), 16 C.F.R. § 2.7(g), provides that all administrative petitions

---

[13] Respondents speculate about the sort of lawsuit that the Commission might initiate at the close of its investigation. *See* Opp. at 5-7. That speculation has no bearing on the Commission's petition before this Court, however, because, as explained above, Commission investigations need not necessarily result in any law enforcement action.

to limit or quash subpoenas, and the responses thereto, "are part of the *public* record of the Commission * * *." (Emphasis added.) Thus, the Commission made the investigation public (long after it was first made public by Par), not as a result of the filing of the petition in this Court, but pursuant to its rules and as a result of respondents' administrative petition to quash.

Third, Respondents contend that other entities (such as Par and Paddock) have cooperated with the Commission's investigation. *See* Opp. at 4, 13. But this is irrelevant -- compliance by others does not excuse respondents' noncompliance. Respondents also suggest that they would have cooperated with the investigation if the Commission had imposed certain limits and restrictions more to their liking. *See* Opp. at 10-15. Of course, it is for the Commission, not for an investigation's targets, to control the course of an investigation.

**CONCLUSION**

For the reasons set forth above, and in the Commission's initial memorandum in this matter, this Court should enter an Order requiring respondents Tarriff, Maloney, and Campanelli to comply, in full, with the Subpoenas *Ad Testificandum* that were served on them by providing testimony within thirty (30) days of the Court's order.[14]

Dated: May 14, 2008

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel (D.C. Bar No. 339283)

JOHN F. DALY
Deputy General Counsel for Litigation
(D.C. Bar No. 250217)


/s/ Lawrence DeMille-Wagman
LAWRENCE DeMILLE-WAGMAN
Attorney (D.C. Bar No. 929950)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-2448
Email: lwagman@ftc.gov

---

[14] In the Conclusion of the Commission's initial memorandum in this matter, which was filed on April 16, 2008, the Commission mistakenly identified Par and Paddock as the respondents. *See* Memo at 16.