UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| Petitioner, | ) ) ) | |
| v. | ) | Misc. Action No. 08-217 (RCL) |
| **SCOTT TARRIFF,** *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

### MEMORANDUM OPINION

Presently before the Court is the Federal Trade Commission's Petition for an Order Enforcing Subpoenas *ad Testificandum*. Specifically, the Federal Trade Commission ("FTC" or "Commission") petitions this Court for an Order requiring Mr. Scott Tarriff, the former Chief Executive Officer of Par Pharmaceutical Companies, Inc. ("Par"), Mr. Edward Maloney, a senior executive of Paddock Laboratories, Inc. ("Paddock"), and Mr. Paul Campanelli, President of Par's Generic division (collectively "respondents") to comply with the subpoenas *ad testificandum* issued by the FTC to each of these individuals. Upon consideration of the petition, the opposition and reply thereto, arguments made during an oral hearing, the parties' supplemental filings, the applicable law, and the record herein, the Court finds that the petition should be GRANTED.

### I. BACKGROUND

This matter stems from an ongoing Commission law enforcement investigation. The investigation seeks to determine whether agreements between Unimed Pharmaceuticals, Inc.,

Laboratories Besins Iscovesco, and Solvay Pharmaceuticals, Inc. (collectively, "Solvay") and Par or Paddock, or any other agreement, unlawfully delayed entry of a lower-cost generic version of the drug AndroGel in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. The Commission staff issued subpoenas to the respondents requiring them to appear for investigational hearings. Specifically, the subpoenas were issued to obtain the respondents' testimony relating to the negotiation and terms of the settlement agreements.

On November 29, 2007, a subpoena *ad testificandum* for an investigational hearing was issued for Mr. Campanelli. (Resp't Opp'n 10.) Subsequently, on January 16, 2008, subpoenas *ad testificandum* for investigational hearings were issued for Messrs. Tarriff and Maloney. (*Id.*) At this point, none of the subpoenas provided for recording the investigational hearings by means other than by stenographic recording. (*Id.*)

On January 16, 2008, Mr. Campanelli appeared for his investigational hearing as scheduled by his subpoena. The January 16 hearing was recorded only by stenographic means. (*Id.*) After a full-day hearing, Mr. Campanelli agreed to the Commission staff's request to continue the hearing a second day, March 5, 2008. (*Id.*) After a series of communications between respondents' counsel and the Commission staff regarding the latter's intention to record by sound-and-visual means the future investigational hearings of Messrs. Campanelli, Tarriff, and Maloney, the Commission issued amended subpoenas to the respondents on February 13, 2008. (Resp't Opp'n 12.) The new subpoenas *ad testificandum* provided that the investigational hearings would be recorded by sound-and-visual means in addition to stenographic means. (Mem. Supp. Pet. 5.)

On February 20, 2008, Par and Paddock filed with the Secretary of the Commission a

Petition to Quash or Limit the Subpoenas. (*Id.*) The Petition to Quash sought to quash or limit the subpoenas to the extent they required videotaping of the investigational hearings.

On March 14, 2008, the Commission issued a letter opinion rejecting the Petition to Quash finding that the Commission's rules "do not explicitly forbid the use of videotaping." (Resp't Opp'n 14.) On March 21, 2008, Par and Paddock notified the Commission of their intention not to comply with the subpoenas, and that the individual respondents refused to appear for the videotaped investigational hearings. (*Id.* at 15.) The Commission brought this subpoena enforcement action on April 16, 2008, seeking an order requiring respondents to show cause why they should not fully comply with the subpoenas. This Court entered its Order to Show Cause on April 17, 2008. Respondents filed their Response to Order to Show Cause on May 7, 2008, which was followed by the Commission's reply brief on May 14, 2008. This Court held a show cause hearing on May 23, 2008, at which time both parties presented oral argument.

## II.  DISCUSSION

The sole issue before the Court is whether the Commission has authority to videotape investigational hearings pursuant to Rule 2.8(b), 16 C.F.R. § 2.8(b). That section provides:

> Investigational hearings shall be conducted by any Commission member, examiner, attorney, investigator, or other person duly designated under the FTC Act, for the purpose of hearing the testimony of witnesses and receiving documents and other data relating to any subject under investigation. *Such hearings shall be stenographically reported* and a transcript thereof shall be made part of the record of the investigation.

16 C.F.R. § 2.8(b) (emphasis added). Respondents argue that the Commission's authority to record investigational hearings is limited to that provided in Rule 2.8(b)—that investigational hearings "shall be stenographically reported." Otherwise stated, respondents interpret the word

3

"shall" as used in Rule 2.8(b) as not only mandatory, but also limiting. According to respondents, the rule mandates stenographic reporting but precludes the use of any additional means of recording, such as videotape. The Commission contends that Rule 2.8(b)'s requirement that investigational hearings be "stenographically recorded" and transcribed establishes a minimum standard of recordation. The Commission interprets the word "shall" as used in the rule as a mandate for stenographic transcription rather than as a term of limitation. That is, so long as the Commission stenographically records its investigational hearings, Rule 2.8(b) places no restriction on additional means of recordation. This Court agrees.

Respondents have failed to convince this Court that the word "shall" expresses not only a mandatory direction, but also a limiting principle. This Court sees no basis to stretch the term "shall" beyond its ordinary meaning and usage. *See Williams v. Taylor*, 529 U.S. 420, 431 (2000) (words of a statute must be given their "ordinary, contemporary, common meaning"). Rather, "shall" most commonly means "must." *See* BLACK'S LAW DICTIONARY 1407 (8th ed. 2004) (defining "shall" as "has a duty to; more broadly, is required to"); *see also* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1081 (Merriam-Webster 1990) ("shall" is "used in laws, regulations, or directives to express what is mandatory"); *accord* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/shall (last visited May 30, 3008). As the Commission successfully argues, this definition is in accord with the normal usage of the word "shall."[1]

Respondents primarily rely on *Beverly Health & Rehabilitation Services, Inc. v. NLRB*,

---

[1] The Commission provides the following illustrative example: "A direction to a teenage son that he 'shall' clean his room does not thereby forbid him from taking out the trash, walking the dog, or going to school." (Pet'r Reply 3.)

317 F.3d 316 (D.C. Cir. 2003) to support their argument that the plain meaning of the words in Rule 2.8(b) requires the Commission to record investigational hearings only by stenographic means.  In *Beverly Health*, the D.C. Circuit addressed a statute's requirement for unions to notify their employer institutions at least ten days before the union would begin to strike.  The statute further provided that "[t]he notice, once given, may be extended by the written agreement of both parties." *Beverly Health*, 317 F.3d at 320.  The National Labor Relations Board argued that the statute permitted a union to unilaterally extend a strike deadline since the statute did not expressly state that agreement of the parties is the *only* means to obtain an extension.  The Court rejected that argument finding that there was no ambiguity where Congress carved out a single express exception for extending the strike deadline—when both parties consent in writing.  *Id.* at 321.  The rule in *Beverly Health* is not relevant in the instant matter for two reasons.  First, the focus in that case was whether Congress intended that the statute would permit a *substitute* method of extending the strike deadline other than the single exception provided.  To that question, the court read the plain language of the statute to require mutual agreement as the only means of obtaining an extension.  In this matter, neither party disputes that the Commission is required to record its investigational hearings by stenographic transcription.  The Commission does not, and could not lawfully attempt to *substitute* stenographic recording with videotaping.  Rather, it seeks to use videotape as an *additional* means of recording the hearings.  Second, the *Beverly Health* court had no occasion to interpret the meaning of the term "shall."  If anything, the reasoning in that case primarily relates to the meaning of the term "may" as it is used in the statute: "[t]he notice, once given, *may* be extended by the written agreement of both parties."

Respondents also cite authority to support their contention that since the words in Rule

2.8(b) only specify stenographic recording, those words set both the "ceiling" and the "floor" of the Commission's authority to record investigational hearings. (*See* Resp't Opp'n 19 (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2532–33 (2007) (holding that a statute's use of "shall" rendered the criteria set forth in the statute mandatory and exclusive)).) In *Defenders of Wildlife*, the Supreme Court held that where Congress provided that the EPA "shall approve" a transfer application unless the state lacks authority to perform the nine functions specified in the section, the EPA has no discretion to deny an application because some other criteria is not met. In other words, once the state satisfies the nine conditions set forth in the statute, the application must be granted. The statutory language at issue in *Defenders of Wildlife* is altogether different from the language in Rule 2.8(b). In that case, the statute set forth conditions precedent for EPA's nondiscretionary approval of a transfer application. Here, the Commission established a minimum requirement for what it must do to record investigational hearings, irrespective of any condition precedent. *Defenders of Wildlife* is therefore irrelevant to the Court's interpretation of the instant provision.

      Similarly, respondents rely upon the interpretive canon, *expressio unius est exclusio alterius*, "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (citation omitted). Respondents cite this Court's decision in *District of Columbia Financial Responsibility and Management Authority v. Concerned Senior Citizens of the Roosevelt Tenant Ass'n*, 129 F. Supp. 2d 13 (D.D.C. 2000) (Lamberth, J.), to support their arguments. In that case, Congress established a list of laws of the District of Columbia that "shall apply" to the Control Board. This Court relied upon the expression-exclusion rule and held that Congress's "affirmative

statement that certain laws 'shall apply' to the Control Board necessarily implies that laws not referenced shall *not* apply." 129 F. Supp. 2d at 16. Respondents' reliance on the expression-exclusion rule in the instant matter, however is misguided. As the Supreme Court explained, "[t]he canon [*expressio unius*] depends on identifying a series of two or more terms or things that should be understood to go hand in hand." *Chevron*, 536 U.S. at 81; *see Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356, 370 (2d Cir. 2006) (recognizing that *expressio unius* "applies only when the statue identifies a series of two or more terms . . . [that] rais[e] the inference that a similar unlisted term was deliberately excluded"). As Rule 2.8(b) includes no such series of terms, this Court sees no basis to find, based on the construction of the rule, that additional means of recordation are excluded.

Moreover, respondents' interpretation of Rule 2.8(b), if adopted, would lead to absurd results. The Commission argues, for example, that under the respondents' interpretation, Rule 2.8(b) could even prohibit both Commission staff and counsel for the witness from taking longhand notes during the course of investigational hearings, or from using laptop computers. Indeed, respondents do not argue that the language at the end of Rule 2.8(b) providing that "a transcript [of the hearing] shall be made part of the record" restricts the Commission from also providing a copy of the transcript to the witness or the witness's counsel.[2]

Finally, respondents, both in their opposition brief and at oral argument, urge this Court

---

[2] Nor could they. Respondents complain in their opposition brief that "[t]o date, the Commission has not provided Mr. Campanelli with a transcript of the first day of his investigational hearing." (Resp't Opp'n 10.) Under respondents' own interpretation of the Rule, however, the word "shall" would limit the Commission's handling of transcripts to the precise action required by the rule—that the Commission merely make the transcript part of the record. Providing a copy of the hearing transcript to the witness is therefore forbidden under the logic of respondents' interpretation.

to compare the context and history of Rule 2.8(b) to that of Federal Rule of Civil Procedure 30, which has been amended over the years to expressly provide for recording testimony using means other than stenographic transcription. The respondents claim that the Commission's failure to amend the original language of Rule 2.8(b) to expressly provide for additional recording methods even after the Federal Rules were amended, is evidence that Rule 2.8(b) allows the Commission to record investigational hearings only by stenographic means. (*See* Resp't Opp'n 24–25.) Respondents' argument ignores, however, that the original language in Rule 2.8(b) and Federal Rule of Civil Procedure 30(c) is quite different on its face. The 1967 version of Rule 2.8(b) stated then (and states now) as follows: "Such hearings shall be stenographically reported and a transcript thereof shall be made part of the record of investigation." The 1967 version of Federal Rule of Civil Procedure 30(c) read: "The testimony shall be taken stenographically and transcribed unless the parties agree otherwise." The final clause of the federal civil rule—"unless the parties agree otherwise"—makes it clear that, absent mutual agreement, stenographic transcription is the only permissible means of recordation under the rule. Commission Rule 2.8(b) has never contained a clause similar to the "unless" clause of the 1967 version of the federal civil rule. Thus, the 1968 district court case interpreting Rule 30(c) to prohibit videotaping upon which respondents rely, is not instructive here. (*See* Resp't Opp'n 23 (citing *U.S. Steel Corp. v. United States*, 43 F.R.D. 447, 451 (S.D.N.Y. 1968)).[3]

---

[3] For a critique and discussion of *U.S. Steel Corp.*, see 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2115 (2d ed. 2008) (explaining that "it is difficult to see the basis for the [*U.S. Steel Corp.*] decision, since as long as the examination was to be recorded stenographically in the usual manner as well as electronically the provisions of the rule were complied with").

### III. CONCLUSION

This Court finds that the language in Rule 2.8(b) does not preclude the Commission from using videotape as an additional means of recording testimony during investigational hearings. The rule mandates that the Commission must record the hearings stenographically and make the transcript part of the record. As long as the Commission satisfies that minimum requirement, there is nothing in Rule 2.8(b) that prohibits the Commission from using additional recording methods. Moreover, this Court recognizes the added value of demeanor evidence in accessing the credibility of witnesses. For all of the reasons stated above, the Commission's Petition for an Order Enforcing Subpoenas *ad Testificandum* shall be GRANTED.

A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on June 2, 2008.